# Exhibit C

## **DECLARATION OF DREW WILLEY**

Pursuant to Title 28 U.S.C. section 1746, I, Drew Willey, declare and state as follows:

1.      My name is Drew Willey. I am over the age of eighteen and I have personal knowledge of the facts set forth herein or I believe them to be true based on my experience or information provided to me by others. If called, I could testify truthfully about the matters contained herein. I am in all other ways qualified to make this declaration.

### A.      Personal and Professional Background

2.      I am an attorney licensed to practice law in the State of Texas since November 2014. I have a Master's in Accounting and worked for a year as an oil and gas accountant before attending law school. I graduated from the University of Houston Law Center with a doctor of jurisprudence in May 2014.

3.      During law school, I interned with the Texas Innocence Network Capital Division and there worked on a clemency petition for Marvin Wilson, who was indigent, black, and mentally ill. His full story was never told. Investigating Mr. Wilson's case highlighted the vast injustices for the powerless and voiceless in our society. That experience led me to change my career path from tax law to indigent criminal defense.

4.      Since I was licensed as an attorney, I have run a private practice committed to accepting indigent criminal defense court appointments. Towards the end of 2016, I founded a non-profit called Restoring Justice to provide holistic criminal defense to the indigent, including social services and peer support. I also handle civil rights lawsuits. Currently, indigent defense is about 75% of my practice and civil rights law is about 25% of my practice.

5.      I am a solo practitioner, and my law firm, Drew Willey Law, is located in the Heights in Houston, Texas. My practice generally is in Harris, Galveston, Fort Bend, Chambers, and Montgomery Counties.

6.      The majority of my indigent defense cases for my first year and a half of practice were in Galveston County, and I have continued to accept indigent defense appointments in Galveston County. Currently, I am in the Galveston County Courts at Law on a weekly basis, appearing as counsel for indigent defendants facing misdemeanor charges. I also have worked the Galveston County jail docket system three times.

7.      Based on this experience, I am very familiar with the pretrial criminal procedure in Galveston County, including specifically the jail docket process, the absence of counsel at bail hearings, and the absence of any real opportunity to have a bail reduction motion heard.

### B.      Galveston County Jail Docket

8.      In Galveston County, every jailed misdemeanor defendant is placed on the jail docket at some time. The jail docket is staffed by two defense lawyers each week. The defense lawyers assigned to jail docket are chosen from the appointment list. These two jail docket defense

1

DECLARATION OF DREW WILLEY

attorneys are given some paperwork for every unbonded case that is set for the jail docket. The two jail docket attorneys then split the jail docket cases between themselves, each representing about half of the defendants on jail docket each day.

9.   During jail docket, the defendants who are on jail docket are behind glass in a hold-over room. On the other side of the glass are the two defense lawyers, the dedicated jail docket prosecutor, the court personnel, and a television screen dedicated for the judge, who only comes on screen at the end of docket to accept guilty pleas.

10.   Prior to the jail docket, the prosecutor's plea offer is often communicated on the prosecutor's file. The defense lawyers then meet their new clients, speak with them, hear about their cases and their stories, and communicate the prosecutor's plea offer to them.

11.   The defense attorneys meet with their clients in a hallway outside the jail docket room. Detention officer offices are next to these open meeting spaces. Clients must sit next to one another waiting to speak to their attorney, meaning they can hear the attorney's communications with the client in front of them. A detention officer once told me they had to do that and that attorney-client confidentiality did not apply in jail docket.

12.   One of the first things I do when representing a new client at jail docket is ask if my clients can afford to bond out or if anyone else can help them bond out, and then I contact people for them to try and help them bond out. Any investigation I do into the case, a client's ability to make bail, and the charges must be done separately, after this first meeting at the jail docket. The jail docket also is the first opportunity for the client to be released by pleading guilty, which I explain more below.

13.   After we quickly meet with our new clients, negotiate pleas with the prosecutor, fill out and sign plea paperwork, and turn it in to the court personnel, court personnel delivers the plea paperwork to the judge's chambers at the courthouse and the judge comes onto the TV screen. The jailed defendants only see the judge on that TV screen through the glass. The judges only takes pleas. The judges do not and will not hear any other matters or motions. The judges will not consider any bond arguments. The judges will not consider any probable cause arguments. The judges only accept pleas from jail docket.

14.   If a jail docket client does not plead guilty, they either get rolled later in the week and are seen by the same defense attorney or they get rolled to another week.

15.   For jailed misdemeanor defendants, there is no real opportunity to argue bail. The bail is set before the defendants appear at jail docket and there is no bail hearing or opportunity to argue bail at the jail docket. I have no opportunity to argue that the bond is improper or inappropriate.

C.   **Effect of Pretrial Detention on My Clients**

16.   Pretrial detention forces people who cannot afford bail to stay in jail until they plead guilty, because pleading guilty is the only way such individuals can get released. The reason that pleading guilty usually results in your release from jail is that the sentences for misdemeanors are usually shorter than the time needed to get to trial. Realistically, if you want to plead not guilty

2

DECLARATION OF DREW WILLEY

and go to trial, and you set trial at the first opportunity -- at jail docket -- the closest trial date is still a month away. Pretrial detention time counts as time served, but, for the majority of misdemeanor charges, a guilty plea at the jail docket will result in less total time served then pretrial detention until trial, even if the case is dismissed or you are acquitted at trial.

      17.     While in jail in pretrial detention, my clients lose their jobs, housing, automobiles, assistance (like social security checks or federal housing assistance), and custody of children. Pretrial detention has a terrible, long-term, and traumatic effects on their lives and the lives of their family.

      18.     Defense lawyers should be allowed at magistration and, at that time, make individualized bail arguments and to conduct probable cause review. The lawyers should have the opportunity to investigate and evaluate the weaknesses of the state's case and the strengths of the defense's case before advising on any plea offers. That would allow for real arguments to dismiss to be effectively presented early in the case, if an opportunity to so move also was provided during or near the time the defendant was in the jail docket.

I certify under penalty of perjury that the foregoing is true and accurate.

      Executed in Houston, Texas, on the 1st day of April, 2018.

_____
Drew Willey

3