| | | |
|---|---|---|
| Aaron Booth and Cody Tucker on behalf of himself and all others similarly situated, | § § § | |
| v. | § § | Civil Action No. 3:18-cv-00104 |
| Galveston County *et al.* | § § | |

## MAGISTRATES' MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6) AND BRIEF IN SUPPORT

# <u>TABLE OF CONTENTS</u>

Nature and Stage of the Proceeding………………………………………………… 1

Issues to be Ruled Upon……………………………………………………………… 1

Summary of the Argument…………………………………………………………..2

Background……………………………………………………………………………3

Argument and Authorities…………………………………………………………4

I.    The Court should dismiss under *Preiser*…………………………………….4

      A.    Standard of Review……………………………………………………….4

      B.    Plaintiffs fundamentally challenge their confinement and seek
            release—*Preiser* directly applies…………………………………….5

**II.**   The Court should dismiss under *Younger*…………………………………...10

      A.    Standard of Review………………………………………………..10

      B.    All three *Younger* factors are satisfied………………………………..11

            1.    *Plaintiffs are subject to ongoing criminal proceedings*………11

            2.    *Important state interests are at stake………………………….*13

            3.    *Plaintiffs have adequate opportunities to challenge their bail
                  setting…………………………………………………………..*14

      C.    Bail reform lawsuits are well-suited for Younger abstention………..16

III.  The *Parratt/Hudson* doctrine requires dismissal of Plaintiffs' procedural due
      process claims………………………………………………………….20

IV.   Plaintiffs' substantive due process claim is foreclosed because Plaintiffs'
      claims are "covered" by the Fourth and Eighth Amendments……………..21

V.    Magistrates are not policymakers…………………………………………23

VI.    Plaintiff Cody Tucker lacks standing as he has bonded out of jail………..26

VII.   Relief against the Magistrates in their individual capacities
is inappropriate……………………………………………………………..26

Conclusion and Prayer for Relief……………………………………………….27

TO THE HONORABLE JUDGE HANKS:

COMES NOW Defendants the Honorable Steve Baker, the Honorable Kerri Foley and the Honorable James Woltz (Magistrates), and move the Court to dismiss the Plaintiffs' claims against them for lack of subject-matter jurisdiction and for failure to state a claim upon which relief may be granted. In support, the Magistrates would show the Court as follows:

## Nature and Stage of the Proceeding

Plaintiff Aaron Booth brought this suit in an individual capacity, and on behalf of others similarly situated, against Galveston County, the District Judges of Galveston County, the County Court at Law Judges of Galveston County, the Magistrate Judges of Galveston County, and the District Attorney of Galveston County, seeking relief under § 1983 alleging that existing bail procedures violate his procedural and substantive due process rights, infringe upon Equal Protection guarantees, and undermine his constitutional rights to counsel. An Amended Complaint added Cody Tucker as a Plaintiff.

All Defendants waived process and pursuant to court order, responsive pleadings were to be filed by June 8, 2018.

The Magistrate Judges of Galveston County now move for dismissal under Fed R. Civ. P. 12 (b)(1) and (b)(6).

## Issues to be Ruled Upon

1. Whether the Court has subject matter jurisdiction over the Plaintiffs claims under Rule 12 (b)(1); and

2. Whether the Plaintiffs have failed to state a claim under Rule 12(b)(6).

Defendants contend that Plaintiffs' Amended Complaint should be dismissed under Rule 12 (b)(1) because § 1983 is not an appropriate vehicle to challenge state court release procedures under *Preiser v. Rodriguez*, 411 U.S. 475 (1973). Additionally, the case should abstain from hearing this suit under *Younger v. Harris*, 401 U.S. 37 (1971).

Defendants further contend that dismissal is appropriate under Rule 12 (b)(6) under the *Parratt/Hudson* doctrine. See *Parratt v. Taylor*, 451 U.S. 527 (1981); *Hudson v. Palmer*, 468 U.S. 517 (1984). Alternatively, these claims should be dismissed as the Magistrate Judge are not policymakers.

## <u>Summary of the Argument</u>

Plaintiffs' attack on the State pretrial system is foreclosed at the outset for four independent reasons. First, under *Preiser v. Rodriguez*, 411 U.S. 475 (1973), § 1983 is not the proper vehicle for challenging state court release procedures. Plaintiffs' complaint alleges, at length, policies and practices leading to prolonged detention and delayed release of misdemeanor and felony arrestees. And Plaintiffs seek injunctive relief that would change how misdemeanor and felony defendants are released. Under *Preiser*, this case should be dismissed.

Second, the Court should abstain from hearing this suit under *Younger v. Harris*, 401 U.S. 37 (1971). The dispute involves ongoing state judicial proceedings (i.e., bail settings on misdemeanor and felony arrestees), implicates

an important state interest (i.e., administering criminal justice), and the state proceedings afford an adequate opportunity to raise the constitutional challenge (i.e., through seeking a bail review hearing or a writ of habeas corpus). Various courts around the country have abstained from determining bail reform lawsuits and issued well-reasoned opinions in support of abstention. And while the *ODonnell v. Harris County* court declined to abstain, claims are present here that were not present in the *ODonnell* litigation.

Third, for many of the same reasons that *Preiser* and *Younger* apply, Plaintiffs' procedural due process claim falls squarely within the parameters of the *Paratt/Hudson* doctrine. Based upon Fifth Circuit precedent, this case must be dismissed.

Fourth, because Plaintiffs' substantive due process claims are properly brought under the more specific Fourth and Eighth Amendments, Plaintiffs' attempt to bring these claims under the Fourteenth Amendment's generalized standard is improper.

Fifth, even if some claims survive the jurisdictional challenge, those claims should be dismissed against the Magistrates because they are not policymakers.

Finally, Plaintiff Cody Tucker's claims should be dismissed as he has bonded out of jail and therefore lacks standing.

## **Background**

Plaintiffs allege that the pretrial system in Galveston County currently works as follows as to the Magistrates' role:

- A person is arrested and transported to the Galveston County jail.

- The arrestee appears before a Galveston County Magistrate within 24 hours of the time any arrestee is booked into the jail.

- The arrestee is informed of the charges by the Magistrate and read a list of rights as required by the Texas Code of Criminal Procedure.

- An arrestee who can pay the assessed bail amount will pay and be released. Those who cannot remain in jail pending further proceedings.

- After magistration anyone who requests appointed counsel is given a "pauper's oath" to complete.

Plaintiffs complain of the lack of any option other than money bail for arrestees to obtain pre-trial release. To remedy the time differential between release of those who can and cannot pay the set bail, Plaintiffs propose a Preliminary Injunction requiring "all of the procedures required for issuing a valid order of detention, including an inquiry and findings concerning ability to pay before assessing secured money bail." This relief, if granted, would result in either the release of all defendants on unsecured conditions or, ironically, act to increase the time of detention for at least half of all arrestees

<u>Argument and Authorities</u>

I. <u>The Court should dismiss under *Preiser*</u>.

A. <u>Standard of Review</u>

In ruling on a 12(b)(1) motion, courts are permitted to consider evidence outside the pleadings. See *St. Tammany Parish ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009) (noting that in a Rule 12(b)(1)

motion "the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts.").

B.    Plaintiffs fundamentally challenge their confinement and seek release—*Preiser* directly applies.

In *Preiser v. Rodriguez*, the Supreme Court held that a prisoner seeking release from confinement may obtain such relief only through a petition for habeas corpus:

> We hold today that when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.

411 U.S. at 499.

In holding that such claims are not cognizable under § 1983, the Court explained that "the writ of habeas corpus evolved as a remedy available to effect discharge from any confinement contrary to the Constitution or fundamental law," whether "imposed pursuant to conviction" or "prior to trial." *Id.* at 485–86. Because habeas has "been accepted as the specific instrument to obtain release from [unlawful] confinement," it displaces the general cause of action granted by § 1983 for constitutional torts. *Id.* at 486; see also *Heck v. Humphrey*, 512 U.S. 477, 481 (1994) (discussing that "habeas corpus is the exclusive remedy for a

state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release" and that such claims "are not cognizable" under § 1983); *Jackson v. Johnson*, 475 F.3d 261, 263 n.2 (5th Cir. 2007) ("A prisoner may file a § 1983 action to challenge the *conditions* of confinement, whereas a challenge to the *fact* of confinement is properly presented in a habeas petition.") (emphasis added).

Plaintiffs may contend that they challenge the system and procedures underlying the pretrial system, rather than challenging the facts of their confinement and seeking individual releases in individual cases. *Gerstein v. Pugh* forecloses that argument. 420 U.S. 103 (1975). In *Gerstein*, the Supreme Court confirmed that *Preiser* applies to § 1983 challenges to pretrial detention procedures, including the procedure of setting bail. The Court permitted the challenge in *Gerstein* to go forward under §1983 only because plaintiffs did not request any relief requiring release from state custody, even as an alternate remedy. See *Gerstein*, 420 U.S. at 107 n. 6 ("Because release was neither asked nor ordered, the lawsuit did not come within the class of cases for which habeas corpus is the exclusive remedy.").

An order requiring "immediate or more speedy release" is indisputably barred by *Preiser*.[1] *Preiser*, 411 U.S. at 494. And though Plaintiffs seek release

---

[1] If all Plaintiffs truly seek is to require judicial officers to make certain findings at the bail-setting stage, that relief is not appropriate for injunctive relief under § 1983, as it would run solely against judicial officers acting in a judicial capacity.

of classes of arrestees, rather than individual arrestees, *Preiser* applies to systemic claims that would inevitably lead to automatic release of one or more claimants as well:

> [I]n some broad-based attacks, resolution of the factual allegations and legal issues necessary to decide the § 1983 claim may, in effect, automatically entitle one or more claimants to immediate or earlier release . . . Such claims must also be pursued initially through habeas corpus.

*Serio v. Members of La. State Bd. of Pardons*, 821 F.2d 1121, 1129 (5th Cir. 1987).

Stripped of all window-dressing, Plaintiffs seek the release of misdemeanor and felony arrestees. Per their requested relief, Plaintiffs seek a preliminary injunction, requiring, as a precondition to issuance of an unaffordable secured bail order:

a. A prompt hearing inquiring into ability to pay, and permitting the arrestee to present and rebut evidence concerning flight risk or dangerousness;

b. Advance written notice of the critical question in the hearing;

c. Reasoned written findings of the arrestee's ability to pay; and,

d. Reasoned written findings, by clear and convincing evidence, that secured money bail in the amount set is the least restrictive means of achieving the government's interest in mitigating the arrestee's risk of flight or danger to the community.

But Plaintiffs' requirements would result in either the detention of *all* arrestees until a hearing where such an inquiry and findings were made, or the release of *all* arrestees. In other words, the many thousands of arrestees per year who

currently post bail or receive a personal bond would not be able to avail themselves of that option, and would have to spend more time in jail awaiting a hearing of the type the Fifth Circuit contemplated in *ODonnell v. Harris Cnty.*, Tex., 882 F.3d 528, 542 (5th Cir. 2018).

In *ODonnell*, the Fifth Circuit considered an order of preliminary injunction entered by the district court requiring the Harris County Sheriff to immediately release all defendants who were held past 24 hours after arrest, without exception and based solely upon that arrestee's self-reported affirmation that he is unable to pay the amount of money bail set by the magistrate. See *ODonnell*, 882 F.3d at 535. Before the district court in *ODonnell*, some of the same counsel that represent Plaintiffs in this lawsuit made the same argument that they make here: that the Constitution permits only two permissible outcomes for a pretrial system—release of all defendants on unsecured bail; or detention of all defendants until a hearing. Specifically, in *ODonnell*, plaintiffs argued that:

> Defendants are free to choose from among numerous options in devising a post-arrest system that comports with the Constitution. They could do what numerous other jurisdictions do and release all misdemeanor arrestees and order them to return to court on standard non-financial conditions, unsecured bond, or recognizance (what Defendants call "personal bonds"). Or, they could detain all misdemeanor arrestees prior to a prompt hearing at which non-financial alternatives to release could be imposed. . .

*ODonnell v. Harris Cnty, Tex.*, No. H-16-1414 (S.D. Tex. Apr. 28, 2017), ECF No. 30 at 18.

The Fifth Circuit vacated the order of preliminary injunction that required release of virtually all misdemeanor arrestees because it found that no "fundamental substantive due process right to be free from any form of wealth-based detention" exists, the Court vacated the injunction and dismissed the Harris County Sheriff from the lawsuit. *ODonnell*, 882 F.3d at 546. The Fifth Circuit also determined that within 48 hours of arrest, detainees who are still in jail are entitled to an "individualized" bail determination, providing "notice, an opportunity to be heard and submit evidence within 48 hours of arrest, and a reasoned decision by an impartial decision-maker." *Id.*

As in *ODonnell*, Plaintiffs seek immediate release of all defendants on unsecured conditions. This is clear from the relief requested in their injunction: Defendants must "provide Plaintiffs with an inquiry and findings concerning ability to pay *prior to demanding payment* of a secured financial condition of release."[2] Plaintiffs' claims are either about judicial policies governing how judges set bail (making injunctive relief inappropriate) or about the release of indigent defendants (foreclosing Plaintiffs' claims under *Preiser*). Because Plaintiffs seek

---

[2] As in *ODonnell*, Plaintiffs would contend that an order requiring release of all arrestees is appropriate, rather than detention of all arrestees. Detaining everyone serves no purpose whatsoever and would be a significant disservice to both the named Plaintiffs and all purported class members. Additionally, many misdemeanor and felony arrestees—even by Plaintiffs' count, 50% of each—are able to afford bail and do not require immediate release for free. (ECF No. 10, ¶ 177.) Prohibiting individuals who would otherwise post bail from doing so and detaining them, simply because some others are unable to pay, would lead to an absurd result.

to require unsecured release for all defendants, under *Preiser*, the Court lacks jurisdiction to entertain Plaintiffs' claims under § 1983.

## II.   **The Court should dismiss under _Younger_.**

### A.   Standard of Review

The abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971), recognizes the "longstanding public policy against federal court interference with state court proceedings," *id.* at 43, by requiring federal courts to abstain in cases "seeking either injunctive or declaratory relief when state criminal actions . . . are pending against the federal plaintiff at the time that federal action is commenced." *DeSpain v. Johnston*, 731 F.2d 1171, 1175 (5th Cir. 1984) (footnotes omitted). Central to *Younger* was the recognition that "ours is a system in which 'the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.'" *Huffman v. Pursue*, Ltd., 420 U.S. 592, 601 (1975) (quoting *Younger*, 401 U.S. at 43–45).

To determine whether *Younger* abstention is warranted, courts apply a three part test: (1) the dispute must involve an ongoing state judicial proceeding, (2) an important state interest in the subject matter of the proceeding must be implicated, and (3) the state proceedings afford an adequate opportunity to raise the constitutional challenge. See *M.D. v. Perry*, 799 F. Supp. 2d 712, 715 n.3 (S.D. Tex. 2011) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). "When these requirements are met, the federal

district court has no choice but to dismiss the federal action; it may not abstain, nor may it stay the federal action pending resolution of the state proceedings." *Perry*, 799 F. Supp. 2d at 715 n. 3.

*Younger* abstention is most appropriately raised through a 12(b)(1) motion. See *Perry*, 799 F. Supp. 2d at 715 n.3 (discussing a split in how to raise *Younger* abstention and noting that 12(b)(1) appears to be common practice); *see also* Charles A. Wright & Arthur R. Miller, 5B FED. PRAC. & PROC. CIV. § 1350 ("A *Younger* motion may be brought under Rule 12(b)(1) or Rule 12(b)(6).") Accordingly, Magistrates move for dismissal under Rule 12(b)(1), or, alternatively, Rule 12(b)(6).

B.    All three *Younger* factors are satisfied.

1.    *Plaintiffs are subject to ongoing criminal proceedings.*

At the time Plaintiffs filed suit, they were subject to ongoing criminal proceedings. They were arrested, brought before a magistrate, and arraigned. The accused is subject to ongoing criminal proceedings after arraignment. And bail proceedings are directly tied to the underlying criminal proceeding. "[B]ail bonds are to assure a criminal defendant's appearance throughout the criminal proceeding. For any number of reasons throughout the pendency of a criminal case, a state court may be called upon to reconsider or modify its bail bond determinations." *Mounkes v. Conklin*, 922 F. Supp. 1501, 1512 (D. Kan. 1996); see also *Mudd v. Busse*, 437 F. Supp. 505, 510 (D. Ind. 1977) (noting that bail setting practices are "very much a part of the criminal prosecution."). And as for

the class of people the Plaintiffs hope to represent, these people will be subject to criminal proceedings, and any changes in bail policy will undoubtedly affect these proceedings. See *Mudd*, 437 F. Supp. at 511 (dismissing on *Younger* grounds and noting the challenge to the bail practices as for the class members "are now ongoing"); *Hernandez v. Carbone*, 567 F. Supp. 2d 320, 322 (D. Conn. 2008) (discussing that the changes the plaintiff sought "would intrude substantially into pending and future criminal cases").

Recent bail reform lawsuits that declined to apply *Younger* for failure to meet this factor are distinguishable based on when in the criminal process the plaintiffs in those cases filed suit. For example, in *Cain v. City of New Orleans*, plaintiffs complained that they were assessed various costs and put on a payment schedule to pay those costs *after the conclusion* of their criminal suit, and subsequently rearrested for failure to pay those fines.186 F. Supp 3d 536 (E.D. La. 2016). The *Cain* court declined to apply *Younger* because there were no ongoing criminal proceedings when the complaints were filed—"each of the plaintiffs was convicted and sentenced long ago, and those convictions are now final." *Id.* at 551. Similarly, in *Buffin v. City and County of San Francisco*, the court also declined to apply *Younger* because at the time plaintiffs filed suit, they had been arrested and booked into jail, but had not yet been arraigned. No. 15-cv-4959, 2016 WL 374230, at *3–4 (N.D. Cal. Feb. 2, 2016). The court distinguished *Mounkes*, *Mudd*, and *Carbone* on this basis, since those cases

(like this case) all dealt with post-arraignment plaintiffs. *Buffin*, 2016 WL 374230, at *4.

To be sure, the *ODonnell* trial court faced similar circumstances as the *ODonnell* plaintiffs were likewise subject to ongoing criminal proceedings. That court's refusal to abstain under *Younger* should serve as a cautionary tale, as the injunction entered wreaked havoc on Houston's criminal justice system. See Harris County Criminal Court at Law Judges Resp. to Plaintiffs' Pet. for Panel Reh'g., *ODonnell v. Harris Cnty.*, Tex., 17-20333 (5th Cir. filed 3/26/2018).

Here, (1) the State filed a criminal complaint, (2) a Magistrate found probable cause and set bail, and (3) Plaintiffs filed suit. When Plaintiffs filed suit, they were post-arraignment and subject to "ongoing judicial proceedings," and this factor is satisfied.

> 2. *Important state interests are at stake.*

Pretrial procedures, including setting bail, implicate important state interests. The Fifth Circuit has expressly stated that a state has "a compelling interest in assuring the presence at trial of persons charged with a crime." *Pugh v. Rainwater*, 572 F.2d 1053, 1056 (5th Cir. 1978). Pretrial procedures like setting bail directly implicate this state interest. See *Mounkes*, 922 F. Supp. at 1512 ("The State of Kansas has an important interest in its bail bond rules and process."); *Wallace v. Kern*, 520 F.2d 400, 406 (2d Cir. 1975) (noting that the state has "a most profound interest" in bail proceedings).

*3.      Plaintiffs have adequate opportunities to challenge their bail
setting.*

The burden is on the plaintiff to show that the opportunity to raise the
constitutional challenge in a state proceeding is inadequate. *Pennzoil Co. v.
Texaco Inc.*, 481 U.S. 1, 14 (1987) (citing *Moore v. Sims*, 442 U.S. 415, 429–30
(1979)); *Younger*, 401 U.S. at 45). And *Younger* applies "[w]here the state
[judicial] proceedings allow a [] [litigant] to make constitutional objections to the
proceedings at multiple stages." *Wightman v. Tex. Supreme Court*, 84 F.3d 188,
190 (5th Cir. 1996).

Plaintiffs complain that their bond was set at an unaffordable amount, and
they were unconstitutionally detained as a result.  A number of opportunities,
provided by state law, are available to an arrestee who seeks to challenge bail
and detention as part of the state proceeding. An arrestee could request a
personal bond from the presiding County Court at Law or District Judge at their
first appearance. Or, an arrestee could move for a bond reduction before the
presiding judge. A request for bond reduction is standard practice, as recognized
in *Stack v. Boyle*: "[T]he proper procedure for challenging bail as unlawfully fixed
is by motion for reduction of bail and appeal to the Court of Appeals from an
order." 342 U.S. 1, 6 (1951). An arrestee could also (and, under certain
circumstances as demonstrated above, may in fact be required to) challenge the

conditions of detention by filing petition for a writ of habeas corpus. [3] *See* TEX. CODE CRIM. PROC. art 11.01.

To be sure, in *ODonnell*, the Fifth Circuit affirmed the district court's finding that the third prong of *Younger* was not met because as a practical matter, for the *ODonnell* misdemeanor class, their relatively less complex, less severe cases would be resolved either through a plea or through a final resolution before a writ of habeas corpus could issue. *ODonnell v. Harris Cnty.,Tex.*, 17-20333, 10/03-2017, Oral Argument at 3:21-3:32 ("You simply never get to the federal courts on habeas in a case like this because by the time you got through the state process and so on . . . basically the time you spend as a misdemeanor convict would be done.")

Abstention is appropriate here for two reasons. First, unlike *ODonnell*, this case includes felony defendants. The very nature of a felony case, and the rights available to a felony defendant (for example, the right to a grand jury indictment), mean that a felony case will take more time than a misdemeanor case. A felony defendant has ample opportunity to seek habeas corpus, and often does so. *See Preiser*, 411 U.S. at 498.

Second, although Plaintiffs may rely on *Gerstein* to argue that their injunction is not directed at state prosecutions, but "only at the legality of pretrial detention without a judicial hearing," *Gerstein* does not create an exception to

---

[3] Texas appellate courts regularly entertain appeals in such proceedings. E.g., *Ex Parte Shires*, 508 S.W.3d 856 (Tex. App.—Fort Worth 2016, no pet.).

*Younger* in pretrial detention cases. *Gerstein*, 420 U.S. at 108 n. 9. Rather, "the teaching of *Gerstein*" is "that the federal plaintiff must have an opportunity to press his claim in the state courts." *Moore v. Sims*, 442 U.S. 415, 430 n.12 (1979). Sims considered, and rejected, an argument that "delay in affording the [plaintiffs] a hearing in state court" rendered *Younger* inapplicable.

      C.    Bail reform lawsuits are well-suited for Younger abstention.

As a matter of course, state bail policies are regularly challenged in federal courts. In nearly all such cases, the federal court has abstained, following the Supreme Court's guidance in *O'Shea v. Littleton*, 414 U.S. 488 (1975).

In *O'Shea*, the Supreme Court required abstention in a class action challenging a county's "pattern and practice" of "set[ting] bond in criminal cases according to an unofficial bond schedule without regard to the facts of a case or circumstances of an individual defendant in violation of the Eighth and Fourteenth Amendments." *Id.* at 492. Because the requested injunction restraining that practice would constitute "a major continuing intrusion of the equitable power of the federal courts into the daily conduct of state criminal proceedings," *O'Shea* applied the *Younger* doctrine and ordered dismissal. *Id.* at 502.

Likewise, the Fifth Circuit in *Tarter v. Hury* required abstention for plaintiff's claim for "equitable relief against . . . the imposition of excessive bail" by Texas state court judges. 646 F.2d 1010, 1013 (5th Cir. 1981). The court found *O'Shea*

to be "conclusive as to Tarter's claim for equitable relief" because *O'Shea* "involved a challenge to the imposition of excessive bail." *Id.*

Moreover, several federal district courts around the country have considered bail reform lawsuits and found *Younger* abstention appropriate. Those similar decisions are surveyed here as guidance for this Court's ruling.

       *1.    Hernandez v. Carbone*

The *Hernandez v. Carbone* plaintiff alleged that "Connecticut's bail system is unconstitutional under the federal and state constitutions because indigent defendants are required to post money bail in order to be released pretrial." 567 F. Supp. 2d 320, 322 (D. Conn. 2008). The court noted "the gist of [the plaintiff's] facial constitutional claim is that Connecticut's bail system violates the Constitution because it gives judges the discretion to impose money bail or a surety bond even when a defendant is indigent and cannot possibly post bail or a bond; the system therefore dooms indigent persons to be imprisoned before adjudication of their guilt." *Id.* at 331.

The court dismissed the case under *Younger* reasoning that "[t]here is no question that the relief [plaintiff] seeks—forbidding state courts to impose money bail or a surety bond whenever the defendant is indigent and monitoring the state courts to ensure that minorities are not disfavored in the setting of bail—would intrude substantially into pending and future criminal cases in Connecticut." Id. at 333.

### 2. *Wallace v. Kern*

In *Wallace v. Kern*, the Second Circuit decided that abstention was appropriate in a suit challenging bail policies that is strikingly similar to the claim here. Specifically, the *Wallace* plaintiff complained that: "the incarceration of indigent detainees unable to make bail violates the equal protection and due process clauses of the Fourteenth Amendment." 520 F.2d 400, 401 (2d Cir. 1975). The district court ordered that the state courts conduct an evidentiary hearing on bail within seventy-two hours and offer "a written statement of the judge's reasons for denying or fixing bail." *Id.*

The Second Circuit reversed under *Younger*. The court reasoned that the district court's order constituted "federal judicial legislation which is not only offensive to state sensibilities but is contrary to the admonition in *Gerstein*," and that courts were "not ombudsmen charged with the responsibility of reforming the state penal system." *Id.* The court also explained that because adequate remedies at law existed, abstention was appropriate. *Id.* at 406–07.

### 3. *Mudd v. Busse*

In *Mudd v. Busse*, the plaintiff challenged a "master bond schedule" (i.e., bail schedule). 437 F. Supp. 505, 508 (D. Ind. 1977). The plaintiff argued that the master bond schedule had "the effect of denying pre-trial release to indigents solely because of their inability to buy their freedom." *Id.* The court dismissed the case under *Younger*. As here, the *Mudd* plaintiffs argued that the case was "not directed at a state criminal prosecution as such, but only at bail practices and

procedures collateral to and incidental to the state prosecution." *Id.* The court rejected that argument, noting that *Younger's* application was broad, reasoning that abstention was necessary when "principles of comity and federalism come into play." The court found that the bail setting practices were "very much a part of the criminal prosecution" and that such a narrow reading of *Younger* had been rejected by recent Supreme Court decisions. *Id.*

The court in *Mudd* also explained that abstention was appropriate because there, as here, the plaintiffs sought to require the "least restrictive means of pretrial release" and "dictate the precise steps by which" the judge was make that determination. *Id.*

### 4. *Mounkes v. Conklin*

*Mounkes v. Conklin* involved a challenge to Kansas' bail system that "includ[ed] an automatic bond schedule ("ABS") which sets the amount of bond for certain offenses."   922    F. Supp. 1501, 1507 (D. Kan.1996). The plaintiffs challenged Kansas rules that required cash bonds in certain circumstances.

First, the court rejected plaintiff's contention that "their constitutional challenges to the bail bond rules do not bear on their defenses to the pending criminal charges," and, as such, abstention was not warranted. The court found that "the bail bond proceedings here are very much a part of the underlying criminal case," and "the plaintiffs' arguments to the contrary are without merit." *Id.* at 1512. Next, the court found that "the state of Kansas has an important state interest in its bail bond rules and procedures," and that "if a federal court were to

intervene, this would cast a critical shadow over the state judiciary's ability to deal fully and fairly with an accused's right to bail." *Id.* at 1512–13. Finally, the court found that adequate remedies at law existed (e.g., habeas corpus). *Id.* at 1513.

Similarly, abstention is warranted here.

## III.    The *Parratt/Hudson* doctrine requires dismissal of Plaintiffs' procedural due process claims.

Counts Two of Plaintiffs' Amended Complaint alleges violations of Plaintiffs' procedural due process rights under the Fourteenth Amendment. (ECF No. 31, ¶¶ 131-133.) These claims are barred by the *Parratt/Hudson* doctrine. See *Parratt v. Taylor*, 451 U.S. 527 (1981); *Hudson v. Palmer*, 468 U.S. 517 (1984).

*Parratt* and *Hudson* hold that no constitutional claim may be asserted by a plaintiff who has been deprived of liberty by negligent or intentional conduct of public officials, unless the state procedures under which these officials acted are unconstitutional or state law fails to afford an adequate post-deprivation remedy for their conduct. *Parratt*, 451 U.S. at 543; *Hudson*, 468 U.S. at 533. The doctrine should be interpreted broadly. See *Holloway v. Walker*, 784 F.2d 1287 (5th Cir. 1986) (holding that "where a state system as a whole provides due process of law, federal constitutional guarantees are not breached merely because some State employee . . .  might engage in tortious conduct, either intentionally or negligently").

A recent case in the Northern District of Texas dealt with, and disposed of, a plaintiff's § 1983 claim for a violation of his procedural due process rights due to his pretrial detention following an arrest for a misdemeanor offense. See *Luna v. Valdez*, No. 3:15-CV-3520-D, 2018 WL 684897, at *8 (N.D. Tex. Feb. 2, 2018). The Court concluded that because the plaintiff had failed to adduce any evidence that the procedures available under Texas law would not have afforded him an adequate post-deprivation remedy, *Parratt/Hudson* barred relief for the alleged procedural due process violation. *Id.*

Here, Plaintiffs have made no attempt to plead that state law fails to provide an adequate post-deprivation remedy. And in fact, as the Fifth Circuit has noted, Texas law provides remedies for illegal detention both while it is underway, and after it is concluded. See *Martin v. Dallas Cnty., Tex.*, 822 F.2d 553, 555 (5th Cir. 1987) ("Texas law afforded Martin adequate remedies against his illegal detention both while it was underway and for post deprivation compensatory relief. Martin could have sought habeas corpus relief pursuant to Tex. Crim. Proc. Ann. art. 11.01 or tort recovery for false imprisonment.").

Plaintiffs' claims should be dismissed.

**IV.** **Plaintiffs' substantive due process claim is foreclosed because Plaintiffs' claims are "covered" by the Fourth and Eighth Amendments.**

Counts One and Two of Plaintiffs' Amended Complaint alleged violations of Plaintiffs' substantive due process rights under the Fourteenth Amendment.

In *Mercado v. Dallas County Texas*, ("Mercado I"), the court dismissed plaintiffs' § 1983 substantive due process claim based on the denial of pretrial release on bond, explaining that the Fourth Amendment's prohibition on illegal seizures provided "an explicit textual source of constitutional protection" for the alleged violation. 2016 WL 3166306, at *9 (N.D. Tex. June 7, 2016). Because pretrial detention was undisputedly a "seizure" within the meaning of the Fourth Amendment, the Fourth Amendment's specific guarantee of protection, rather than "the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Id.* (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994). And in a subsequent ruling on Dallas County's motion to dismiss plaintiffs' amended complaint, the court held that the factual basis for plaintiffs' substantive due process claim—"i.e., that Dallas County denied them the opportunity for pretrial release on bond"—was the same factual basis that Plaintiffs relied on for their Fourth Amendment claim. *Mercado v. Dallas Cnty., Tex.*, 229 F.Supp.3d 501, 517-18 (N.D. Tex. 2017) ("*Mercado II*") abrogated on other grounds, *City of El Cenizo, Tex. v. Texas*, 2018 WL 1282035, (5th Cir. Mar. 13, 2018).

Here, like in *Mercado I* and *Mercado II*, Plaintiffs' claim for a violation of the alleged substantive due process right to pretrial release on bond is actually a challenge to Plaintiffs' detention. The Fifth Circuit, in *ODonnell*, unequivocally stated that there is no substantive due process right "to be free from any form of wealth-based detention." *ODonnell*, 882 F.3d at 546. However, a claim for pretrial

deprivation of liberty is "covered by" the Fourth Amendment, and "should be analyzed only under that constitutional provision." *Mercado II*, 229 F.Supp.3d at 518.

And to the extent Plaintiffs claim that they do not challenge detention for an incorrectly set bond, but instead challenge the setting of a bond that they could not afford, that claim should be brought under the Eighth Amendment. The Eighth Amendment specifically prohibits "excessive bail," and when a plaintiff's claim falls within a specific "source [] of constitutional protection against . . . governmental conduct," the "claim must then be judged by reference to the specific constitutional standard that governs that right, rather than to some generalized . . . standard." *Graham v. Connor*, 490 U.S. 386, 394 (1989).

The Constitution contains no right to affordable bail. See *ODonnell*, 882 F.3d at 546; *United States v. McConnell*, 842 F.2d 105, 107 (5th Cir. 1988) ("[A] bail setting is not constitutionally excessive merely because a defendant is financially unable to satisfy the requirement."); see also *Simon v. Woodson*, 454 F.2d 161, 166 (5th Cir. 1972) ("[T]he ability to make bond is an important element in fixing an appropriate amount therefore, but it cannot be said that the Constitution requires that it alone be controlling."). Plaintiffs' substantive due process claim should be dismissed.

## V.  **Magistrates are not policymakers**

Plaintiffs seek only declaratory and not injunctive relief from the Magistrates.  This is a tacit admission that the Magistrates are not policy makers.

Plaintiffs allege that the Magistrates preside over arraignment hearings, at which the Magistrates inform the arrestees of certain rights as required by Article 15.17 of the Texas Code of Criminal Procedure, as well as the charge and the initial bail amount. The arraignment happens typically within 24 hours of arrest.

To the extent Plaintiffs' claims are official capacity claims, the Magistrates are not final policymakers, and, therefore, Plaintiffs' claims against the Magistrates in their official capacities under § 1983 should be dismissed. It is inappropriate to bring a § 1983 action against a non-policymaking official in their official capacity. *See Burge v. Parish of St. Tammany*, 187 F.3d 452, 468 (5th Cir. 1999); *Truvia v. Julien*, 187 F App'x 346, 350 (5th Cir. 2006). "A court's task is to identify those officials or governmental bodies who speak with *final policymaking authority* for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation." *Burge*, 187 F.3d at 468 (emphasis added).

Because of the final policymaker element, courts routinely dismiss official capacity claims against non-policymaking officials. *See, e.g.*, *id.* (official capacity claims against police officer dismissed when plaintiff presented no evidence that the officer was a policymaker); *Truvia,* 187 F. App'x at 350 (assistant district attorney is not a policymaker and is not a proper defendant for an official capacity

claim against the district attorney's office).[4]   As non-policymaking officials, Plaintiffs' § 1983 claims against the Magistrates in their official capacities should be dismissed.

Even if Plaintiffs did allege that the Magistrates were final policymakers, state law provides otherwise. State law confers no policymaking authority on the Magistrates. The Magistrates' responsibilities include none of the indicia of being final policymakers. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (discussing attributes of a final policymaker). The Magistrates do not impose their own policies, and all of their decisions are subject to review by another judicial officer. *See Rhode v. Denson*, 776 F.2d 107, 110 (5th Cir. 1985) (the duties of a constable who was "not given that discretion, or range of choice, that is at the core of the  power to impose one's own chosen policy," was contrasted to a final policymaker whose "power to make and enforce policy . . . is marked by authority to define objectives and choose the means of achieving them."); *Jackson v. City of Centreville*, 899 F. Supp. 2d 1209, 1224 (N.D. Ala. 2012) (sheriff whose termination decisions were subject to review could not be the final policymaker for termination decisions). The court in *ODonnell* dismissed the official capacity

---

[4] *Guzman v. Sheahan*, 495 F.3d 852, 860 (7th Cir. 2007) (finding that a plaintiff's official capacity claim against subordinate officers who are not final policymakers failed as a matter of law); *Crisco v. Wexford Corp.*, No. 2:12- cv-160, 2013 WL 4804825, at *4, n.5 (S.D. Miss. Sept. 9, 2013) (unpublished) (noting that Defendants "correctly observe that the § 1983 claim against [a defendant doctor] must be assessed in his individual capacity as he is not a policymaker for purposes of an official capacity evaluation."); *Rodriguez v. Chavez*, No. 12-CV-01071, 2014 WL 4627274, at *3 (D. Colo. Sept. 16, 2014) (plaintiff failed to allege any facts showing that defendants had final policymaking authority, and dismissal of the official capacity claims against those defendants was warranted).

claims against the Magistrates; a conclusion that Plaintiffs did not appeal. *See ODonnell v. Harris Cnty., Tex.*, 227 F. Supp. 3d 276, 754 (S.D. Tex. 2016).

**VI.    Plaintiff Cody Tucker lacks standing as he has bonded out of jail.**

The Magistrates join in and incorporate by reference the arguments and authorities cited by District Attorney Roady in his Motion to Dismiss on this point.

**VII.    Relief against the Magistrates in their individual capacities is inappropriate.**

To the extent Plaintiffs are attempting to sue the Magistrates in their individual capacities, relief would also be inappropriate. This case is about county-wide policies that the Magistrate Judges are allegedly bound to follow. Plaintiffs seek to change these policies. The Magistrate Judges are irrelevant to the alleged county-wide policies and are superfluous to the requested relief. Plaintiffs' claim Magistrates simply follow the Galveston County policy to impose secured bail under a minimum bail schedule.

The Magistrates should be dismissed. They are not policymakers, and Plaintiffs' complaint is devoid of any allegations of individual wrongdoing attributable to any individual magistrate defendant. As described above, re-pleading would likely be futile. But if the Court determines that Plaintiffs are entitled to re-plead their allegations as to the Magistrates, Plaintiffs should be required to re-plead with specificity.

## Conclusion and Prayer for Relief

Plaintiffs seek to implement new procedures for release of misdemeanor and felony arrestees in Galveston County. Such claims fall within *Preiser* and are inappropriate for §1983 relief. At the very least, Plaintiffs' Amended Complaint seeks relief that would intrude into ongoing state proceedings and would require constant federal court oversight, and should be dismissed on *Younger* grounds.

Because Plaintiffs' substantive due process claims should be brought under the Fourth and Eighth Amendments, and because Plaintiffs' procedural due process claims are foreclosed by *Paratt/Hudson*, Plaintiffs' due process claims should be dismissed.

All claims against the Magistrates should be dismissed because they are not final policymakers and do not make countywide policy.

Finally, Plaintiff Cody Tucker's claims should be dismissed as he has bonded out of jail and therefore lacks standing.

WHEREFORE PREMISES CONSIDERED Magistrates Steve Baker, Kerri Foley and James Woltz, respectfully request that the Court dismiss the claims against them with prejudice, that Plaintiffs take nothing from them by this suit, that prospective injunctive relief against them be denied in all respects, that they recover their costs and attorneys fees, and any other relief to which they may be justly entitled, or, alternatively, the Plaintiffs be required to re-plead with more specificity.

Respectfully submitted,

MᴄLᴇᴏᴅ, Aʟᴇxᴀɴᴅᴇʀ, Pᴏᴡᴇʟ & Aᴘꜰꜰᴇʟ,
A Pʀᴏꜰᴇꜱꜱɪᴏɴᴀʟ Cᴏʀᴘᴏʀᴀᴛɪᴏɴ


__/s/ Douglas W. Poole_____
Douglas W. Poole
Texas State Bar No. 16115600
Southern District of Texas No. 619
Bryan R. Lasswell
TBA No. 00784450
Southern District of Texas No. 15715
802 Rosenberg, P.O. Box 629
Galveston, Texas  77553
409.763.2481, Ext. 116
Fax 409.762.1155
dwpoole@mapalaw.com

ATTORNEYS FOR DEFENDANTS,
GALVESTON COUNTY MAGISTRATE
JUDGES


## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed electronically on the 8th day of June, 2018, and is available for viewing and downloading from the ECF system. Notice of Electronic Case Filing has been sent automatically to all parties listed in the Service List in effect on the date of electronic filing, which constitutes service of same, and satisfies the requirements of Fed. R. Civ. P. 5(b)(2)(D).


____/s/ Douglas W. Poole_____
Douglas W. Poole