United States District Court
Southern District of Texas
**ENTERED**
October 10, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| AARON BOOTH, ET AL. | § | |
| | § | |
| Plaintiffs. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:18–CV–00104 |
| | § | |
| GALVESTON COUNTY, ET AL. | § | |
| | § | |
| Defendants. | § | |

## ORDER ON DISCOVERY DISPUTE

On September 28, 2018, the parties filed a joint request for a conference to discuss a discovery dispute concerning Plaintiffs' refusal to produce certain emails between their counsel and two fact witnesses based on an assertion of the attorney-client and work-product privileges. *See* Dkt. 114. Along with the joint request, Plaintiffs provided a privilege log, describing the specific emails it contends are protected by the attorney-client and work-product privileges without revealing the purported privileged information. *See* Dkts. 114-1, 114-2. On October 1, 2018, the Court heard argument from the parties and, based on the argument, requested that Plaintiffs provide the Court with the relevant emails for in camera review. Later that same day, Plaintiffs submitted the emails to the Court. The parties also filed supplemental briefing on specific legal issues as directed during the October 1 hearing. *See* Dkts. 124, 125. On October 4, the Court held a status conference and informed Plaintiffs that their privilege logs were not totally consistent with the provided emails. Thereafter, Plaintiffs submitted amended privilege logs and resubmitted the emails, which now include bate stamps to aid the Court in its review. *See* Dkt. 131.

Based on the parties' briefing, arguments of counsel, relevant legal authority, and an in camera review of the challenged documents, the Court issues the following ruling:

### ATTORNEY-CLIENT PRIVILEGE

The attorney-client privilege "exists 'to encourage full and frank communication between attorneys and their clients.'" *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, No. H-11-cv-3061, 2013 WL 6002166, at *2 (S.D. Tex. Nov. 12, 2013) (quoting *United States v. El Paso Co.*, 682 F.2d 530, 538 (5th Cir. 1982)). The elements of attorney-client privilege are: "(1) a confidential communication; (2) made to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion, legal services, or assistance in a legal proceeding." *SEC v. Microtune, Inc.*, 258 F.R.D. 310, 315 (N.D. Tex. 2009) (citing *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997)) (federal common law governs privilege issue when the court has federal question subject-matter jurisdiction). "A now venerable rule emanating from the privilege is that communications made in the course of preliminary discussions with a view to employing the lawyer are privileged [even if] employment is not accepted." *In re Auclair*, 961 F.2d 65, 69 (5th Cir. 1992) (internal quotation marks, ellipses, and footnote omitted). The privilege also extends to communications between attorneys where the communications are designed to further a party's joint or common interest. *See Apex Mun. Fund v. N-Grp. Sec.*, 841 F. Supp. 1423, 1426 (S.D. Tex. 1993) ("Because the privilege protects only confidential communications, the presence of a third person while such communications are made or the disclosure of an otherwise privileged communication to a third person eliminates the intent for confidentiality on which the privilege rests. The privilege is not, however, waived if a

2

privileged communication is shared with a third person who has a common legal interest with respect to the subject matter of the communication.") (citation and internal quotation marks omitted).  *See also Natta v. Zletz*, 418 F.2d 633, 637 n.3 (7th Cir. 1969) ("[I]nsofar as inter-attorney communications . . . contain information which would otherwise be privileged as communications to him from a client, that information should be entitled to the same degree of protection from disclosure.  To hold otherwise merely penalizes those attorneys who write or consult with additional counsel representing the same client for the same purpose.  As such it would make a mockery of both the privilege and the realities of current legal assistance."); *Levingston v. Allis-Chalmers Corp.*, 109 F.R.D. 546, 551 (S.D. Miss. 1985) ("The Court finds that the privilege also extends to communications among the attorneys for co-parties where the communications are designed to further a joint or common interest.") (collecting cases).

The party asserting the attorney-client privilege bears the burden to demonstrate how each communication satisfies all the elements of the privilege.  *See Microtune, Inc.*, 258 F.R.D. at 315.  The Court narrowly construes the privilege to the bounds necessary to protect these principles because the "assertion of privileges inhibits the search for truth." *Id.* (quoting *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 477 (N.D. Tex. 2004)).

Here, Defendants seek the production of emails exchanged between Plaintiffs' counsel and Kristie L. Walsdorf ("Walsdorf") and Drew Willey ("Willey").  Defendants argue that Walsdorf and Willey are both non-party fact witnesses who have submitted sworn declarations in support of Plaintiffs' Motion for Preliminary Injunction, and thus,

their communications with Plaintiffs' counsel are not subject to the attorney-client privilege.  Plaintiffs counter by arguing that roughly 10 email chains on the privilege log are protected from disclosure based on the attorney-client privilege because such emails were sent primarily to secure legal services.

The key fact underlying this dispute, which is not overtly discussed by either party, is that Walsdorf and Willey are both attorneys with criminal defense practices in the Galveston County area.  This fact is made very clear in the emails the Court has reviewed in camera.  Indeed, nearly every email concern Walsdorf's and Willey's efforts to secure legal services in civil court for their former criminal defense clients.  In light of this fact, the question for the Court is: Whether a criminal defense attorney's communication with potential counsel for his client in related civil litigation is privileged when confidential client information is provided?  The Court finds that the answer to this question must be yes.

To the extent that the emails were made in the course of Walsdorf's and Willey's preliminary discussions seeking to engage the American Civil Liberties Union to represent their current and former clients, such communications are privileged.  Applying this standard to the emails the Court has reviewed in camera, the Court finds that all but two of the email chains identified in Plaintiffs' privilege log are protected from disclosure by the attorney-client privilege.  Thus, Plaintiffs' assertion of the attorney-client privilege is sustained with two exceptions.

The two email chains described below—and listed on the privilege log—are only partially subject to the attorney-client privilege.

4

| Bates Nos | Date[2] | Time | Sender | Recipient | Privilege Claimed |
|---|---|---|---|---|---|
| Plaintiff 6995-6997 | 3/20/18 | 11:06AM | ttrigilio@aclutx.org | kwalsdorf@walsdorflaw.com | attorney-client/ work-product[3] |
| Plaintiff 6998-7020 | 3/20/18 | 11:00AM | ttrigilio@aclutx.org | kwalsdorf@walsdorflaw.com | attorney-client/ work-product |

**The 3/20/2018: 11:06AM Email Chain:** Some of the emails in this chain are subject to the attorney-client privilege because they are directly related to retaining counsel. Other portions of the email chain, however, are not subject to the attorney-client privilege because those emails contain musings about another lawsuit and do not involve communications made in an attempt to hire counsel. Specifically, Plaintiff 6995 and the top half of Plaintiff 6996 are not subject to the attorney-client privilege.

**The 3/20/2018: 11:00AM Email Chain:** Similarly, some of the emails in this chain are subject to the attorney-client privilege because they are directly related to retaining counsel. Other portions of the email chain, however, are not subject to the attorney-client privilege because the emails contain a discussion of a separate, unrelated lawsuit for which counsel was not sought. Specifically, Plaintiff 6998 and the top half of Plaintiff 6999 are not subject to the attorney-client privilege.

---

[2] The Court's chart uses the dates, times, and bates numbers identified in Plaintiffs' amended privilege logs.

[3] This section of the Order addresses only Plaintiffs' assertion of the attorney-client privilege. The work-product privilege is addressed below.

Therefore, the Court holds that the attorney-client privilege does not shield Plaintiffs from producing Plaintiff 6995 and Plaintiff 6998 and the top half of Plaintiff 6996 and Plaintiff 6999. All other documents listed on the privilege logs as falling under the rubric of the attorney-client privilege are protected from disclosure.

## WORK-PRODUCT PRIVILEGE

"The purpose of the work product privilege is to further the interests of clients and the cause of justice by shielding the lawyer's mental processes from his adversary." *In re Grand Jury Subpoena*, 220 F.3d 406, 408 (5th Cir. 2000) (citation and internal quotation marks omitted). Established by the United States Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947), the work-product doctrine is now codified in Federal Rule of Civil Procedure 26. Under the current version of the Federal Rules, a party ordinarily may not discover "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)" absent a showing of substantial need and inability to obtain their substantial equivalent without undue hardship. FED. R. CIV. P. 26(b)(3)(A). It is well-established that the burden of demonstrating the applicability of the work-product privilege rests on the party who invokes it—in this case, the Plaintiffs. *See Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985).

At issue in this case is whether email correspondence between counsel and a third-party witness is covered by the work-product privilege. At first blush, it might be inconceivable how documents exchanged with a third-party can fall within the sphere of privileged status. But, upon further reflection, the logic supporting the concept that the

work-product privilege extends to email correspondence between counsel and potential witnesses, so long as the documents are created for litigation purposes, is solid.

In *Hickman*, the Supreme Court held that a party is not entitled to "discovery as of right of oral and written statements of witnesses . . . . without any showing of necessity or any indication or claim that denial of such production would unduly prejudice the preparation of petitioner's case or cause him any hardship or injustice." 329 U.S. at 508– 09. Additionally, *Hickman* explicitly recognized that work an attorney undertakes to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy . . . . is reflected . . . in interviews, statements, [and] correspondence" such that these materials may aptly be termed "[w]ork product of the lawyer." *Id.* at 511. There is simply "no characteristic of email correspondence that materially distinguishes it from other written statements of witnesses with respect to application of the work-product privilege." *United States v. Dico, Inc.*, No. 4:10-cv-00503, 2017 WL 9049852, at *10 (S.D. Iowa Mar. 27, 2017) (citations omitted).  If a written statement made by a third-party witness is covered by the work-product privilege, it is hard to imagine why an email exchange between counsel and a third-party witness providing the same information would not be protected by the same privilege.  Accordingly, email correspondence with potential witnesses should be considered work-product if it is created for litigation purposes.

Almost a decade ago, a federal court in Maine aptly summarized why work-product protections should extend to email communications:

> [T]he attorney work-product privilege extends to the e-mail correspondence between Plaintiffs' counsel and potential witnesses because, like a short-hand or stenographic recording of a witness statement or interview, the e-mail interview was produced by counsel for litigation purposes and the participation by a witness in an e-mail interview is comparable to participation by a witness in a recorded oral interview or the creation of a written statement. The fact that the witness authors a portion of the e-mail correspondence chain and likely retains a copy of the correspondence does not undermine the privilege.

> As for authorship, an e-mail correspondence chain is still produced by counsel's skillful or tactical questioning despite the fact that the witness responds in writing rather than in words. I am unaware of any precedent holding that a witness statement is not work-product whenever it is the witness who puts pen to paper (or finger to keyboard) rather than counsel or counsel's agent. The *Hickman* decision, I note, includes correspondence among its list of protected papers. 329 U.S. at 511, 67 S.Ct. 385 (stating that work product is reflected in "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways"). A party should not be disadvantaged with respect to trial preparation simply because counsel used a tangible medium of communication rather than an oral interview. I am unaware of any basis in the law for denying work product protection to witness statements simply because the witness plays a role in writing out (or signing) the statement.

*Gerber v. Down E. Cmty. Hosp.*, 266 F.R.D. 29, 33 (D. Me. 2010). This reasoning is persuasive and, therefore, it is unsurprising that the overwhelming majority of courts recognize that draft declarations, the evolution of those declarations, and communications between witnesses are protected by the work-product doctrine. *See, e.g.*, 8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2024 (3d ed. 2012) ("Recent cases have generally held that draft affidavits, and communications with counsel relating to affidavits, are covered by the work-product rule."); *Live Nation Worldwide, Inc. v. Cohl*, No. 10-24144-CIV, 2011 WL 5597348, at *2–3 (S.D. Fla. Nov. 17, 2011) (extensively analyzing with approval cases holding that draft affidavits of a non-party and

related communications were protected by the work product doctrine); *Boyer v. Gildea*, 257 F.R.D. 488, 492–93 (N.D. Ind. 2009) ("Many district courts consider draft affidavits and communications with counsel relating to affidavits as covered by the attorney work product doctrine.") (citations and internal quotation marks omitted); *Randleman v. Fidelity Nat. Title Ins. Co.*, 251 F.R.D. 281, 285 (N.D. Ohio 2008) ("The trend is to consider draft affidavits and communications with counsel relating to affidavits as covered by the attorney work product doctrine.").

Defendants correctly observe that instead of uniformly treating the documents on the privilege log as protected from disclosure, the Court should conduct an extensive in camera inspection of the disputed documents to determine if each document actually contains the mental impressions, opinions, and legal theories of Plaintiffs' counsel sufficient to fall within the ambit of the work-product privilege. Taking the obligation to conduct a thorough in camera review of the documents seriously, the Court can report that the emails do contain the witnesses' mental impressions, conclusions, opinions and/or legal theories about the case. If these documents are disclosed, they could provide Defendants with insight into Plaintiffs' current legal strategy in this case. This is exactly the type of situation that the work-product doctrine seeks to avoid. The Court thus determines that (with the exception of the two documents described below) those documents listed on the privilege log as work-product documents do, indeed, shed a spotlight on the lawyers' thoughts, impressions and legal strategy surrounding the case. Such documents are not discoverable.

As mentioned above, Plaintiffs have asserted that the work-product privilege applies to the two email chains discussed in the attorney-client privilege section. The Court has already found that the attorney-client privilege does not shield Plaintiffs from producing the first page and a half of the 3/20/2018: 11:06AM and 3/20/2018: 11:00AM email chains. Thus, the Court's limited inquiry in this section is to determine whether those non-privileged (under the attorney-client privilege) pages of the email chains are nonetheless subject to the work-product privilege. The Court has reviewed the 3/20/2018: 11:06AM and 3/20/2018: 11:00AM email chains and finds that Plaintiff 6995 and Plaintiff 6998 and the top half of Plaintiff 6996 and Plaintiff 6999 do not contain the witnesses' mental impressions, conclusions, opinions and/or legal theories about the case. Consequently, the work-product privilege does not shield Plaintiffs from producing Plaintiff 6995 and Plaintiff 6998 and the top half of Plaintiff 6996 and Plaintiff 6999.

One last issue to address. Defendants argue that even if the Court determines that the documents on the privilege log are covered by the work-product privilege, they should still discover the documents because they have "'a substantial need for the materials to prepare [their] case and cannot, without undue hardship, obtain their substantial equivalent by other means.'" Dkt. 125 at 2 (quoting FED. R. CIV. P. 26(b)(3)(A)(ii)). Defendants specifically allege that they have demonstrated a substantial need for the materials because although Walsdorf and Willey were willing to sit down to discuss the case with Plaintiffs' counsel, they have refused to meet with Defendants' counsel, putting the Defendants in a position of unequal access and undue hardship. The Court is not persuaded. Although Walsdorf and Willey might not agree to a voluntary sit down with Defendants' counsel,

Defendants "can test the credibility of [these] witnesses through depositions . . . . Effective examination can uncover the extent to which someone other than the affiant 'framed' the statements in the affidavit, even if the attorney conducting the examination has not seen the prior versions." *Randleman*, 251 F.R.D. at 286. Defendants have, therefore, not overcome their burden to show both that they have a substantial need for the materials to prepare their case and that they cannot, without undue hardship, obtain the substantial equivalent of the materials by other means. *See In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982).

## CONCLUSION

For the reasons set forth above, the Court holds that the documents listed on the two privilege logs provided to the Court are, for the most part, protected from disclosure based on the attorney-client and work-product privileges. The only exceptions are the two email chains (the 3/20/2018 email chain at 11:06AM; and the 3/20/2018 email chain at 11:00AM) which are partially privileged. The Court orders the production of Plaintiff 6995 and Plaintiff 6998 and the top half of Plaintiff 6996 and Plaintiff 6999.

SIGNED at Galveston, Texas, this 10th day of October, 2018.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

11