United States District Court
Southern District of Texas

**ENTERED**

December 10, 2018

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| AARON BOOTH | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:18–CV–00104 |
| | § | |
| GALVESTON COUNTY, ET AL. | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

This lawsuit concerns Galveston County's pretrial detention system.  Plaintiff Aaron Booth ("Booth") alleges that arrestees in Galveston County ("the County") are routinely detained before trial solely due to their inability to pay bail in violation of the Equal Protection and Due Process Clauses of the United States Constitution.  Booth brings claims under 42 U.S.C. § 1983 against the County, six District Court Judges, three County Magistrates, and County District Attorney Jack Roady, asking for declaratory and injunctive relief.

The case was referred to this Court pursuant to 28 U.S.C. § 636(b)(1).  *See* Dkt. 102. Pending before the Court are Galveston County's First Amended Motion to Dismiss All Claims Pursuant to Rule 12(b)(6) (Dkt. 45); Magistrates' Motion to Dismiss Pursuant to Federal Rule of Civil Procedures 12(b)(1) and 12(b)(6) and Brief in Support (Dkt. 46); District Court Judges' Motion to Dismiss for Lack of Subject-Matter Jurisdiction and for Failure to State a Claim (Dkt. 47); Defendant Hon. Jack Roady's Motion to Dismiss (Dkt.

48); District Court Judge Defendants' Second Motion to Dismiss for Lack of Subject-Matter Jurisdiction (Dkt. 94); and Galveston County's First Motion to Dismiss Pursuant to Rule 12(b)(1) (Dkt. 127) (collectively "Defendants' Motions to Dismiss").

Having considered the parties' briefing, the applicable legal authorities, and oral argument, the Court recommends that: (i) all claims brought against the District Court Judges in their individual capacities be dismissed; (ii) all claims brought against the Magistrates in their official capacities be dismissed; and (iii) in all other respects, Defendants' Motions to Dismiss be denied.

## BACKGROUND[1]

Booth was arrested and charged with felony drug possession in the County on April 8, 2018. In consultation with a County prosecutor, the arresting officer set Booth's "bail at $20,000, the minimum amount permitted under [the] County's felony bail schedule." Dkt. 31 ¶ 16. Thereafter, the arresting officer booked Booth "into Galveston County Jail in the early morning hours of April 8." *Id.* Later that morning, Booth "saw a magistrate who automatically adopted [the $20,000] bail amount" without inquiring "about his ability to pay . . . [or] whether [Booth] is a flight risk or a danger to the community." *Id.* ¶ 17. During his appearance before the magistrate, Booth alleges that he "asked . . . for a court-appointed attorney and completed a 'pauper's oath' form to demonstrate that he is too poor to hire his own attorney." *Id.* ¶ 18. Booth also alleges that he "did not have the benefit of counsel at

---

[1] The following factual allegations are taken from the First Amended Complaint. At the motion to dismiss stage, the Court must accept the factual allegations set forth in the live complaint as true. The inclusion of these factual allegations here should not be misconstrued as findings of fact by this Court.

the time his bond was set, and so he did not have the opportunity to request, through counsel, an individualized bond determination based on his particular circumstances." *Id.* Because Booth did not have the ability to satisfy the $20,000 bail at the time of magistration, he was held in the County Jail.

The same day as his incarceration, Booth filed this suit asserting that the County's pretrial detention "practices . . . violate [his] substantive and procedural due process rights, infringe Equal Protection guarantees, and undermine the constitutional right to counsel." Dkt. 1 ¶ 4.   Almost one month later, on May 4, 2018, Booth filed a First Amended Complaint asserting three counts: (1) "Wealth-Based Imprisonment Fourteenth Amendment Due Process & Equal Protection Clauses Against All Defendants"; (2) "Procedural Due Process Fourteenth Amendment Due Process Clause Against Galveston County, Felony Judges, [County Court at Law] Judges, and Magistrates"; and (3) "Right to Counsel Sixth Amendment Right to Counsel Clause Against the [County Court at Law] and [District Court] Judges."[2] Dkt. 31 ¶¶ 127–137.  The First Amended Complaint seeks declaratory and injunctive relief, not monetary damages.  *See id.* ¶ 6.  The lawsuit names the District Court Judges and Magistrates in their individual and official capacities; the District Attorney  is sued solely in his official capacity.  *See id.* ¶¶ 11, 13–14.

In support of his constitutional claims, Booth alleges that the County has an unconstitutional standard operating procedure for ordering pretrial detention without first taking into consideration an arrestee's eligibility for release on nonfinancial conditions or

---

[2] The County Court at Law Judges are no longer parties to this case.  *See* Dkt. 95 (voluntary dismissal of all claims against the County Court at Law Judges).

inability to pay bail.[3]  Booth refers to this standard operating procedure as Galveston County's Bail Schedule Policy.  *See id.* ¶ 69 (explaining that the "County's pretrial detention practices" as described in the First Amended Complaint "constitute the Bail Schedule Policy").

The Bail Schedule Policy, as alleged, is multipronged.  After an arrestee is taken into custody, but before being booked into the County Jail, the arresting officer must prepare a preprinted bail order form identifying the charges levied against the arrestee, as well as a bail amount for each charge.  *See* Dkt. 31 ¶ 29.  In setting the bail amounts, for misdemeanor charges, the arresting officer utilizes bail amounts contained on a misdemeanor bail schedule promogulated by the District Attorney.  *See id.* ¶ 31.  For felony charges, the arresting officer calls the County prosecutor, who then relays the appropriate bail amount based solely on a felony bail schedule, which is also promulgated by the District Attorney.  *See id.* ¶ 30.  After completing the preprinted bail order form, an arrestee can be booked into the jail.  *See id.* ¶ 32.  An arrestee is then taken before a Magistrate, usually within 24 hours of incarceration.  *See id.* ¶ 33.  This proceeding is referred to as a "magistration."

At the magistration, the Magistrate conducts a brief hearing—Booth alleges the hearing lasts no more than one minute—where the arrestee is: (1) instructed not to ask questions; (2) unrepresented by counsel; and (3) only permitted to answer a few questions that are all unrelated to the issue of bail.  *See id.* ¶¶ 38–42, 44.  Sometime before the end of

---

[3] Booth's allegations are strikingly similar to a recent case involving Harris County.  *See ODonnell v. Harris Cty. (ODonnell I)*, 227 F. Supp. 3d 706, 715–22 (S.D. Tex. 2016).

the hearing, the Magistrate, who is empowered to make individual bail determinations, rubber stamps the preprinted bail amounts promulgated by the District Attorney without ever inquiring about the arrestee's ability or inability to pay bail. *See id.* ¶¶ 43, 48. Arrestees that can afford to pay the specified bail amounts can make a payment and go free. Arrestees who cannot afford to purchase their freedom remain imprisoned at the County Jail. *See id.* ¶ 50.

Booth alleges that, within a week or so after magistration, an arrestee will have an opportunity to appear before a County Court at Law Judge. *See id.* ¶¶ 51, 54. The County Court at Law Judge only considers guilty pleas, so if an arrestee does not intend to plead guilty, the arrestee will remain imprisoned for approximately another week before appearing before a District Court Judge that may finally—though not immediately—consider the issue of bail reduction. *See id.* ¶¶ 54–61.

In sum, Booth alleges that the overall impact of the Bail Schedule Policy is that "the vast majority of people booked into Galveston County Jail," many of whom simply cannot afford bail, will spend "more than a week [incarcerated] unless they plead guilty or pay the secured bail listed in the applicable bail schedule." *Id.* ¶ 69. Booth alleges that the County's Bail Schedule Policy is, therefore, unconstitutional. Booth has filed this lawsuit on behalf of himself and all others similarly situated under Federal Rule of Civil Procedure 23(b)(2). *See id.* ¶ 111.

The Defendants have filed motions to dismiss contesting the sufficiency of Booth's factual allegations and many of his legal suppositions.

## MOTION TO DISMISS STANDARD

Because Defendants' Motions to Dismiss seek dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the Court will first address the applicable legal standards.

### A.    Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge the subject matter of the district court to hear a case.   When a court evaluates subject matter jurisdiction, it may consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."   *Spotts v. United States*, 613 F.3d 559, 566 (5th Cir. 2010) (internal quotation marks and citation omitted).

The standard of review for a 12(b)(1) motion to dismiss turns on whether the defendant has made a "facial" or "factual" jurisdictional attack on the plaintiff's complaint. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).   A defendant makes a "facial" jurisdictional attack by merely filing a motion under Rule 12(b)(1) challenging the court's jurisdiction.   *See id*.   Under a "facial" attack, the court is only required to assess the sufficiency of the allegations contained in the plaintiff's complaint, which are presumed to be true.   *See id*.   A "factual" attack, however, is made by providing affidavits, testimony, and other evidentiary materials challenging the court's jurisdiction.   *See id*.   When a "factual" jurisdictional attack is made by a defendant, the plaintiff must submit facts in support of the court's jurisdiction, and he bears the burden of proving by a preponderance of the evidence that the court, in fact, has subject-matter jurisdiction.   *See id*.

**B.      Rule 12(b)(6)**

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  This pleading standard does not require "detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted).  Under Rule 12(b)(6), a party may "move for dismissal for a failure to state a claim upon which relief can be granted."  *Lemieux v. Am. Optical Corp.*, 712 F. App'x 409, 412 (5th Cir. 2018) (internal quotation marks omitted).  "The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true."  *Lowrey v. Tex. A&M Univ. Syst.*, 117 F.3d 242, 247 (5th Cir. 1997) (citation omitted).

Dismissal is appropriate "when a plaintiff fails to allege sufficient facts that, taken as true, state a claim that is plausible on its face."  *Amacker v. Renaissance Asset Mgmt. LLC*, 657 F.3d 252, 254 (5th Cir. 2011) (citation omitted).  However, "[m]otions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted."  *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation marks and citation omitted).  "Determining whether the plausibility standard has been met is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

## THE COURT POSSESSES SUBJECT MATTER JURISDICTION

**A.     The Mootness Doctrine**

### 1. Booth's Release from Jail Does Not Moot This Case

As an initial matter, Defendants challenge whether Booth's First Amended Complaint presents a justiciable controversy under the constitutional case-or-controversy requirement. *See* U.S. CONST. art. III, § 2, cl. 1. Defendants assert that Booth's claims are moot because his criminal case is over[4] and he, therefore, lacks any personal stake in how magistration is conducted in the future.

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (citation omitted). Generally speaking, "[t]he mootness doctrine requires that the controversy posed by the plaintiff's complaint be 'live' not only at the time the plaintiff files the complaint but also throughout the litigation process." *Rocky v. King*, 900 F.2d 864, 866 (5th Cir. 1990). There is, however, a notable exception. When class actions are involved, the Supreme Court has explained that "the Art[icle] III mootness doctrine" is "flexible." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 400 (1980). Indeed, the Supreme Court has expressly held on several occasions that, in a class action challenging procedures for pretrial detention, the release of the named plaintiff from jail does not moot the action. *See Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 51–52 (1991); *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975).

---

[4] On August 3, 2018, Booth pled guilty to felony possession of a controlled substance. *See* Dkt. 94-1 at 31–37.

In *Gerstein*, a putative class of pretrial detainees alleged the state violated their constitutional rights by not providing a prompt probable cause hearing.  420 U.S. at 106–107.  In explaining why the class claims were not rendered moot by the release of the named plaintiffs from jail, the high court noted:

> Pretrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted.  The individual could nonetheless suffer repeated deprivations, and it is certain that other persons similarly situated will be detained under the allegedly unconstitutional procedures.  The claim, in short, is one that is distinctly capable of repetition, yet evading review.

*Id.* at 110 n.11.  This authority is directly on point and compels a finding that the class action allegations generate a continuing controversy even though Booth's pretrial detention has ended.

The District Court Judges direct the Court to the Supreme Court's recent opinion in *U.S. v. Sanchez-Gomez*, 138 S. Ct. 1532 (2018), to support their argument that this case should be dismissed as moot because Booth has no pending criminal charges against him.  The District Court Judges' reliance on *Sanchez-Gomez* is completely misplaced.  In *Sanchez-Gomez*, the Supreme Court did find that the constitutional challenges of four pretrial detainees' were rendered moot because they were no longer in pretrial custody, but, importantly, there were no class action allegations at play—a fact that significantly distinguishes *Sanchez-Gomez* from the case at hand.  *See id.* at 1538.  Writing for a unanimous Court, Chief Justice John Roberts specifically noted in *Sanchez-Gomez* that "'class-like claims' seeking 'class-like relief'" are "sufficient to trigger the application of *Gerstein* and save [a] case from mootness" despite the termination of a named plaintiff's

criminal case. *Id.* At the same time, Justice Roberts made clear that "[w]e reject the notion that *Gerstein* supports a freestanding exception to mootness outside the class action context." *Id.* The case currently before the Court is a putative class action and, as such, the case remains live even if the named representative's interest in the case expires before the litigation is completed. *See ODonnell v. Harris Cty. (ODonnell II)*, No. H-16-1414, 2017 WL 1542457, at \*7 (S.D. Tex. Apr. 28, 2017) (certifying class of pretrial detainees challenging procedures for pretrial detention months after named plaintiffs were released).

**2. Recent Changes to the County's Bail Setting Process Do Not Moot Booth's Claims**

The County claims that recent changes to its bail setting process deprive the Court of subject matter jurisdiction over this case because any constitutionally required prospective change sought by Booth has already been put in place. According to the County, new procedures implemented on July 1, 2018, give arrestees the opportunity to complete a financial affidavit and have such information provided to the Magistrates before a bail decision is made. Additionally, the County observes that starting October 1, 2018, within 48 hours of arrest, arrestees who have not been released will be taken before a Magistrate for a bail review hearing where a defense lawyer is present to assist the arrestee in presenting a case to the Magistrate for reduced bail. The County also contends that Magistrates are now asked to provide written factual findings or provide a factual finding on the record to explain decisions not to lower bail. Moreover, the Commissioners Court allegedly recently hired new Magistrates and created, funded, and filled new positions in a pretrial release department, helping to reduce the backlog arrestees face when awaiting a

bail determination.  By specifically considering an arrestee's ability to pay and providing a bail review hearing with counsel within 48 hours of arrest, the County argues that even if Booth had a colorable complaint about the policies and procedures in place at the time the lawsuit was filed, there is no longer a live controversy and nothing more to grant Booth in this case.

A party seeking to moot an issue in litigation through its own "voluntary conduct" bears a "heavy," "stringent," and "formidable burden of showing that it is *absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.*"  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 189–90 (2000) (emphasis added, citations omitted).  "A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case."  *Id.* at 174.  *See also K.P. v. LeBlanc*, 729 F.3d 427, 438 (5th Cir. 2013) ("[a] defendant cannot automatically moot a case simply by ending its [challenged] conduct once sued.").  "If it did, the courts would be compelled to leave the defendant . . . free to return to his old ways."  *Friends of the Earth,* 528 U.S. at 189 (internal quotation marks, brackets, and citations omitted).

Here, the County cannot bear its heavy burden of proving that the complained of conduct will not recur in the future.  For starters, although the County contends that "steps have been taken to put in place additional procedural safeguards to ensure an arrestee's ability to pay is taken into consideration," the record is not altogether clear as to what actual changes have been made to the County's bail setting process.  Dkt. 127 at 9.  The County points to a document it says represents the newly adopted County bail procedures, but there is no admissible evidence indicating whether these bail procedures have actually been

adopted, by whom they were adopted, and/or whether they are being utilized today.  The issue is further muddled by certain deposition testimony presented to the Court, which suggests that the alleged new County bail processes are not uniformly and consistently employed today.  For example, Magistrate Kerri Foley readily acknowledges that she does not believe that "anybody is ordering me to follow [the new procedures]" and it is in her "discretion as a magistrate to follow or not follow these procedures."  Dkt. 139-1 at 32.  *See also id.* at 38 (testifying that the Commissioners' Court has never formally or informally instructed her on how to perform magistration).   Judge Lonnie Cox, the Local Administrative District Court Judge, testified that he does not know who proposed the purported new procedures document, and does not believes it is "an accurate statement of the bail procedures in Galveston County as of August 8, 2018."  Dkt. 120-1 at 32.

The County steadfastly maintains that there are new and improved bail processes in place, and even presented the Court within the past few days recent deposition testimony from County Judge Mark Henry asserting that changes have, in fact, been made to the magistration process.  But the issue is, in the Court's mind, jumbled and far from clear, especially given the contradictory testimony from Magistrate Foley and Judge Cox.  Moreover, as Booth points out, the County continues to defend the bail system that was in place at the time of the filing of the lawsuit.  This factor weighs against the County satisfying its heavy burden of proof on the subject matter jurisdiction issue because it belies an intention to return to such conduct in the future.  *See Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007).  Indeed, a number of courts across the country considering class actions challenging bail procedures have held that there exists a

live controversy even though the local governmental unit recently adopted procedural changes to the bail system. *See Walker v. City of Calhoun*, 901 F.3d 1245, 1271 (11th Cir. 2018); *Schultz v. Alabama*, 330 F. Supp. 3d 1344, 1357 (N.D. Ala. 2018); *Caliste v. Cantrell*, 329 F. Supp. 3d 296, 305 (E.D. La. 2018).

Because the County bears such a stout burden to demonstrate that the alleged wrongful behavior could not reasonably be expected to recur, the Court is unwilling to dismiss the case at this stage for a lack of subject matter jurisdiction.[5]  That being said, the Court is quite interested in hearing details concerning any new bail procedures recently implemented by the County and will certainly revisit the subject matter jurisdiction issue, if appropriate, after the record is more fully developed at the class certification/preliminary injunction hearing.  *See Mansfield, C. & L. M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884) (a challenge to a federal court's subject-matter jurisdiction may be made at any stage of the proceedings, and the court should raise the question *sua sponte*); FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  To be clear, the Court fully recognizes that the subject matter jurisdiction issue "will not always be conclusively resolved at the pleading stage and must be evaluated at 'the successive stages of the litigation.'"  *Galveston Open Gov't Project v.*

---

[5] Booth also claims that even if new bail procedures are, as the County contends, fully implemented and in effect, the procedures are inadequate to remedy the ongoing constitutional harm.  This is a merits-based inquiry that the Court will not wade into at this time.  That issue is best left for the class certification/preliminary injunction hearing.  *See Montez v. Dep't of Navy*, 392 F.3d 147, 150 (5th Cir. 2004) (where there is an intertwined attack on jurisdiction and merits, "resolution of the jurisdictional issue on a 12(b)(1) motion [is] improper").

*U.S. Dep't of Hous. & Urban Dev.*, 17 F. Supp. 3d 599, 610 n.8 (S.D. Tex. 2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

**B.      The Standing Doctrine**

The District Court Judges and District Attorney next argue that Booth lacks standing to proceed against them.  As noted above, the thrust of Booth's claim in this lawsuit is that the County routinely detains arrestees by imposing money bail using a preset bail amount without first taking into consideration an arrestee's eligibility for release on nonfinancial conditions or inability to pay bail.  The District Court Judges assert that Booth lacks standing against them because they took no part in the initial detention proceeding and did not create a policy that required Magistrates to ignore the financial condition of the arrestees when making an initial bail determination.  Meanwhile, the District Attorney asserts that Booth's claims fail because the District Attorney does not set the bail amount and there are no actionable allegations of specific conduct tying the District Attorney to the alleged violation of any constitutional rights.

Article III of the U.S. Constitution limits the power of federal courts to the resolution of "Cases" and "Controversies."  U.S. CONST. art. III, § 2.  The requirement that a plaintiff establish standing to bring suit "is an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan*, 504 U.S. at 560.  Every federal court plaintiff must therefore meet the "irreducible constitutional minimum" of Article III standing, which requires: (1) an injury in fact that is concrete, particularized, and actual or imminent; (2) that the injury be fairly traceable to the challenged action; and (3) that the

injury can be redressed by a favorable ruling. *Id.* at 560–61. *See also Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010).

Article III standing does not require the District Court Judges or District Attorney to be the most immediate cause, or even a proximate cause, of Booth's injuries; rather, it requires only that those injuries be "fairly traceable" to the District Court Judges or District Attorney. *See League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 431 (5th Cir. 2011) ("The causation element does not require a party to establish proximate causation, but only requires that the injury be 'fairly traceable' to the defendant.") (citing *Bennett v. Spear*, 520 U.S. 154, 168–69 (1997)). Thus, Booth need only allege an injury that can be fairly traced to the actions of a particular defendant. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

Although the District Court Judges and District Attorney attempt to distance themselves from the decision making process related to how bail is set in the County, Booth makes detailed allegations in the First Amended Complaint that both the District Court Judges and District Attorney are highly involved in the policies and procedures that result in certain individuals being detained solely because they cannot pay the set bail amounts. With respect to the District Attorney, Booth alleges that (i) "the District Attorney requires the duty prosecutor to set bail on each charge by referring to the felony bail schedule"; (ii) the District Attorney "permits the duty prosecutor to set bail amounts that deviate upward from this schedule, but not down"; (iii) in setting the bail amount, the District Attorney makes no inquiry into the arrestee's ability to pay; and (iv) the District Attorney knows that

the bail amounts set by his duty prosecutors are "automatically" adopted by the Magistrates.

Dkt. 31 ¶¶ 17, 30, 96.

As far as the District Court Judges are concerned, Booth clearly alleges that the District Court Judges contributed to his injury by authorizing, maintaining, and enforcing the County's Bail Schedule Policy.  In Booth's response to Defendants' Motions to Dismiss, he points to the specific allegations he made in the First Amended Complaint:

> Despite having actual knowledge of the constitutional deprivations caused by the Bail Schedule Policy *and* the power to prevent them, the [District Court] Judges 'have not taken any action to require individualized bail hearings in Galveston County,' Am. Compl. ¶ 107, and have failed to 'implement[] any meaningful alternatives to pretrial detention, other than trying to collect money from people who are released.' *Id.* ¶ 101(d).

Dkt. 111 at 13.  Because the Court must accept the material allegations in the First Amended Complaint as true and construe them in the light most favorable to the complaining party, this Court's hands are tied at this stage of the case.  *See Warth v. Seldin*, 422 U.S. 490, 501 (1975).  The allegations set forth above are, undoubtedly, sufficient to establish standing. *See Spokeo*, 136 S. Ct. at 1547 ("Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element.") (internal quotation marks, alteration, and citation omitted).

**C.     The *Younger* Abstention Doctrine**

Defendants next argue that the Court should abstain from hearing this lawsuit under the *Younger* abstention doctrine.  In *Younger v. Harris*, 401 U.S. 37, 43–44 (1971), the Supreme Court held that principles of comity and federalism require federal courts to avoid interference with ongoing state proceedings if the state court provides an adequate forum to

present federal constitutional challenges.  *Younger* abstention is required when there is: (1) "an ongoing state judicial proceeding"; (2) that "implicate[s] important state interests"; and (3) offers "adequate opportunity" to "raise constitutional challenges." *Middlesex Cty. Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

Defendants' *Younger* abstention doctrine argument is foreclosed by the Fifth Circuit's decision earlier this year in *ODonnell v. Harris Cty. (ODonnell III)*, 892 F.3d 147 (5th Cir. 2018).  *ODonnell III* was a challenge to Harris County's pretrial bail system similar in many respects to this case.  In *ODonnell III*, the Fifth Circuit held that the defendants could not meet the third prong of the *Younger* test.

> As the Supreme Court has already concluded, the relief sought by ODonnell— i.e., improvement of pretrial procedures and practice—is not properly reviewed by criminal proceedings in state court.  *See Gerstein v. Pugh*, 420 U.S. 103, 108 n.9, 95 S. Ct. 854, 43 L.Ed.2d 54 (1975) (noting that abstention did not apply because "[t]he injunction was not directed at the state prosecutions as such, but only at the legality of pretrial detention without a judicial hearing, an issue that could not be raised in defense of the criminal prosecution"); *see also Pugh v. Rainwater*, 483 F.2d 778, 781–82 (5th Cir. 1973) (noting that a federal question whose "resolution . . . would [only] affect state procedures for handling criminal cases . . . is not 'against any pending or future court proceedings *as such*'" (quoting *Fuentes v. Shevin*, 407 U.S. 67, 71 n.3, 92 S. Ct. 1983, 32 L.Ed.2d 556 (1972))), *rev'd on other grounds by Gerstein*, 420 U.S. 103, 95 S. Ct. 854, 43 L. Ed. 2d 54.  As the district court noted, the adequacy of the state court review of bail-setting procedures is essential to ODonnell's federal cause of action.  In short, "[t]o find that the plaintiffs have an adequate hearing on their constitutional claim in state court would decide [its] merits."
>
> We also note that the policy concerns underlying this doctrine are not applicable here.  The injunction sought by ODonnell seeks to impose "nondiscretionary procedural safeguard[s]," which will not require federal intrusion into pre-trial decisions on a case-by-case basis. *Tarter v. Hury*, 646 F.2d 1010, 1013–14 (5th Cir. Unit A June 1981); *compare O'Shea v. Littleton*, 414 U.S. 488, 499–502, 94 S. Ct. 669, 38 L.Ed.2d 674 (1974) (noting that the enforcement of the improper injunction in question required "continuous

> supervision by the federal court over the conduct of the petitioners in the course of future criminal trial proceedings involving any of the members of the respondents' broadly defined class").  Such relief does not implicate our concerns for comity and federalism.

*Id.* at 156–57.  The same analysis applies with equal force to this case.  To their credit, Defendants readily admitted at oral argument that the Fifth Circuit *ODonnell III* decision is binding on this Court and requires rejection of the *Younger* abstention argument.  Defendants, nonetheless, continue to advance the *Younger* abstention argument simply to preserve the argument for a possible future appeal.  Not surprisingly, the Court follows the Fifth Circuit precedent directly on point and finds that the *Younger* abstention doctrine does not apply in this case.

**D.    Habeas Corpus is Not Booth's Sole Federal Remedy**

Next, citing *Preiser v. Rodriguez*, 411 U.S. 475 (1973), Defendants contend that Booth's sole federal remedy is a writ of habeas corpus—not a Section 1983 action.  In *Preiser,* plaintiffs were state prisoners who brought a civil rights action in federal court under Section 1983, alleging that they had been deprived unconstitutionally of their good conduct time credits.  *See id.* at 476.  The plaintiffs sought injunctive relief to restore the credits, which in each case would have resulted in their immediate release.  *See id.*  The Supreme Court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a  speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."  *Id.* at 500.

The Supreme Court has explained that, under *Preiser*, a Section 1983 "action is barred . . . *if* success in that action would *necessarily* demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) (second emphasis added).  Where an individual does not seek an "injunction ordering . . . immediate or speedier release into the community . . . and a favorable judgment would not necessarily imply the invalidity of their convictions or sentences," he or she may "properly invoke[ ] § 1983." *Skinner v. Switzer*, 562 U.S. 521, 523–24 (2011) (internal quotation marks, brackets, and citation omitted).  In other words, Booth is not barred from bringing a Section 1983 claim simply because he "hope[s]" or "believe[s] that victory . . . will lead to speedier release from prison." *Dotson*, 544 U.S. at 78.[6]

In rejecting a *Preiser* argument raised by the defendants in the *ODonnell* case, Chief Judge Lee Rosenthal observed:

> In general, the cases applying *Preiser* hold that its requirement that parties resort to the federal habeas statutes rather than to § 1983 applies most strongly in cases challenging an ongoing detention on the ground that a prisoner's conviction or sentence was legally invalid.  *See, e.g.*, *Boyd v. Biggers*, 31 F.3d 279 (5th Cir. 1994); *Caldwell v. Line*, 679 F.2d 494 (5th Cir. 1982).  A party challenging nonconviction administrative decisions, such as decisions of a parole board, must exhaust habeas remedies "[i]f a prisoner challenges a single hearing as constitutionally defective."  *Serio*, 821 F.2d at 1118.  But "broad-based attacks," such as class actions challenging regulatory procedures that do not "automatically entitle" claimants to release but only "enhance

---

[6] *Preiser* is not as expansive as Defendants suggest.  Indeed, the Fifth Circuit has recognized that "[a]lthough the principles set forth in *Preiser* are couched in absolute terms, [subsequent decisions] dim its bright-line test by demonstrating that *Preiser* does not preclude all § 1983 challenges that would, if successful, cast doubt on the validity of state administrative decisions bearing on the fact or duration of state prisoners' confinement."  *Serio v. Members of La. State Bd. of Pardons*, 821 F.2d 1112, 1116 (5th Cir. 1987) (citing *Greenholtz v. Inmates of the Neb. Penal and Corr. Complex*, 442 U.S. 1 (1979); *Gerstein*, 420 U.S. 103; and *Wolff v. McDonnell*, 418 U.S. 539 (1974)).

> eligibility for accelerated release," may be brought under § 1983 without a
> habeas exhaustion requirement. *Id.* at 1119.

*ODonnell v. Harris Cty. (ODonnell IV)*, 260 F. Supp. 3d 810, 816 (S.D. Tex. 2017).

Defendants' *Preiser* argument fails because, just like the plaintiffs in *ODonnell IV*, Booth

seeks nothing that requires or hastens any person's release, that is, nothing that *necessarily*

"demonstrate[s] the invalidity of [anyone's] confinement or its duration." *Dotson*, 544 U.S.

at 74–75.  Importantly, Booth does not challenge the validity of his arrest or any ongoing

confinement.  To the contrary, he readily acknowledges that he pled guilty to the charged

offense and his case has concluded so he no longer is behind bars.  In an effort to vindicate

basic rights, Booth seeks an injunction requiring constitutionally adequate processes to

determine post-arrest release or detention.   Such an injunction, Booth claims, would

fundamentally alter how the bail system in the County operates by, among other thing,

requiring a prompt hearing inquiring into ability to pay, appointment of defense counsel for

such a hearing, and reasoned written findings of the arrestee's ability to pay.  Like the

plaintiffs in the recent challenge to Harris County's pretrial detention system, Booth

"mount[s] a broad-based challenge to [the] County's administration of its bail procedures,

but [does] not seek or assert 'entitlement' to pretrial release."  *ODonnell IV*, 260 F. Supp. 3d

at 816.  *Preiser* is, therefore, inapplicable here.  *See Holland v. Rosen*, 277 F. Supp. 3d 707,

738 (D.N.J. 2017) (*Preiser* inapplicable because the plaintiff "does not seek an injunction

ordering his immediate or speedier release into the community, but rather an injunction

ordering a hearing that conforms to his conception of his constitutional rights under the

Fourth, Eighth, and Fourteenth Amendments."); *Walker v. City of Calhoun*, No. 4:15-CV-

0170-HLM, 2016 WL 361612, at *13 (N.D. Ga. Jan. 28, 2016) (in a similar challenge to pretrial detention system, the district court found "unpersuasive Defendant's argument that Plaintiff should have brought his challenge in a petition for a writ of habeas corpus.  As Plaintiff points out, a successful challenge to this litigation would not necessarily shorten Plaintiff's time in custody."), *vacated on other grounds*, 682 F. App'x 721 (11th Cir. 2017).

Defendants' reliance on *Gerstein* to support their position is improper.  In *Gerstein*, a Florida case that challenged pretrial detention without a probable cause hearing, the Supreme Court found the *Preiser* doctrine inapplicable because plaintiffs did not seek and the court did not order release from custody as a remedy.  *See* 420 U.S. at 107 n.6.  The only relief sought in *Gerstein* was an order that the state grant plaintiffs a probable cause hearing.  *See id*.  As in *Gerstein*, Booth does not allege a general entitlement to pretrial release but rather challenges the policies and practices that comprise the County's pretrial detention policy.  *See Coleman v. Stanziani*, 570 F. Supp. 679, 684 (E.D. Pa. 1983) (*Preiser* inapplicable because "[i]n the case at bar, plaintiffs are not seeking release from pretrial detention as a remedy.  Just as in [a number of Supreme Court cases, including *Gerstein*], plaintiffs here challenge the standards and procedures by which they are committed rather than the fact or duration of their incarceration.").  Accordingly, the Court finds that Booth has properly invoked Section 1983 and need not proceed exclusively through a petition for a writ of habeas corpus.

## OTHER DEFENSES

**A.      The *Parratt/Hudson* Doctrine**

The Magistrates argue that Booth's procedural due process claim under the Fourteenth Amendment is barred by the *Parratt/Hudson* doctrine.  The *Parratt/Hudson* doctrine provides that a state actor's random and unauthorized deprivation of a plaintiff's property does not result in a violation of procedural due process rights if the state provides an adequate post-deprivation remedy.  *See Parratt v. Taylor,* 451 U.S. 527, 544 (1981); *Hudson v. Palmer*, 468 U.S. 517 (1984).  The underlying rationale of the doctrine "is that when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply 'impracticable' since the state cannot know when such deprivations will occur."  *Hudson,* 468 U.S. at 533.  Accordingly, the *Parratt/Hudson* doctrine does not apply when "erroneous . . . deprivation[s are] foreseeable" and "predeprivation procedures are practicable."  *Plumer v. Maryland*, 915 F.2d 927, 931 (4th Cir. 1990).

Booth does do not allege that his deprivation was unforeseeable, random, and unauthorized.  Just the opposite, it is Booth's contention that the County and its officials have violated his constitutional rights through a standard operating procedure created by systematic, deliberate policy choices.  As a result, Booth has sufficiently alleged that the challenged conduct was authorized, the deprivation was foreseeable, and a pre-deprivation process would have been practicable.  *See Zinermon v. Burch*, 494 U.S. 113, 128 (1990).  Therefore, the *Parratt–Hudson* doctrine does not bar Booth's claim at this stage of the proceedings.

### B.    Immunity Issues

The District Attorney contends that three types of immunity—sovereign immunity, prosecutorial immunity, and qualified immunity—protect him from suit.  The District Court Judges contend that sovereign immunity protects them from suit.  The Court will examine each type of immunity asserted, but ultimately finds these arguments unavailing.

**Sovereign Immunity:** The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI.  "Absent waiver by the state of sovereign immunity or a valid congressional override, the Eleventh Amendment bars the institution of a damages action in federal court against a state or state instrumentality."  *Sabine Pipe Line, LLC v. A Permanent Easement of 4.25 +/- Acres of Land in Orange Cty.*, 327 F.R.D. 131, 138 (E.D. Tex. 2017) (collecting cases).  *The Ex parte Young* doctrine, however, provides a narrow exception to Eleventh Amendment immunity when a plaintiff sues official capacity defendants for an allegedly ongoing violation of federal law and seeks prospective, declaratory, or injunctive relief.  *See Ex parte Young*, 209 U.S. 123, 155–56 (1908).  To determine whether *Ex parte Young* applies, the "court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"  *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Couer d'Alene Tribe of Idaho*, 521 U.S.

261, 296 (1997) (O'Connor, J., concurring in part, and dissenting in part)).  Because Booth

seeks prospective relief in this lawsuit, his claim is not barred by sovereign immunity.

The District Attorney argues that the reasoning in *Couer d'Alene* precludes the

application of the *Ex parte Young* doctrine in this case.  The Court respectfully disagrees.

*Couer d'Alene* addressed a unique, narrow exception that is not present in this action.  In

*Couer d'Alene*, the Couer d'Alene Tribe sought an injunction for an allegedly "ongoing

violation of its property rights in contravention of federal law."  521 U.S. at 281.  The

Supreme Court viewed the "the Tribe's suit [as] the functional equivalent of a quiet title

action." *Id.*  In the high court's view, the "implicat[ion of] special sovereignty interests" in

*Couer d'Alene* prevented the tribe from proceeding with its action against state officials

who, allegedly, were wrongfully in possession of tribal lands.  *Id.* at 265–66.  Those facts

are significantly different from the facts in this case.  There are no special sovereignty

interests at issue when it comes to the County's pretrial bail system.  As such, the Court

finds that the *Ex parte Young* exception applies in this case, and *Couer d' Alene* does not

dictate a contrary result.

**Prosecutorial Immunity:** The District Attorney also argues that prosecutorial

immunity protects him from a Section 1983 lawsuit challenging his bail recommendations.

Under the prosecutorial immunity doctrine, prosecutors are entitled to absolute immunity in

civil rights damage lawsuits when their prosecutorial activities are "intimately associated

with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430

(1976). Importantly, absolute prosecutorial immunity is inapplicable to suits for prospective

relief.  *See Johnson v. Kegans*, 870 F.2d 992, 998–99 (5th Cir. 1989) (citing *Pulliam v.*

*Allen*, 466 U.S. 522, 541 (1984)).  Because Booth brings a claim for prospective relief, the District Attorney cannot rely on judicial immunity as a defense.

**Qualified Immunity:** Last but not least, the District Attorney contends that the doctrine of qualified immunity shields him from claims brought against him in his official capacity.  As was the case with sovereign immunity and prosecutorial immunity, qualified immunity does not provide the District Attorney the panacea he seeks.  This is because qualified immunity does not apply to claims for prospective relief.  *See Williams v. Ballard*, 466 F.3d 330, 334 & n.7 (5th Cir. 2006).  Therefore, the District Attorney's qualified immunity argument fails as a matter of law.

**C.**     **Booth's Claims are Not "Covered" by the Fourth or Eighth Amendments**

The Magistrates next contend that Booth's substantive due process claims should be dismissed because they are "covered" by the Fourth and Eighth Amendments.  In this regard, the Magistrates argue that the Fourth and Eighth Amendments "provide[] an explicit textual source of constitutional protection" against the County conduct underlying Booth's claims, and thus, "th[e] Amendment[s], not the more generalized notion of 'substantive due process,' must be the guide for analyzing [Booth's] claims."  *Graham v. Connor*, 490 U.S. 386, 395, (1989).

In seeking to apply the Fourth and Eighth Amendment rubrics to this case, the Magistrates describe Booth's claims in two ways.  First, the Magistrates construe Booth's claim as a simple challenge to his detention.  *See* Dkt. 46 at 25 ("Plaintiffs' claim for a violation of the alleged substantive due process right to pretrial release on bond is actually a challenge to Plaintiffs' detention.").  Based on this construction, the Magistrates cite to

25

*Mercado v. Dallas Cty.*, No. 3:15-CV-3481-D, 2016 WL 3166306 (N.D. Tex. June 7, 2016) and *Mercado v. Dallas Cty.*, 229 F. Supp. 3d 501 (N.D. Tex. 2017) for the proposition that challenges to detention are properly brought under the Fourth Amendment, which requires that a seizure be supported by probable cause.  Next, the Magistrates construe Booth's claim as a "challenge [to the Magistrates] . . . setting . . . bond that [he] could not afford."  Dkt. 46 at 26.  Based on this construction, the Magistrates argue such a "claim should be brought under the Eighth Amendment," which "specifically prohibits excessive bail."  *Id.*

Each of the Magistrates' constructions miss the mark, and so their legal arguments fall flat.  Booth is not simply contesting the fact of his detention or asserting a right to affordable bail (i.e., bail that is not excessive).  Rather, Booth is challenging the process by which bail terms are set for indigents in the County.  In *ODonnell III*, the Fifth Circuit expressly held in a strikingly similar dispute that it should be evaluated under due process and equal protection concerns rather than the Eighth Amendment.  *See* 892 F.3d at 157. "'The incarceration of those who cannot [pay money bail], without meaningful consideration of other possible alternatives, infringes on both due process and equal protection requirements.'"  *Id.*  (quoting *Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978)).  *See also Walker*, 901 F.3d at 1258 ("[T]he demands of equal protection of the laws and of due process prohibit depriving pre-trial detainees of the rights of other citizens to a greater extent than necessary to assure appearance at trial and security of the jail.") (quoting *Rainwater*, 572 F.2d at 1057).  Booth's claims fall within this framework, and the Magistrates have offered no authority to convince this Court to hold otherwise.

## SIXTH AMENDMENT LIABILITY

In addition to arguing that the County violates Equal Protection and Due Process rights by jailing arrestees when they are unable to pay set bonds, Booth contends that the absence of court-appointed counsel at the time of an initial bail hearing violates an arrestee's rights to counsel under the Sixth Amendment.  In response, the District Court Judges argue that the Sixth Amendment does not require court-appointed counsel to be present at the initial bail-setting hearing.

The Sixth Amendment guarantees an accused the right to the assistance of counsel, providing in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. CONST. amend. VI.  The importance of the Sixth Amendment's right to counsel is hardly open to debate; its inclusion in the Bill of Rights firmly establishes its significance.

In determining the parameters of the right to counsel, the Supreme Court has held that the Sixth Amendment requires that the government provide counsel for those who cannot afford it at "critical stages" of criminal proceedings.  *See Bell v. Cone*, 535 U.S. 685, 695–96 (2002).  "Critical stages" are those that "h[o]ld significant consequences for the accused."  *Id.  See also Rothgery v. Gillespie Cty.*, 554 U.S. 191, 212 n.16 (2008) ("The cases have defined critical stages as proceedings between an individual and agents of the State (whether formal or informal, in court or out) that amount to trial-like confrontations, at which counsel would help the accused in coping with legal problems or meeting his adversary.") (internal quotation marks and citations omitted); *McAfee v. Thaler*, 630 F.3d 383, 391 (5th Cir. 2011) ("Critical stages" occur "where 'the accused required aid in coping

with legal problems or assistance in meeting his adversary,' and the 'substantial rights of the accused may be affected.'") (quoting *United States v. Ash*, 413 U.S. 300, 311 (1973)).   The Supreme Court has found "critical stage" proceedings include preliminary hearings, arraignments, and plea negotiations.   *See Coleman v. Alabama*, 399 U.S. 1, 10 (1970) (preliminary hearings); *Hamilton v. Alabama*, 368 U.S. 52, 54 (1961) (arraignments); *Missouri v. Frye*, 566 U.S. 134, 139 (2012) (plea negotiations).

There can really be no question that an initial bail hearing should be considered a critical stage of trial.   *See Higazy v. Templeton*, 505 F.3d 161, 172 (2d Cir. 2007) ("a bail hearing is a critical stage of the State's criminal process") (internal quotation marks and citation omitted); *Caliste*, 329 F. Supp. 3d at 314 ("the issue of pretrial detention is an issue of significant consequence for the accused").   As a District Court in the Eastern District of Louisiana recently noted:

> [W]ithout representative counsel the risk of erroneous pretrial detention is high.   Preliminary hearings can be complex and difficult to navigate for lay individuals and many, following arrest, lack access to other resources that would allow them to present their best case.   Considering the already established vital importance of pretrial liberty, assistance of counsel is of the utmost value at a bail hearing.

*Caliste*, 329 F. Supp. 3d at 314.   The importance of providing counsel at the initial detention hearing is underscored by empirical research which indicates that case outcomes for pretrial detainees are much worse—in terms of an increased likelihood of conviction and harsher sentences—than for those who are released pending trial.   *See, e.g.,* Douglas L. Colbert et al., *Do Attorneys Really Matter? The Empirical and Legal Case for the Right of Counsel at Bail*, 23 CARDOZO L. REV. 1719, 1720 (2002).   Given this research, it is imperative from a

constitutional standpoint that individuals facing a pretrial detention hearing be afforded counsel to help guide them through the complicated and overwhelming process.

Citing the Supreme Court's opinion in *Rothgery*, the District Court Judges claim that there is no Sixth Amendment right to counsel at magistration.  The Court disagrees.  In *Rothgery*, the plaintiff brought a civil rights lawsuit alleging that Gillespie County refused to appoint him a lawyer until six months after his initial appearance in court.  554 U.S. at 196.  In an admittedly "narrow" ruling, the Supreme Court held that the plaintiff's right to counsel "attached" at the initial appearance in court.  *See id*. at 213.  In accordance with a long list of Supreme Court cases, *Rothergy* held that once the right to counsel has attached, the Sixth Amendment requires that defendants be represented by counsel at any "critical stage of trial."  *Id.*  Because bail was not contested in *Rothgery*, the high court never addressed whether an initial bail hearing is a critical stage of trial.  Even so, this Court is confident that, based on longstanding precedent, the Supreme Court would undoubtedly conclude that a pretrial detention hearing is a "critical stage" for Sixth Amendment purposes.  *See Coleman,* 399 U.S. at 9–10 (holding that Sixth Amendment required the presence of counsel at preliminary hearing because, in part, counsel could make effective arguments about necessity of bail); *Smith v. Lockhart*, 923 F.2d 1314, 1319 (8th Cir. 1991) (holding that hearing on bail reduction motion was a critical stage of proceeding requiring representation by counsel).

To conclude, the Court finds that Booth has adequately stated a claim for relief under the Sixth Amendment since the Constitution requires representation by counsel at a pretrial detention hearing.

# SECTION 1983 LIABILITY

## A.    The Legal Standard

"Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).  A local government may not be sued under Section 1983 for the deprivation of rights guaranteed by the Constitution or federal law inflicted solely by its employees or agents.  *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory.").  Instead, it is "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government entity is responsible under [Section] 1983." *Id*.  To plausibly allege a claim under Section 1983 against the County, "a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right."  *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

Liability under Section 1983 attaches to local government officers "whose [unlawful] decisions represent the official policy of the local governmental unit."  *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).  Whether an officer has been given this authority is "a question of state law."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).  "Official policy" includes unwritten widespread practices that are "so common and well settled as to constitute a custom that fairly represents municipal policy."  *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984)).

And unlawful decisions include "acquiescence in a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." *Jett*, 491 U.S. at 737 (internal quotation marks omitted).

**B.      Booth Sufficiently Alleges a Section 1983 Claim**

  **1.  Official Policy**

Booth alleges that the District Court Judges and Local Administrative District Court Judge are final policymakers who have the authority to correct the County's Bail Schedule Policy, but instead of acting, they have acquiesced in the Bail Schedule Policy.  Booth cites to Sections 74.092 and 74.093 of the Texas Government Code as the basis for the District Court Judges' and Local Administrative District Court Judge's authority to reform the policy.

Booth's allegation with respect to the District Attorney is a little more nuanced. Booth alleges that, based on the facts described above, the Magistrates always strictly adhere to the bail amounts promulgated by the District Attorney—and the District Attorney, District Court Judges, and Local Administrative District Court Judge are all aware of this fact.  Booth contends that in this way the District Attorney operates in conjunction with the District Court Judges and Local Administrative District Court Judge and acts as a County policymaker in determining bail amounts.  For these reasons, Booth alleges the County is liable for constitutional violations resulting from the Bail Schedule Policy.

Accepting all of Booth's allegations as true, the Court finds that although the County's Bail Schedule Policy is not an "official policy" in the traditional sense of the term, it is clearly a practice "so common and well settled as to constitute a custom that fairly

represents municipal policy." *ODonnell III*, 892 F.3d at 155 (finding "official policy" to "include . . . practices that are 'so common and well settled as to constitute a custom that fairly represents municipal policy'") (quoting *Johnson*, 958 F.2d at 94).

### 2. Policymakers

The County argues that it cannot be liable under Section 1983 because the District Court Judges, Local Administrative District Court Judge, District Attorney, and Magistrates are not County policymakers.  Similarly, each Defendant has moved to dismiss, arguing that they are not County policymakers.

The Section 1983 policymaking liability of each party is considered in turn.

### a.  District Court Judges and Local Administrative District Court Judge

The Texas Constitution vests the State's judicial power "in one Supreme Court, in one Court of Criminal Appeals, in Courts of Appeals, in District Courts, in County Courts, in Commissioners Courts, in Courts of Justice of the Peace, and in such other courts as may be provided by law."  TEX. CONST. Art. V, § 1.

District Court Judges are constitutionally created, and their jurisdiction is set forth in both the Texas Constitution and various statutes.  *Id.* at §§ 7, 8; TEX. GOV'T CODE §§ 24.007, 24.008.  Under the Texas Government Code, "[t]he district . . . court judges in each county shall, by majority vote, adopt local rules of administration, which "must provide for: . . . assignment, docketing, transfer, and hearing of all cases, subject to jurisdictional limitations of the district courts and statutory county courts."  TEX. GOV'T CODE § 74.093.

The title of Local Administrative District Court Judge is a statutorily created position to be filled by a sitting District Court Judge.  *Id.* at § 74.091.  The judge selected for the

position fulfills a variety of administrative duties, including "implement[ing] and execut[ing]the local rules of administration, including the assignment, docketing, transfer, and hearing of cases"; "promulgat[ing] local rules of administration if the other judges do not act by a majority vote"; "supervis[ing] the expeditious movement of court caseloads, subject to local, regional, and state rules of administration"; and "set[ting] the hours and places for holding court in the county." *Id.* at § 74.092.

With respect to the District Court Judges, Booth contends that in *ODonnell III*, based on authority conveyed by Texas Government Code Section 75.403(f), the Fifth Circuit held that the County Judge was a policymaker because he was "imbued with broad authority to promulgate rules that will dictate post-arrest policies consistent with the provisions of state law." *ODonnell III*, 892 F.3d at 155. Booth argues that because the authority described in Section 75.403(f) [8] is nearly identical to the authority conveyed to the District Court Judges by Section 74.093 [9], *ODonnell III* compels the same policymaker determination here.

---

[8] TEX. GOV'T CODE § 75.403(f) states: "The judges [of Harris County] may adopt rules consistent with the Code of Criminal Procedure, 1965, and the Texas Rules of Civil Procedure for practice and procedure in the courts. A rule may be adopted by a two-thirds vote of the [Harris County] judges, and on adoption shall be entered verbatim in the minutes of each court. The clerk of the court shall supply copies of the rules to any interested person."

[9] TEX. GOV'T CODE § 74.093 states, in pertinent part:
(a) The district and statutory county court judges in each county shall, by majority vote, adopt local rules of administration.
(b) The rules must provide for:
    (1) assignment, docketing, transfer, and hearing of all cases, subject to jurisdictional limitations of the district courts and statutory county courts;
    (2) designation of court divisions or branches responsible for certain matters;
    (3) holding court at least once a week in the county unless in the opinion of the local administrative judge sessions at other intervals will result in more efficient court administration;
    (4) fair and equitable division of caseloads; and

With respect to the Local Administrative District Court Judge, Booth contends that

the plain language of Section 74.092[10] conveys "final authority to remedy the Bail Schedule

---

(5) plans for judicial vacation, sick leave, attendance at educational programs, and similar matters.

(c) The rules may provide for:

(1) the selection and authority of a presiding judge of the courts giving preference to a specified class of cases, such as civil, criminal, juvenile, or family law cases;

(2) other strategies for managing cases that require special judicial attention;

(3) a coordinated response for the transaction of essential judicial functions in the event of a disaster; and

(4) any other matter necessary to carry out this chapter or to improve the administration and management of the court system and its auxiliary services.

(c-1) The rules may provide for the establishment and maintenance of the lists required by Section 37.003, including the establishment and maintenance of more than one of a list required by that section that is categorized by the type of case, such as family law or probate law, and the person's qualifications.

[10] TEX. GOV'T CODE § 74.092:

(a) A local administrative judge, for the courts for which the judge serves as local administrative judge, shall:

(1) implement and execute the local rules of administration, including the assignment, docketing, transfer, and hearing of cases;

(2) appoint any special or standing committees necessary or desirable for court management and administration;

(3) promulgate local rules of administration if the other judges do not act by a majority vote;

(4) recommend to the regional presiding judge any needs for assignment from outside the county to dispose of court caseloads;

(5) supervise the expeditious movement of court caseloads, subject to local, regional, and state rules of administration;

(6) provide the supreme court and the office of court administration requested statistical and management information;

(7) set the hours and places for holding court in the county;

(8) supervise the employment and performance of nonjudicial personnel;

(9) supervise the budget and fiscal matters of the local courts, subject to local rules of administration;

(10) coordinate and cooperate with any other local administrative judge in the district in the assignment of cases in the courts' concurrent jurisdiction for the efficient operation of the court system and the effective administration of justice;

(11) if requested by the courts the judge serves, establish and maintain the lists required by Section 37.003 and ensure appointments are made from the lists in accordance with Section 37.004;

(12) perform other duties as may be directed by the chief justice or a regional presiding judge; and

Policy by automatically scheduling prompt, individualized bail review hearings." Dkt. 111 at 39. Thus, Booth argues, the Local Administrative District Court Judge is also a policymaker.

The County and the District Court Judges contend that *ODonnell III* is inapposite because Sections 75.403(f) and 74.093 are not almost identical. First, they note that by its terms, Section 75.403(f) applies only to Harris County. Based on this fact alone, they argue that the holding of *ODonnell III* cannot be precedent for all counties. Next, they argue that the language of Section 74.093 simply does not convey any authority to the District Court Judges to control or otherwise direct the conduct of the Magistrates. In this vein, the County elaborates that Section 74.093 has been interpreted to exclude policy-making authority. Similarly, the County and the District Court Judges contend that although Section 74.092 conveys some scheduling authority to the Local Administrative District Court Judge, such authority is limited to district courts and does not include County courts or hearings before

---

(13) establish a court security committee to adopt security policies and procedures for the courts served by the local administrative district judge that is composed of:

(A) the local administrative district judge, or the judge's designee, who serves as presiding officer of the committee;

(B) a representative of the sheriff's office;

(C) a representative of the county commissioners court;

(D) one judge of each type of court in the county other than a municipal court or a municipal court of record;

(E) a representative of any county attorney's office, district attorney's office, or criminal district attorney's office that serves in the applicable courts; and

(F) any other person the committee determines necessary to assist the committee.

(b) A court security committee may recommend to the county commissioners court the uses of resources and expenditures of money for courthouse security, but may not direct the assignment of those resources or the expenditure of those funds.

Magistrates.  Thus, the argument goes, the Local Administrative District Court Judge cannot be a policymaker regarding bail.

The Court has reviewed *ODonnell III* and the plain language of Texas Government Code Sections 75.403(f) and 74.093.  The Court finds that the County and District Court Judges are correct in their assertions that *ODonnell III*'s holding, which relies upon Section 75.403(f), is not necessarily controlling.  By its terms, Section 75.403(f) applies only to "[t]he judges of the courts in Harris County."  TEX. GOV'T CODE ANN. § 75.403(a).  This fact weakens Booth's argument that the Court should simply rely upon *ODonnell III*. However, this determination does not end the Court's inquiry because Booth did not simply argue that the statutes are the same, he argues that they are *nearly* identical.  Thus, the Court must compare the statutes.

Section 75.403(f) of the Texas Government Code contains very broad language authorizing Harris County judges to "adopt rules consistent with the Code of Criminal Procedure, 1965, and the Texas Rules of Civil Procedure for practice and procedure in the courts."  *Id.* § 75.403(f).  This broad language was found to include the authority to "promulgate rules . . . dictat[ing] post-arrest policies consistent with the provisions of state law."  *ODonnell III*, 892 F.3d at 155.  Section 74.093 also contains very broad language, which provides that "[t]he district . . . court judges in each county shall, by majority vote, adopt local rules of administration, which "must provide for: . . . assignment, docketing, transfer, and hearing of all cases, subject to jurisdictional limitations of the district courts and statutory county courts. . . ."  *Id.* § 74.093.  The Court begins by noting that the language contained in each statute is different.  Section 75.403(f) specifies that the relevant

judges may adopt a wide variety of rules for "practice and procedure" in the courts, whereas Section 74.093 deals with the promulgation of "local rules of administration."   This differentiation in language begs the question: is "practice and procedure" synonymous with "local rules of administration"?   The answer to this question is less than clear.

The County, relying on *Scham v. Dist. Courts Trying Criminal Cases*, 967 F. Supp. 230, 233 (S.D. Tex. 1997), argues that "Section 74.093 has been specifically interpreted not to grant any policy-making authority as it serves only an administrative purpose."   Dkt. 117 at 6.   And the District Court Judges, relying on *Ex parte Clear*, 573 S.W.2d 224 (Tex. Crim. App. 1978) and *Guerra v. Garza*, 987 S.W.2d 593 (Tex. Crim. App. 1999), argue that "once [a] Magistrate . . . exercise[s] jurisdiction over . . . an[] arrestee . . ., the Magistrate is the sole person that alters, amends, or revises bail—to the express exclusion of the District Court Judges."   Dkt. 116 at 3.   Standing alone, these authorities seem to support the County's and District Court Judges' position.   However, these authorities stand in the face of Booth's well pled factual allegations,[11] and a document that Booth attached to his Motion for Preliminary Injunction, which was discussed at oral argument: the Galveston County Indigent Defense Plan.

In the Galveston County Indigent Defense Plan dated October 20, 2016, which was in effect at the time of Booth's arrest, there is an entire section devoted to "Magistrate Responsibilities."[12]   Dkt. 3-11 at 6–7.   Among the many items discussed in that section is an

---

[11] *See* Dkt. 31.

[12] The most recent Amended Galveston County Indigent Defense Plan was enacted in October 2018, during the pendency of this suit.   In the now effective plan, the section devoted to Magistrate

enumerated list of duties that the "Magistrate *shall perform*," including duties related to bail. *Id.* at 6 (emphasis added). The duties also seem to provide a deadline by which certain post-hearing activities shall be performed. *See id.* Importantly, this document is executed by the County Court at Law Judges and District Court Judges,[13] including the Local Administrative District Court Judge. *See id.* at 27. In other words, the Galveston County Indigent Defense Plan appears to be evidence of the District Court Judges and Local Administrative District Court Judge doing that which they claim to lack authority to do: promulgating rules dictating post-arrest policies. The existence of this document coupled with Booth's allegations creates a great deal of uncertainty and undercuts the County and District Court Judge's arguments that: (1) Section 74.093 does not convey any authority to the District Court Judges to control or otherwise direct the conduct of the Magistrates; and (2) Section 74.092 does not convey authority to the Local Administrative District Court Judge to control the setting of bail review hearings before Magistrates.

Given the uncertainty created by the existence of the Galveston County Indigent Defense Plan, and accepting Booth's well pled facts as true, the Court finds that Booth's allegation that the District Court Judges and Local Administrative District Court Judge acquiesced in an unwritten, countywide process for setting bail that violated the Constitution provides a plausible basis to find that the District Court Judges and Local Administrative

---

Responsibilities has been stripped bare, containing none of the specific details contained in its former iteration.

[13] The document is even signed by District Court Judge Anne Daring, who presides over a family law court. *See* Dkt. 3-11 at 27. This fact defeats the District Court Judges' argument that Judge Darring should be dismissed because the family law court plays no role in the bail process. *See* Dkt. 47 at 14–15.

District Court Judge act for the County in their allegedly unconstitutional policies, customs, or practices regulating bail for arrestees.[14]

### b. District Attorney

"[A] county may only be held liable for acts of a district attorney when he 'functions as a final policymaker for the county.'" *Brown v. Lyford*, 243 F.3d 185, 192 (5th Cir. 2001) (quoting *Esteves v. Brock*, 106 F.3d 674, 678 (5th Cir.1997)). "Texas law makes clear . . . that when acting in the prosecutorial capacity to enforce state penal law, a district attorney is an agent of the state, not of the county in which the criminal case happens to be prosecuted." *Esteves*, 106 F.3d at 678; *see also* TEX. CODE CRIM. PROC. ANN. ART 2.01 ("Each district attorney shall represent the State in all criminal cases in the district courts of his district and in appeals therefrom . . . ."). Fifth Circuit precedent clearly distinguishes a district attorney's "prosecutorial" duties—which are conducted on behalf of the state—from those duties that are "administrative or managerial in nature"—which are conducted on behalf of the county. *See Esteves*, 106 F.3d at 678. Thus, in assessing a district attorney's status as policymaker under Section 1983, "the Court must first determine whether the district attorney was acting as a county official or an arm of the state." *Coates v. Brazoria Cty.*, No. CIV.A. 3-10-71, 2012 WL 6160678, at *8 (S.D. Tex. Dec. 11, 2012).

---

[14] With respect to the individual capacity claims, the District Court Judges argue that Booth cannot obtain declaratory or injunctive relief against them in their individual capacities. *See* Dkt. 47 at 15. Booth did not respond to this argument in his papers. At oral argument Booth's counsel stated:

> Our position is official capacity relief is the only appropriate relief in this case because the Plaintiff is seeking an injunction that runs against the office, not the person. We don't want it to follow the person out of office, we want the injunction to run against the office itself.

Dkt. 140 at 140. Accordingly, the claims against the District Court Judges in their individual capacities are dismissed.

As described above, Booth alleges that the District Attorney, in his administrative role, promulgated a misdemeanor and a felony bail schedule.  Booth alleges that these bail schedules, with full knowledge of the District Attorney, District Court Judges, and Local Administrative District Court Judge, are strictly adhered to, and administered by, Magistrates in setting bail for County arrestees.  These allegations, if true, sufficiently allege the District Attorney's policymaker status at this 12(b)(6) stage.

### c.  Magistrates

The Magistrates[15] move to dismiss, arguing they are not policymakers.  Booth responds that he "does not contend that the Magistrates are final policymakers" and only "brought claims against the Magistrates . . . [to obtain] declaratory relief . . . ." Dkt. 111 at 37 n.24.  Given Booth's concession that the Magistrates are not policymakers, "[t]he official capacity claims against the [Magistrates] cannot support municipal liability against [the] County and are dismissed."  *ODonnell II*, 227 F. Supp. 3d at 754.  However, based on the alleged role the Magistrates play in implementing the Bail Schedule Policy, the Magistrates shall "remain parties to this suit only in their personal capacities and only for declaratory relief."  *Id.*

---

[15] Magistrates are not creations of the Texas Constitution.  Rather, certain individuals, including "justices of the peace, and the mayors and recorders and the judges of the municipal courts of incorporated cities or towns," are deemed Magistrates under the Texas Code of Criminal Procedure. TEX. CRIM. PROC. CODE ANN. § 2.09.  "It is the duty of every magistrate to . . . to cause the arrest of offenders by the use of lawful means in order that they may be brought to punishment."  *Id.* § 2.10. "When the magistrate sits for the purpose of inquiring into a criminal accusation against any person, this is called an examining court."  *Id.* § 2.11.  When sitting as an examining court, the Texas Code of Criminal Procedure provides that "[t]he amount of bail to be required in any case is to be regulated by the . . . magistrate . . . taking the bail."  TEX. CODE CRIM. PRO. art. 17.15.

### 3.  Causation: Moving Force

To establish that the County is liable as a municipality, a policy must have been the "moving force" behind Booth's constitutional violation.  *See Piotrowski v. City of Houston*, 237 F.3d 567, 580 (5th Cir. 2001) (quoting *Monell*, 436 U.S. at 694).  "Stated differently, [Booth] must show direct causation, i.e., that there was a direct causal link between the policy and the violation."  *Alvarez v. City of Brownsville*, 904 F.3d 382, 390 (5th Cir. 2018) (internal quotation marks and citation omitted).  Additionally, Booth "must demonstrate that the policy was implemented with deliberate indifference to the known or obvious consequences that constitutional violations would result."  *Id.* (internal quotation marks and citation omitted).  The causal link "moving force" requirement and the degree of culpability "deliberate indifference" requirement must not be diluted, for "where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability."  *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998) (citation omitted).

Only the District Attorney challenges Booth's allegation of causation.  The District Attorney contends that as a matter of law, Booth has failed to sufficiently allege causation.  Specifically, the District Attorney argues that Magistrates make independent bail determinations, and such independent judgments break any potential chain of causation linking the District Attorney to those bail determinations.  In his motion to dismiss, the District Attorney offers two cases purportedly standing for the proposition that a judicial officer's exercise of independent judgment in the course of his official duties may act as a superseding cause breaking the chain of causation.  *See, e.g., Galen v. Cty. of Los Angeles*,

477 F.3d 652, 663 (9th Cir. 2007); *Harding v. Sacramento Cty. Dist. Attorney*, No. 2:15-CV-1890 CKD P, 2015 WL 7271744, at *1 (E.D. Cal. Nov. 18, 2015).  In his reply brief, the District Attorney cites *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988) for the proposition that "[a]n independent intermediary breaks the chain of causation . . . ."

The Court finds each of the District Attorney's proffered authorities unpersuasive because in each case the court's determination presupposed the intervening action of an independent intermediary.  In this case, at this 12(b)(6) stage, Booth's well pled factual allegations undercut such a presupposition.  Indeed, the Bail Schedule Policy alleged by Booth expressly describes the Magistrates' actions with respect to bail as anything but "independent."  For this reason alone, the District Attorney's argument fails.

## C.    Other County Arguments

The County makes a few additional arguments against liability.  The County argues that under state law, all the judges are state actors and thus, they were acting on behalf of the state and not the County.  This argument fails because as already decided above, Booth has sufficiently alleged that the District Court Judges, Local Administrative District Court Judge, and District Attorney have acquiesced in an unwritten, countywide process for setting bail that violates the Constitution.  This well pled acquiescence theory necessarily demonstrates that the judges were acting, at least in relevant part, on behalf of the County.  The County further argues that Booth's argument is really an attack on judicial conduct, which is impermissible.  Again, this argument fails for the same reason as the first argument—the acquiescence theory demonstrates that Booth is not simply challenging judicial conduct, he is challenging a County wide practice.

The County also seems to contend that Booth's procedural due process claim should be dismissed because bail in Texas is controlled by Texas law, as opposed to federal law. *See* Dkt. 45 at 20–21. This argument misses the mark because "while state law may define liberty interests protected under the procedural due process clause, it does not define the procedure constitutionally required to protect that interest." *ODonnell III*, 892 F.3d at 160 (collecting cases).[16]

**D.     Conclusion on Section 1983 Liability**

Booth "has alleged sufficiently specific details about the policy and policymakers he challenges, and the alleged constitutional violations they caused, to rise above the level of a 'barebones recitation.'" *Brown v. City of Houston*, 297 F. Supp. 3d 748, 767 (S.D. Tex. 2017). Accordingly, the Court recommends that the request to dismiss the Section 1983 claim against the County be denied. Similarly, the Court believes the First Amended Complaint sufficiently alleges that the District Court Judges (including the Local Administrative District Court Judge) and District Attorney are properly sued in their official capacities. The claims against the District Court Judges in their individual capacities should be dismissed. The Magistrates should remain parties to this suit only in their personal capacities for declaratory relief.

---

[16] There is some argument in the parties' briefing concerning the scope of relief that might be attainable in this case. To the extent that such arguments have any validity, the Court will entertain them at a later stage with the benefit of a more fully developed factual record.

## CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court **RECOMMENDS** that:

- Galveston County's First Amended Motion to Dismiss All Claims Pursuant to Rule 12(b)(6) (Dkt. 45) be **DENIED**;

- Magistrates' Motion to Dismiss Pursuant to Federal Rule of Civil Procedures 12(b)(1) and 12(b)(6) and Brief in Support (Dkt. 46) be **GRANTED in part and DENIED in part**.  Specifically, the claims asserted against the Magistrates in their official capacities should be **DISMISSED**.  The motion should be denied in all other respects;

-  District Court Judges' Motion to Dismiss for Lack of Subject-Matter Jurisdiction and for Failure to State a Claim (Dkt. 47) be **GRANTED in part and DENIED in part**.  Specifically, the claims asserted against the District Court Judges in their individual capacities should be **DISMISSED**.  The motion should be denied in all other respects;

- Defendant Hon. Jack Roady's Motion to Dismiss (Dkt. 48) be **DENIED**;

- District Court Judge Defendants' Second Motion to Dismiss for Lack of Subject-Matter Jurisdiction (Dkt. 94) be **DENIED**; and

- Galveston County's First Motion to Dismiss Pursuant to Rule 12(b)(1) (Dkt. 127) be **DENIED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections

pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 10th day of December, 2018.

_____

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE