UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| AARON BOOTH | § § | |
| Plaintiff. | § § | |
| VS. | § § | CIVIL ACTION NO. 3:18–CV–00104 |
| GALVESTON COUNTY, ET AL. | § § | |
| Defendants. | § § | |

## MEMORANDUM AND RECOMMENDATION

This Memorandum and Recommendation addresses Plaintiffs' Amended Motion for Class Certification (Dkt. 32).[1] The class certification motion has been referred to this Court for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See* Dkt. 102. For the reasons set forth below, the Court recommends that the Amended Motion for Class Certification be GRANTED.

### BACKGROUND

This lawsuit concerns Galveston County's pretrial detention system. Booth was arrested and charged with felony drug possession in Galveston County (the "County") in April 2018. After his arrest, Booth claims his bail was set at $20,000 in accordance with the County's standard operating procedures ("Bail Schedule Policy"). Booth was

---

[1] The Amended Motion to Class Certification was filed by Plaintiffs Aaron Booth ("Booth") and Cody Tucker ("Tucker"), both of whom sought to represent a purported class in this litigation. In September 2018, Tucker filed a Notice of Voluntary Dismissal, dismissing all of his claims without prejudice. *See* Dkt. 93. That leaves Booth as the sole individual seeking class certification.

dissatisfied with this bail determination because he believed that the County's standard operating procedure resulted in arrestees being routinely detained before trial solely due to their inability to pay bail in violation of the Equal Protection and Due Process Clauses of the United States Constitution.

Booth filed this suit on behalf of himself and all others similarly situated, asserting that the County's pretrial detention practices violated his substantive and procedural due process rights, infringed Equal Protection guarantees, and undermined his constitutional right to counsel. Booth asserted his claims against several categories of defendants based on their various alleged roles in his constitutional deprivation: the County; a group of Galveston County District Court Judges (the "District Court Judges"); several Galveston County Magistrate Judges (the "Magistrates"); and Galveston County District Attorney Jack Roady ("Roady"). Booth sued the District Court Judges and the Magistrates in their official and individual capacities. Booth sued Roady in his official capacity as the County District Attorney.

At the motion to dismiss stage, the Court recommended the dismissal of all claims against the Magistrates in their official capacities and all claims against the District Court Judges in their individual capacities. *See* Dkt. 151. The Court recommended that all other claims survive the initial pleading challenge. United States District Court Judge George C. Hanks, Jr. adopted this Court's recommendation. *See* Dkt. 165.

Booth has moved to certify the following class under Federal Rule of Civil Procedure 23(b)(2): all people who are or will be detained in Galveston County Jail on

felony and state-jail felony charges because they are unable to pay secured bail set at magistration. *See* Dkt 106-1.

## THE LEGAL STANDARD FOR CLASS CERTIFICATION

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979)). "Class actions permit representative plaintiffs to litigate their claims on behalf of members of the class not before the court." *Caliste v. Cantrell*, No. 17-6197, 2018 WL 1365809, at *1 (E.D. La. Mar. 16, 2018). "The purpose of a class action is to avoid multiple actions and to allow claimants who could not otherwise litigate their claims individually to bring them as a class." *Id.* (citing *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 349 (1983)).

Class certification is controlled by Federal Rule of Civil Procedure 23. To certify a Rule 23 class, Booth must show that his proposed class meets the requirements of Rule 23(a) and at least one of the three criteria for certification under Rule 23(b). *See* FED. R. CIV. P. 23; *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).

Rule 23(a) imposes four prerequisites on a class seeking certification: "(1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')." *Ackal v. Centennial Beauregard Cellular, LLC*, 700 F.3d 212, 216 (5th Cir. 2012) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)) (alterations in original).

3

Here, Booth seeks certification under Rule 23(b)(2), which applies when "injunctive relief . . . is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2).

"The party seeking [class] certification bears the burden of demonstrating that the requirements of [R]ule 23 have been met." *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 737–38 (5th Cir. 2003) (citing *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 408 (5th Cir. 1998)). Before certifying a class, "[a] district court must rigorously analyze Rule 23's prerequisites." *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 310 (5th Cir. 2000) (collecting cases). Importantly, "Rule 23 does not set forth a mere pleading standard." *Wal-Mart*, 564 U.S. at 350. Rather, a party seeking class certification must "be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation" and to satisfy at least one of Rule 23(b)'s provisions "through evidentiary proof." *Comcast Corp.*, 569 U.S. at 27, 33 (internal quotation marks and citation omitted) (emphasis in original).

While the district court must perform a "rigorous analysis" to determine whether to certify a class, it may not require a plaintiff to establish his claims at the class certification stage. *Wal-Mart*, 564 U.S. at 351. *See also Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merit questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.") (citation omitted). Simply stated, the certification stage is not a "dress rehearsal for the merits." *In re Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014).

## ANALYSIS

The class certification motion before the Court does not present a novel legal issue. It is certainly not the first time a court has had to determine whether to certify a class of arrestees allegedly detained because they are unable to pay secured bail. Indeed, within the last two years, three district courts within the Fifth Circuit have granted class certification in cases challenging the constitutionality of a county's pretrial detention system. *See Daves v. Dallas Cty.*, No. 3:18-cv-0154-N, 2018 WL 4537202 (N.D. Tex. Sept. 20, 2018) (Dallas County, Texas); *ODonnell v. Harris Cty.*, No. H-16-1414, 2017 WL 1542457 (S.D. Tex. Apr. 28, 2017) (Harris County, Texas); *Caliste*, 2018 WL 1365809 (Orleans Parish, Louisiana). These cases provide solid guidance since the classes certified are very similar to the class Booth seeks to certify in this case. *See Daves*, 2018 WL 4537202, at *1 (certifying a class of "[a]ll arrestees who are or will be detained in Dallas County custody because they are unable to pay a secured financial condition of release"); *ODonnell*, 2017 WL 1542457, at *1 (certifying a class of "[a]ll Class A and Class B misdemeanor arrestees who are detained by Harris County from the date of this order through the final resolution of this case, for whom a secured financial condition of release has been set and who cannot pay the amount necessary for release on the secured money bail because of indigence"); Memorandum in Support of Plaintiffs' Motion to Certify a Class Action at 2, *Caliste*, 2018 WL 1365809, at *3, ECF No. 5-1 (certifying a class of "all presumptively innocent arrestees who are now before or will come before Defendant Magistrate Judge of Orleans Parish Criminal District Court for proceedings concerning

pretrial detention and who are unable to pay the financial condition imposed as a requirement for their immediate release").

A.  **Rule 23(a)**

As noted above, Rule 23 requires a plaintiff seeking to certify a class to establish four elements: numerosity, commonality, typicality, and adequacy. *See Wal-Mart*, 564 U.S. at 345. The Court is required to independently analyze each of the Rule 23 factors and will do so below. *See Stirman v. Exxon Corp.*, 280 F.3d 554, 563 n.7 (5th Cir. 2002).

   1.  **Numerosity**

Class certification is only appropriate where "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). The Fifth Circuit has summarized the so-called numerosity requirement as follows:

> "[A] plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981). This court, however, has repeatedly noted that "the number of members in a proposed class is not determinative of whether joinder is impracticable." *In re TWL Corp.*, 712 F.3d 886, 894 (5th Cir. 2013) (quoting *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999)). Rather, "a number of facts other than the actual or estimated number of purported class members may be relevant to the 'numerosity' question; these include, for example, the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Zeidman*, 651 F.2d at 1038.

*Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016). Although the Defendants do not dispute the satisfaction of the numerosity requirement, this Court must, at a minimum, "identify the approximate number of potential class members in this matter and other factors, if any, that bear on a determination of numerosity, as well as to explain the effect of those factors

on its conclusion." *Ward v. Hellerstedt*, No. 17-50899, --- F. App'x ---, 2018 WL 5045675, at *6 n.16 (5th Cir. Oct. 16, 2018) (citing *Ibe*, 836 F.3d at 528).

There is no question that the proposed class in this case passes the numerosity test. There are hundreds, possibly thousands of potential class members. The uncontroverted evidence reflects that, at any given time, the County's jail population hovers around 1,000 arrestees, and pretrial arrestees represent approximately 70 percent of the population. *See* Dkt. 185-31 at 23–24. Booth also presented statistical evidence and firsthand accounts from arrestees indicating that individuals are routinely detained in Galveston County Jail because they are unable to pay secured bail set at magistration. Booth has, therefore, met the numerosity requirement.

### 2. Commonality

In order to satisfy the commonality requirement under Rule 23(a)(2), Booth must demonstrate that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). The Supreme Court's 2011 decision in *Wal-Mart* "heightened the standards for establishing commonality." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 839 (5th Cir. 2012) (citing *Wal-Mart*, 564 U.S. at 349–51). In the wake of *Wal-Mart*, the claims of all class members "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350.

While "any competently crafted class complaint literally raises common questions," commonality goes further and "requires the plaintiff to demonstrate that the class members

have suffered the same injury." *Perry*, 675 F.3d at 840 (citing *Wal-Mart*, 564 U.S. at 350–51) (internal quotation marks omitted). Under *Wal-Mart*, "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a class wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." 564 U.S. at 350 (citation omitted). As the Fifth Circuit recently observed: "[t]o satisfy the commonality requirement under Rule 23(a)(2), class members must raise at least one contention that is central to the validity of each class member's claims." *Deepwater Horizon*, 739 F.3d at 810.

In the present case, Booth contends the commonality requirement is met because the claims of all class members raise common factual and legal questions that will generate common questions. According to Booth, the most common questions of fact with respect to the class are:

- Whether Magistrates have a widespread, well-settled practice of setting secured bail without inquiry into ability to pay or consideration of alternatives less restrictive than unaffordable secured bail, without the presence of counsel;
- Whether Magistrates have a widespread, well-settled practice of setting secured bail without adequate procedural protections including notice, an opportunity to present and contest evidence, appointment of counsel, reasoned findings based on clear and convincing evidence on the record that unaffordable secured bail is the least restrictive means of mitigating an individual's flight risk or danger;
- Whether Magistrates conduct bail hearings without the presence of counsel for the defendant;
- Whether Magistrates' secured bail orders result in pretrial detention;
- Whether unaffordable secured bail undermines the fairness of plea bargaining or trial; and

8

- How long class members must wait in jail after arrest before they have an opportunity to raise their inability to pay for their release or to request alternative, non-financial conditions.

Dkt. 32 at 11. Booth further asserts that the most common questions of law with respect to the class are:

- Whether imposing unaffordable secured bail without an ability to pay hearing violates the Fourteenth Amendment Due Process and Equal Protection Clauses;
- Whether imposing unaffordable secured bail without adequate procedural protections including notice, an opportunity to present and contest evidence, appointment of counsel, and reasoned findings on the record that unaffordable secured bail is the least restrictive means of mitigating an individual's flight risk or danger violates the Fourteenth Amendment's Due Process Clause; and
- Whether denying counsel at a bail hearing violates the Sixth Amendment's Right to Counsel Clause.

*Id.*

The Court agrees with Booth that common questions of fact and law pervade this case, favoring class certification. The resolution of these factual and legal issues is dispositive to the claims for affirmative relief brought on behalf of all members of the class. *See Caliste*, 2018 WL 1365809 at *2 ("Commonality is satisfied because the claims of each class member rest on common fact questions surrounding Defendant's policies and practices of setting bail in state criminal cases. Further, the claims share a common question of law: whether these policies and practices violate the Fourteenth Amendment's Due Process and Equal Protection clauses.").

The Court wants to emphasize that, in accordance with Supreme Court precedent, it is not considering the merits of Booth's claims at this class certification stage. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("In determining the propriety of a class

action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.") (internal quotation marks and citation omitted). *See also Unger v. Amedisys, Inc.*, 401 F.3d 316, 321 (5th Cir. 2005) ("Class certification hearings should not be mini-trials on the merits of the class or individual claims.") (citation omitted). A complete evaluation into the underlying merits of Booth's case is simply not something the Court will wade into at the class certification stage.

In challenging class certification, Defendants argue that the proposed class lacks commonality due to the varying nature of the crimes included, different factors a judge might consider when setting bail for different arrestees, differences in how crimes are treated under Texas law, and different inquiries that arise when determining whether an arrestee can pay. This argument misses the boat. It is axiomatic that there will always be some differences among class members. Individual factual differences among the individual litigants or groups of litigants will not, by themselves, preclude a finding of commonality. The critical question is whether the resolution of common questions of fact and law would have the capacity to "generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (internal quotation marks and citation omitted). In *Daves*, the recent case challenging the pretrial detention system in Dallas County, the district court noted that the common question in the case "is whether or not the alleged procedures that apply to all arrestees and result in unaffordable bail deprive the proposed class members of constitutionally required process. Resolving that question will resolve the claims of every proposed class member, regardless of what crime they

10

committed." 2018 WL 4537202, at *2. The same analysis applies with equal force here. In finding that the proposed class raises common questions of fact, the Court is convinced that the class members' claims do not require individualized determinations but can be handled on a class-wide basis.

To summarize, the Court finds this case meets the commonality requirement of Rule 23(a)(2).

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 401 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)). The test for typicality is not particularly demanding. *See Mullen*, 186 F.3d at 625. As the Fifth Circuit has noted:

> Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.

*Stirman*, 280 F.3d at 562 (quotation omitted).

The Supreme Court has observed that "commonality and typicality . . . tend to merge," as both requirements "serve as guideposts for determining . . . whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class

members will be fairly and adequately protected in their absence." *Wal-Mart*, 564 U.S. at 350 n.5.

With this legal framework in mind, the Court concludes that Booth has met the typicality standard as set forth in Rule 23(a)(3). The claims Booth asserts share the same essential characteristics as the claims of the other class members. His claims arise from the same course of conduct and are brought under the same legal theory. To put a finer point on the allegations, Booth contends that his pretrial detention was a result of the County's Bail Schedule Policy, a policy that purportedly applies in the same manner to each putative class members. The class members Booth seeks to represent have allegedly suffered the exact same constitutional violations as he endured: having bail set at a closed door hearing pursuant to a bail schedule with no representation by counsel and no individualized inquiry into their ability to pay, flight risk, or dangerousness. *See Daves*, 2018 WL 4537202, at *2 (finding typicality satisfied because "this action challenges universal policies and practices that allegedly results in certain individuals being detained solely because they could not pay the set bail. The constitutional challenges brought by Plaintiffs against these procedures are the same challenges that any member of the class would bring").

4. **Adequacy**

The final requirement under Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). It is improper for a district court to simply presume that Booth and his counsel are adequate representatives. Instead, the party seeking to certify the class must affirmatively prove that

he is an adequate class representative. *See Berger v. Compaq Corp.*, 257 F.3d 475, 481 (5th Cir. 2001). The adequacy requirement is not a mere formality, but is vital to protect the rights of class members. Since class members are bound by the judgment, "the court must be especially vigilant to ensure that the due process rights of all class members are safeguarded through adequate representation at all times." *Id.* at 480 (collecting cases). The adequacy requirement also "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods.*, 521 U.S. at 625 (citation omitted).

The adequacy analysis encompasses two separate inquiries: (1) the willingness and ability of the named plaintiff "to take an active role in and control the litigation and to protect the interests of absentees"; and (2) "the zeal and competence of the representative's counsel." *Berger*, 257 F.3d at 479 (quoting *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982)) (brackets omitted).

**Named Plaintiff:** The Fifth Circuit has "identified a 'generic standard' for the adequacy requirement, noting that 'class representatives [must] possess a sufficient level of knowledge and understanding to be capable of 'controlling' or 'prosecuting' the litigation." *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 131–32 (5th Cir. 2005) (quoting *Berger*, 257 F.3d at 482–83). Class representatives "need not be legal scholars." *Feder*, 429 F.3d at 132 n.4 (citation omitted). Instead, class representatives "are entitled to work with, and rely upon, their counsel in pursuing their claims and navigating the complicated legal and factual issues associated with" complex litigation. *Stoffels v. SBC Commc'ns, Inc.*, 238 F.R.D. 446, 455 (W.D. Tex. 2006). A class representative is considered adequate

when he has "familiarity with the complaint and the concept of a class action." *Horton*, 690 F.2d at 484.

Booth easily satisfies the adequacy requirement. He has volunteered his time to serve as a class representative and states a genuine willingness to vigorously prosecute the interests of the class. To date, Booth has gathered documents, sat for a deposition, and met numerous times with counsel to discuss the case. He possesses a fundamental understanding of the case sufficient to allow him to actively participate in the lawsuit as it progresses. Booth's interests appear to be completely aligned with the putative class such that the Court is confident that there is no conflict of interest between Booth and the class he seeks to represent. *See ODonnell*, 2017 WL 1542457, at *6 ("Each named plaintiff is a member of the class he or she seeks to represent, does not have claims in conflict with those of other class members, and adequately represents the class.").

Defendants challenge Booth's adequacy by asserting that he lacks honesty and credibility. In advancing this argument, Defendants point to a criminal conviction for check fraud, a criminal conviction for family violence, various alleged false statements, and the invocation of his Fifth Amendment right against self-incrimination in response to certain questions concerning gun ownership. It is true that a class representative's character deficiencies may serve as a viable challenge to a finding of adequacy, but "courts look to personal characteristics only insofar as they touch upon the lawsuit." *Jane B. by Martin, v. New York City Dep't of Soc. Servs.*, 117 F.R.D. 64, 71 (S.D.N.Y. 1987). Accordingly, any inquiry "into the representatives' personal qualities is not an examination into their moral righteousness, but rather an inquiry directed at improper or questionable

14

conduct arising out of or touching upon the very prosecution of the lawsuit." *Id.* (collecting cases). Defendants' repeated attacks on Booth's credibility and honesty do not touch upon the prosecution of this lawsuit, nor do Defendants even attempt to argue that they do. This is fatal to Defendants' position since a class representative does not have to be "morally upstanding"; instead, adequacy requires only that "he or she must not have damaged his or her credibility regarding those *issues that are central* to the action." *Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353, 364 (E.D.N.Y. 2009) (emphasis added).

**Counsel:** Booth is represented by attorneys from the American Civil Liberties Union Foundation, the American Civil Liberties Union Foundation of Texas, and Arnold & Porter Kaye Scholer, LLP. These lawyers have considerable experience in litigating complex class action cases and civil right cases, including cases concerning the constitutionality of pretrial detention systems. The adequacy of counsel is not in dispute.

In conclusion, the Court finds that the adequacy requirement of Rule 23(a)(4) has been satisfied.

**B.      Rule 23(b)(2)**

In addition to meeting the numerosity, commonality, typicality, and adequacy requirements set forth in Rule 23(a), a proposed class must also satisfy one of the three requirements under Rule 23(b) to be certified. In this case, Booth seeks certification under Rule 23(b)(2), which provides for class certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). The Supreme Court has explained that Rule 23(b)(2) applies when:

> a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.

*Wal-Mart*, 564 U.S. at 360–61 (emphasis in original).

Booth's First Amended Complaint only seeks injunctive and declaratory relief. "[I]f the plaintiffs [seek] only injunctive and declaratory relief, [the] case [can] readily be certified as a class action under Rule 23(b)(2)." *Allison*, 151 F.3d at 411. This is because "[w]hen a class seeks an indivisible injunction benefitting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating the dispute. Predominance and superiority are self-evident." *Wal-Mart*, 564 U.S. at 362–63.

The injunctive and declaratory relief sought by Booth in this case, if granted, would declare the current pretrial detention system in Galveston County unconstitutional and provide relief to every member of the class. The new pretrial detention procedures Booth seeks to implement would, among other things, provide an arrestee a prompt hearing inquiring into the ability to pay, and permit the arrestee to present and rebut evidence concerning flight risk and dangerousness. Booth also asks for a declaration that a bail hearing is a critical stage of prosecution for Sixth Amendment right to counsel, and any potential declaration or injunction on that front would also inure to the benefit of the entire class. Accordingly, Booth has satisfied Rule 23(b)(2). *See Daves*, 2018 WL 4537202, at *2 (certification under Rule 23(b)(2) appropriate in a challenge to Dallas County's pretrial

detention system because injunctive "[r]elief in the form of reformed procedures is relief for every class member.").

C. **Class Certification is Necessary**

Finally, Defendants contend that class-based relief is unnecessary because the prospective declaratory and injunctive relief Booth seeks in this case will apply to all putative class members regardless of whether a class is actually certified. In *Daves*, the court addressed this very issue, stating that "[t]he Fifth Circuit has decided . . . that it is an abuse of discretion to refuse 'to certify an otherwise appropriate class because of lack of need when there is a risk of mootness.'" 2018 WL 4537202, at *3 (quoting *Johnson v. City of Opelousas*, 658 F.2d 1065, 1070 (5th Cir. 1981) (quotation marks omitted)). Booth posits that "[c]lass certification is necessary here because [his] individual claims for relief are moot; certification is the only means to protect the class." Dkt. 121 at 19. The Court agrees.

The Supreme Court has expressly held that class action allegations generate a continuing controversy even though a class representative's pretrial detention has ended. *See Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 51–52 (1991) (the release of the named plaintiff from jail does not moot the action when a class action is brought challenging procedures for pretrial detention); *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975) (same). By bringing this case as a class action, Booth "preserve[s] the merits of the controversy for . . . review" and ensures that other similarly situated arrestees can proceed with their claims even though Booth's individual claims might be rendered moot as a result of his release from jail. *McLaughlin*, 500 U.S. at 51. If the Court refused to allow this case to proceed

17

as a class action, Booth would unquestionably be precluded from pursuing this case individually. His claims would be moot because he has been released from jail and there is no live controversy. Thus, the putative class members' only chance to obtain injunctive or declaratory relief occurs if the case proceeds as a class action. Because the "risk of mootness is great . . . and the issue raised is important not only to [Plaintiffs] but others similarly situated," the Court declines to deny certification due to a lack of need. *Johnson*, 658 F.2d at 1069 (citation omitted).

## CONCLUSION AND RECOMMENDATION

For the reasons stated above, Court recommends that the Amended Motion for Class Certification be GRANTED and the following class be certified under Rule 23(b)(2):

> all people who are or will be detained in Galveston County Jail on felony and state-jail felony charges because they are unable to pay secured bail set at magistration.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 12th day of March, 2019.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE