UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| AARON BOOTH | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:18–CV–00104 |
| | § | |
| GALVESTON COUNTY, ET AL.[1] | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the Court are two separate motions for preliminary injunction filed by Plaintiff Aaron Booth ("Booth"). The first motion, Plaintiff's Motion for Preliminary Injunction, contends that Galveston County's bail system violates the United States Constitution and asks this Court to issue an order requiring certain procedural changes in how Galveston County's secured money bail system operates. *See* Dkt. 3-1. The second motion, Plaintiff's Motion for Preliminary Inunction [sic] Requiring Counsel at Initial Bail Hearings, seeks an order requiring Galveston County to provide counsel at initial bail hearings for those felony arrestees who cannot afford representation. *See* Dkt. 205. The parties have submitted extensive briefing on the legal issues involved, provided voluminous exhibits, and presented live testimony from 11 witnesses at a day-long

---

[1] On March 19, 2019, Counsel for the Galveston County District Court Judges provided the Court with notice that: (1) Defendant Michelle M. Slaughter, former Judge of the 405th District Court, has assumed a seat on the Texas Court of Criminal Appeals; (2) Jared Robinson has been appointed and confirmed as the new Judge of the 405th District Court; and (3) pursuant to Federal Rule of Civil Procedure 25(d), Judge Jared Robinson is automatically substituted as a party. *See* Dkt. 215.

preliminary injunction hearing. After thoroughly reviewing the briefing, analyzing the applicable law, considering the evidentiary submissions, entertaining live testimony, and hearing argument from counsel, the Court **RECOMMENDS** that the Motion for Preliminary Injunction (Dkt. 3-1) be **DENIED** and the Motion for Preliminary Inunction [sic] Requiring Counsel at Initial Bail Hearings (Dkt. 205) be **GRANTED**. This Memorandum and Recommendation constitutes the Court's findings of facts and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

## INTRODUCTION

In recent years, a number of lawsuits have been filed all across this great nation challenging long-established bail practices. This case is one of those lawsuits. It focuses on Galveston County's pretrial detention system for felony arrestees and requires this Court to assess the constitutionality of that pretrial detention system.

Booth was arrested in April 2018 for an alleged felony. A prosecutor recommended Booth's bail be set at $20,000.00. After being booked into Galveston County Jail, Booth appeared before a magistrate. The magistrate informed Booth of the charges against him, advised him of his rights, and set bail. More specifically, the magistrate signed an order requiring Booth to post a $20,000.00 bond to be released from jail pending the resolution of his criminal case. Booth did not have an attorney at the time bail was set. Only after the hearing at which bail was determined did Booth have the opportunity to complete the paperwork demonstrating his financial inability to hire counsel. Booth received a court-appointed counsel the day after his bail hearing. Booth claims that he could not afford the

amount required for his release and, as a result, spent 54 days in custody before a bail reduction hearing was held.

Booth brings this lawsuit on behalf of himself and all others similarly situated, alleging that Galveston County, a group of Galveston County District Court Judges (the "District Court Judges"), several Galveston County Magistrate Judges, and Galveston County District Attorney Jack Roady (the "District Attorney") all act together to employ an unconstitutional bail policy that results in the routine detention of Galveston County felony arrestees before trial solely due to their inability to pay bail. Booth also alleges that the same policy denies arrestees their constitutional right to counsel at a "critical stage" of the prosecution: the initial bail hearing.

Booth seeks both injunctive and declaratory relief.

## HISTORY OF BAIL

Black's Law Dictionary defines "bail" as "[a] security such as cash, a bond, or property; esp., security required by a court for the release of a criminal defendant who must appear in court at a future time." *Bail*, BLACK'S LAW DICTIONARY (11th ed. 2019). *See also* TEX. CODE CRIM. PRO. ART. 17.01 (defining "bail" as "the security given by the accused that he will appear and answer before the proper court the accusation brought against him, and includes a bail bond or a personal bond").

Given that this case concerns the use of bail in Galveston County, a brief history of bail is appropriate to set the stage for the analysis to come.

> Bail originated in medieval England as a device to free untried prisoners. The penalty for most crimes was a fine paid as compensation to the victim. When capital and corporal punishment replaced fines, abuses in the delay

between arrest and trial began to emerge. In response, the common law right to bail was codified into English law, and the principles that an accused is presumed innocent and entitled to personal liberty pending trial were incorporated into the Magna Carta.

*Buffin v. City and Cty. of San Francisco*, No. 15-CV-04959-YGR, 2019 WL 1017537, at

*11 (N.D. Cal. Mar. 4, 2019) (internal quotation marks, footnote, and citations omitted).

"American history makes clear that the settlers brought this practice with them to America." *Jennings v. Rodriguez*, 138 S. Ct. 830, 863 (2018) (Breyer, J., dissenting). Colonial constitutions, the Northwest Ordinance of 1787, the Judiciary Act of 1789, and the vast majority of state constitutions throughout history have protected a right to bail by sufficient sureties. *See id.* at 863–64. The United States Constitution also addresses the use of bail. The Eighth Amendment, which prohibits "excessive bail," recognizes both the obvious liberty interest of pretrial detainees (those accused, but not yet convicted) and the government's legitimate interest in ensuring the accused's appearance at trial. U.S. CONST. AMEND. VIII. It does so by ensuring that "the fixing of bail for any individual defendant must be based upon standards relevant to the purpose of assuring the presence of that defendant." *Stack v. Boyle*, 342 U.S. 1, 5 (1951). Accordingly, the amount of bail cannot be "excessive"—that is, "higher than . . . reasonably calculated to" ensure the accused's appearance. *Id.* (citation omitted).

The presumption of innocence is a bedrock principle of the American criminal justice system. As the Supreme Court has explained: "Unless th[e] right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." *Id.* at 4. Thus, in our system, monetary bail is the mechanism that

protects the well-established "right to freedom before conviction," while also protecting society's interest in ensuring that defendants answer the charges against them. *Id.* Accordingly, "liberty is the norm, and detention . . . is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

## THE *ODONNELL* OPINION

Just last year, the Fifth Circuit issued a landmark opinion in a case challenging Harris County's[2] system of setting bail for poor misdemeanor arrestees. *See ODonnell v. Harris Cty. (ODonnell II)*, 892 F.3d 147 (5th Cir. 2018).[3] As a result, *ODonnell II* provides the framework by which the constitutionality of any pretrial detention system within the Fifth Circuit must be measured. In *ODonnell II*, the plaintiffs brought a class action lawsuit against Harris County and several of its officials alleging that Harris County's system of setting bail for indigent misdemeanor arrestees violated Texas statutory and constitutional law, as well as the Equal Protection and Due Process Clauses of the Fourteenth Amendment. After an eight-day preliminary injunction hearing, the District Court granted the request for a preliminary injunction, finding that the plaintiffs were likely to prevail on their Equal Protection and Due Process claims. *See id.* at 152. The District Court's injunction required the implementation of safeguards to prevent the automatic imposition

---

[2] Harris County, which is contiguous with Galveston County, is the third largest county in the United States.

[3] *ODonnell II* largely affirmed Chief Judge Lee Rosenthal's underlying decision in *ODonnell v. Harris Cty. (ODonnell I)*, 251 F. Supp. 3d 1052 (S.D. Tex. 2017). After issuing *ODonnell II*, the Fifth Circuit released a subsequent related opinion in which it examined the terms of a proposed preliminary injunction issued in the wake of *ODonnell II*. *See ODonnell v. Goodhart (ODonnell III)*, 900 F.3d 220 (5th Cir. 2018).

of pretrial detention on indigent misdemeanor arrestees and the release of numerous

detainees subjected to Harris County's constitutionally deficient bail system. *See id.* at

155.

The Fifth Circuit largely upheld the injunction, concluding that it is constitutionally

impermissible to automatically impose pretrial detention on indigent misdemeanor

arrestees. On the due process front, the Fifth Circuit held that procedures must be in place

that "sufficiently protect detainees from magistrates imposing bail as an 'instrument of

oppression.'" *Id.* at 159. Because bail for indigent arrestees in Harris County was almost

always set at an amount that detained the defendant, the Fifth Circuit found a violation of

the Due Process Clause. *See id.* In terms of the Equal Protection Clause, the Fifth Circuit

affirmed the District Court's holding that Harris County's bail-setting procedures violated

the Equal Protection Clause because "they treat otherwise similarly-situated misdemeanor

arrestees differently based solely on their relative wealth." *Id.* at 161. As the Fifth Circuit

explained:

> In sum, the essence of the district court's equal protection analysis can be
> boiled down to the following: take two misdemeanor arrestees who are
> identical in every way—same charge, same criminal backgrounds, same
> circumstances, etc.—except that one is wealthy and one is indigent.
> Applying the County's current custom and practice, with their lack of
> individualized assessment and mechanical application of the secured bail
> schedule, both arrestees would almost certainly receive identical secured bail
> amounts. One arrestee is able to post bond, and the other is not. As a result,
> the wealthy arrestee is less likely to plead guilty, more likely to receive a
> shorter sentence or be acquitted, and less likely to bear the social costs of
> incarceration. The poor arrestee, by contrast, must bear the brunt of all of
> these, simply because he has less money than his wealthy counterpart. The
> district court held that this state of affairs violates the equal protection clause,
> and we agree.

*Id.* at 163.

In addressing the appropriate scope of the injunction, the Fifth Circuit held that individualized hearings after which magistrates had to "specifically enunciate their individualized, case-specific reasons for [imposing bail] is a sufficient remedy." *Id.* at 160. The procedures required for such hearings include "notice, an opportunity to be heard and submit evidence within 48 hours of arrest, and a reasoned decision by an impartial decisionmaker." *Id.* at 163. The Fifth Circuit then provided detailed guidance on how a properly crafted injunction should look, cautioning that it should not "amount[] to the outright elimination of secured bail for indigent misdemeanor arrestees." *Id.*

## THE BAIL SYSTEM FOR FELONY ARRESTEES IN GALVESTON COUNTY

The procedures governing how the Galveston County bail system functions for felony arrestees have changed dramatically since this lawsuit was initially filed. As a result, the facts described below are arranged in two categories: Past Bail Schedule Policy and Current Bail Schedule Policy. Past Bail Schedule Policy refers to the system in place at the time of Booth's arrest in April 2018. Current Bail Schedule Policy refers to the procedures utilized today.

**Past Bail Schedule Policy.** At the time of Booth's arrest, Galveston County's bail system for felony arrestees functioned in the following manner:

- After a felony arrestee was taken into custody, the arresting officer would prepare a preprinted bail order form identifying the charges levied against the arrestee, as well as a bail amount for each charge.

- In setting the bail amounts for felony charges, the arresting officer would call the intake district attorney, who would then recommend a bond amount based on amounts reflected in a schedule prepared by

the District Attorney for use by attorneys in his office. If the arrestee had multiple charges, the recommended bail amounts for each charge were added together.

- After the arresting officer completed the bail order form, the felony arrestee could be booked into the Galveston County jail.

- Usually within 24 hours of incarceration, an arrestee appeared before a magistrate for a proceeding referred to as "magistration."[4] This was the first time an arrestee would appear before a judicial officer. At magistration, the magistrate would briefly explain the charges levied against the arrestee, inform the arrestee of his basic rights, including the right to remain silent, and ask the arrestee a few questions (Are you a United States citizen? Have you served in the armed forces? Are you out on bail for another offense?). The magistrate also set bail at this proceeding. However, the magistrate did not possess any financial information indicating an arrestee's ability or inability to make bail, nor did the magistrate inquire into the arrestee's financial status. As a practical matter, the magistrate routinely adopted the bail amounts contained on the bail order form, which had been completed by the arresting officer in conjunction with the intake district attorney.

- Arrestees were not represented by counsel during magistration.

- After magistration, an arrestee would finally have an opportunity to complete a pauper's oath, declaring his indigency and requesting a court appointed attorney.

- The next hearing, which would be the first hearing the arrestee would have court appointed counsel, would occur anywhere from a few days to a few weeks after magistration. Accordingly, if an arrestee was unable to pay the bail set at magistration, the arrestee might be held for weeks solely based on his inability to pay.

---

[4] "Magistration" is a term not found in the Texas Code of Criminal Procedure or elsewhere in the law. In Texas, the terms "magistration," "initial appearance," "probable cause hearing," and "Article 15.17 hearing" are often used interchangeably to describe the first time an arrestee is brought before a magistrate. Article 15.17(a) of the Texas Code of Criminal Procedure requires an officer making an arrest to "without unnecessary delay . . . take the person arrested . . . before some magistrate of the county where the accused was arrested." Article 15.17 also sets forth the basic responsibilities and duties of a magistrate at this initial appearance.

**Current Bail Schedule Policy.** Sometime after Booth's arrest and during the pendency of this lawsuit, significant changes were made to Galveston County's magistration system with the express goal to bring it into compliance with *ODonnell II*. The new system functions as follows:

- After a felony arrestee is taken into custody, the arresting officer prepares a bail order form identifying the charges levied against the arrestee, as well as a bail amount for each charge.

- In setting the bail amounts for felony charges, the arresting officer calls the intake district attorney, who recommends a bond amount based on amounts reflected in a schedule prepared by the District Attorney for use by attorneys in his office. If the arrestee has multiple charges, the recommended bail amounts for each charge are added together.

- After the arresting officer completes the bail order form, the felony arrestee is booked into the Galveston County jail.

- The first time an arrestee appears before a judicial officer is at magistration. Galveston County magistrations occur twice a day at 7:00 a.m. and 7:00 p.m. Given this daily schedule, an arrestee usually appears for magistration within 12 hours of incarceration. Sometime prior to magistration, the arrestee is interviewed by an individual from the Personal Bond Office. Created in July 2018, the Personal Bond Office is responsible for interviewing individuals about their financial condition as they are booked into jail. During this interview, the arrestee completes a detailed financial affidavit. This detailed financial affidavit is included in the packet presented to the magistrate before magistration.

- At magistration, the magistrate still explains the charges levied against the arrestee, provides statutory warnings such as the right to remain silent, asks a few questions, and sets bail. However, under the new system, at the time bail is set the magistrate now possesses the detailed financial affidavit the arrestee completed.

- At the initial bail hearing held at magistration, Galveston County does not provide defense counsel to those arrestees who are financially

unable to afford representation. There is a written policy officially adopted by the District Court Judges, effective October 1, 2018, that makes clear that indigent arrestees do not receive appointed representation during the initial bail hearing.

- Galveston County's written policy provides that within 48 hours of magistration, arrestees whose financial affidavits indicate that they would not be able to post the amount set as bail are brought before a magistrate for a bail review hearing. As a practical matter, this bail review hearing typically occurs 12 hours after magistration, either at 7:00 a.m. or 7:00 p.m. The bail review hearings take place right before the initial magistrations.

- At the bail review hearing, Galveston County provides an indigent arrestee with counsel. More specifically, the District Court Judges appoint a single defense lawyer to appear at every bail review docket, and that attorney is available to advise and represent arrestees at the bail review hearing. Prior to the bail review hearing, arrestees can meet privately with the lawyer to discuss their financial situation in preparation for the bail review hearing. The defense lawyer is appointed for the limited purpose of handling the bail review hearing.

- At the bail review hearing, defense counsel and a prosecutor make arguments and present evidence to either reduce or maintain the previously set bail amount. The magistrate is supposed to explain the reason for his or her decision either in writing or verbally for the record.

## PRELIMINARY ISSUES TO CONSIDER

Before addressing the substantive legal issues, which will determine whether injunctive relief is appropriate in this case, the Court must rule on some preliminary matters.

### A. EVIDENTIARY ISSUES

The District Court Judges have filed lengthy objections to the declarations submitted in support of Plaintiff's Motion for Preliminary Inunction [sic] Requiring Counsel at Initial Bail Hearings. *See* Dkt. 235. Among other things, the District Court Judges complain that

the declarations lack proper foundation, contain irrelevant information, and advance improper legal opinion testimony. In considering these objections, the Court is mindful that the procedures governing a preliminary injunction are more relaxed than those utilized at trial. As the United States Supreme Court has noted: "[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). The Fifth Circuit has followed suit, stating "at the preliminary injunction stage, the procedures in the district court are less formal, and the district court may rely on otherwise inadmissible evidence, including hearsay evidence." *Sierra Club, Lone Star Chapter v. FDIC*, 992 F.2d 545, 551 (5th Cir. 1993) (citation omitted). Districts courts across the State of Texas have uniformly followed the guidance provided by the Fifth Circuit and considered evidence at the temporary injunction phase that would not be admissible at trial. *See, e.g., Compass Bank v. Dixon*, No. H-17-1576, 2018 WL 6733018, at *1 n.2 (S.D. Tex. Nov. 16, 2018) ("Both the rules of evidence, as well as the procedural predicates for the admission of evidence, can be relaxed in the injunction context.") (citation omitted); *Tujague v. Adkins*, No. 4:18-CV-631, 2018 WL 4816094, at *1 n.2 (E.D. Tex. Oct. 4, 2018); *Bar J-B Co., Inc. v. Tex. Dep't of Transp.*, No. 3:18-CV-0576, 2018 WL 2971157, at *11 (N.D. Tex. May 15, 2018). Guided by the lenient evidentiary standard in place at this early stage of the proceedings, the Court is reluctant to exclude the declarations provided by Booth. The Court, therefore, overrules the District Court Judges' evidentiary objections.

## B.    APPROPRIATENESS OF INJUNCTIVE RELIEF AGAINST THE DISTRICT ATTORNEY

Prior to, and during the preliminary injunction hearing, the District Attorney strenuously argued that Booth should not be permitted to pursue injunctive relief against him since Booth had previously represented that he would not be seeking a preliminary injunction against the District Attorney. In making this argument, the District Attorney presented clear and unmistakable evidence of such representations. *See* Dkt. 170-1 at 1 (email from Booth's counsel confirming that Booth "does not move for relief against [the District Attorney]"); 170-2 at 1 (email from Booth's counsel noting that "nothing about the preliminary injunction hearing concerns the District Attorney. . . . As for your questions about injunctive relief against the District Attorney, I can confirm that we are not seeking *preliminary* injunctive relief from the DA."). The first time the District Attorney learned that Booth intended to seek injunctive relief against him in this case was roughly 10 days before the temporary injunction hearing when Booth submitted a proposed order for injunctive relief asking to restrain the District Attorney, as well as other parties. In light of the clear representations made by Booth's counsel, on which the District Attorney relied by not submitting a brief opposing the original preliminary injunction motion, it would be patently unfair to allow Booth to change course at the last minute and actively seek injunctive relief against the District Attorney. Accordingly, the Court refuses to consider Booth's eleventh hour request for injunctive relief against the District Attorney.

## INJUNCTION STANDARD

To obtain preliminary injunctive relief, Booth has the burden of demonstrating: (1) a substantial likelihood that he will prevail on the merits; (2) a substantial threat that he

will suffer irreparable injury if the injunction is not granted; (3) that his threatened injury outweighs the threatened harm to those he seeks to enjoin; and (4) that granting the preliminary injunction is in the public's interest. *See PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005). If Booth fails to carry the burden "on any one of [these] four prerequisites, a preliminary injunction may not issue, and if issued, will be vacated." *Anderson v. Douglas & Lomason Co.*, 835 F.2d 128, 133 (5th Cir. 1988) (internal quotation marks and citation omitted).

The United States Supreme Court and the Fifth Circuit have cautioned repeatedly that a preliminary injunction is a powerful remedy to be used sparingly in cases with a set of extraordinary circumstances. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) ("injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.") (citation omitted); *ODonnell II*, 892 F.3d at 155 ("injunctive relief is a drastic remedy, not to be applied as a matter of course") (internal quotation marks and citation omitted); *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985) ("Injunctive relief is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion.") (citation omitted). Even if Booth establishes all four prerequisites to a preliminary injunction, the decision to grant or deny a preliminary injunction remains discretionary with the district court. *See Miss. Power & Light Co. v. United Gas Pipeline Co.*, 760 F.2d 618, 621 (5th Cir. 1985). In short, "[t]he decision to grant a preliminary injunction is to be treated as the exception rather than the rule." *Id.* (citation omitted).

## LEGAL ANALYSIS

In his request for a preliminary injunction, Booth seeks to vindicate three substantive federal rights: (1) the right against wealth-based detention, arising out of a convergence of the Fourteenth Amendment's Equal Protection and Due Process Clauses; (2) the right against the deprivation of the fundamental interest in pretrial liberty, arising under the Due Process Clause alone; and (3) the right to counsel, arising under the Sixth Amendment.

### A.   WEALTH-BASED IMPRISONMENT: DUE PROCESS AND EQUAL PROTECTION

In this case, Booth claims that Galveston County's Current Bail Schedule Policy violates the Equal Protection and Due Process Clauses because its "practice is to order bail under a predetermined minimum bail schedule without a hearing, and without any meaningful consideration of other possible alternatives." Dkt. 3-1 at 21 (internal quotation marks and citation omitted). This is substantially similar to the argument considered in *ODonnell II*, where the Fifth Circuit explained that "[t]he fundamental source of constitutional deficiency in the due process and equal protection analyses is the same: [T]he County's mechanical application of the secured bail schedule without regard for the individual arrestee's personal circumstances." 892 F.3d at 163.

Were the facts in this case substantially similar to the facts considered in *ODonnell II*, the Court would have no problem finding that Booth has shown a substantial likelihood of succeeding on the merits. *See, e.g., Daves v. Dallas Cty.*, 341 F. Supp. 3d 688, 694–95 (N.D. Tex. 2018) (applying *ODonnell II* based on substantially similar facts). However, this is not the case here.

Galveston County specifically modeled its Current Bail Schedule Policy after the suggested preliminary injunction the Fifth Circuit provided in *ODonnell II*. *See* 892 F.3d at 164–66. Prior to magistration, arrestees in Galveston County are now interviewed by the Personal Bond Office and a financial affidavit is completed and presented to the magistrate. Further, Galveston County now provides an individualized bail review hearing within 48 hours of magistration, where the arrestee is represented by counsel and can present evidence and make arguments concerning the reduction of bail. And at the conclusion of the bail review hearing, the magistrate is supposed to explain the reason for his or her decision either in writing or verbally for the record. This new process seemingly satisfies the requirements laid out in *ODonnell II*, i.e., Galveston County provides individualized hearings after which magistrates have to "specifically enunciate their individualized, case-specific reasons for [imposing bail]," and the procedures required for such hearings include "notice, an opportunity to be heard and submit evidence within 48 hours of arrest, and a reasoned decision by an impartial decisionmaker." *Id.* at 160, 163.

At the preliminary injunction hearing, Booth presented arguments and some evidence contesting (1) the extent to which this new process has been implemented; (2) the extent to which the magistrates and other Galveston County personnel adhere to the new process; and (3) whether the new process has changed bail determination outcomes in any meaningful way since its alleged implementation. Based on the evidence presented thus far, the Court cannot conclude that Booth has a substantial likelihood of success on this

claim. Booth has not carried the burden of persuasion sufficient to justify the extraordinary and drastic remedy he seeks.[5]

## B.   PRETRIAL LIBERTY: PROCEDURAL DUE PROCESS

The Court reaches a similar conclusion with respect to Booth's Due Process argument seeking to vindicate his right to pretrial liberty.

To succeed on a procedural due process theory,[6] Booth must show: (1) that there exists a liberty or property right that has been infringed by the State; and (2) that the procedures protecting that right were constitutionally deficient. *See ODonnell II*, 892 F.3d at 157.

By now, an arrestee's (an accused who has not been convicted of a crime) pretrial liberty interest is a well-recognized legal right. Thus, in evaluating Booth's likelihood of success, the salient issue is whether the procedures in place adequately protect that right.

Although *ODonnell II* was not confronted with a direct argument based on the arrestee's pretrial liberty interest, as is the case here, *ODonnell II* nonetheless indicated that the procedural safeguards it announced should apply with equal force to such an argument. *See id.* at 159 (describing the procedural safeguards discussed above, after noting "that the liberty interest of the arrestees here are particularly important: the right to

---

[5] This determination should not be construed as a comment on the ultimate merits of Booth's claim. At this time, the Court only considers Booth's likelihood of success based on the evidence now before the Court.

[6] Booth is sufficiently clear that his argument is procedural in nature: "Plaintiff here *seeks procedural protection*, not from the deprivation of that state liberty interest, but from deprivation of their federal substantive due process right to pretrial liberty and right against wealth-based detention." Dkt. 3-1 at 29 n.22 (emphasis added).

pretrial liberty of those accused (that is, presumed innocent) of misdemeanor crimes upon the court's receipt of reasonable assurance of their return") (citation omitted). Booth seeks procedural safeguards that would go a little bit further than those announced in *ODonnell II*, but the Court is not convinced that the Constitution mandates such an extension. To be clear, the Fifth Circuit in *ODonnell II* clearly explained that its analysis of the procedures required to meet constitutional muster was guided by the Constitution, as opposed to state law. *See id.* Those same procedures seem to have been implemented by Galveston County in this case. Given that *ODonnell II* recognized an arrestee's pretrial liberty right before delineating the procedures as adequate to satisfy procedural due process, the Court is not convinced that the Constitution requires more. Thus, as to this claim, the Court cannot conclude that Booth has a substantial likelihood of success.

## C.  RIGHT TO COUNSEL AT AN INITIAL BAIL HEARING: SIXTH AMENDMENT

Booth next contends that the absence of court-appointed counsel at the time of an initial bail hearing (an alleged critical stage of the prosecution) violates an arrestee's right to counsel under the Sixth Amendment. In response, the District Court Judges and the District Attorney argue that the Sixth Amendment does not require court-appointed counsel to be present at the initial bail-setting hearing.[7]

### 1.  Booth Has Shown a Likelihood of Success on the Merits

Booth brings a claim under 28 U.S.C. § 1983. "Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by

---

[7] Curiously, Galveston County did not file an opposition to Plaintiff's Motion for Preliminary Inunction [sic] Requiring Counsel at Initial Bail Hearings.

the Constitution." *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). Section 1983 is not an independent source of constitutional or statutory rights. Instead, Section 1983 simply provides a cause of action for governmental violations of rights protected by the Constitution or other federal statutes. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994). To succeed on a Section 1983 claim, Booth "must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citation omitted).

The first element—an official policy—is easily met. There is a written policy, effective October 1, 2018, promulgated by the County Court at Law Judges and the District Court Judges for Galveston County, creating "county wide procedures, rules and orders" for the appointment of counsel for indigent accused persons in Galveston County. Dkt. 185-43 at 4. That written policy, referred to by Booth as the Galveston County Indigent Defense Plan, expressly instructs Galveston County officials to provide defense counsel *after* the initial bail hearing and before the bail review hearing. *See id.* at 19.

The second element—a municipal policymaker—is also satisfied. When the District Court Judges adopted the Galveston County Indigent Defense Plan, they were not acting in their judicial capacity, but rather "in their capacity as county policymakers." *ODonnell II*, 892 F.3d at 156. *See also Booth v. Galveston Cty.*, 352 F. Supp. 3d 718, 744 (S.D. Tex. 2019) (holding that the District Court Judges are policymakers for post-arrest practices). In short, the Galveston County Indigent Defense Plan is an official policy promulgated by a County policymaker that became the driving force behind an alleged

constitutional violation. Because the District Court Judges were acting as policymakers for Galveston County in determining when indigent defendants receive counsel, their actions can subject Galveston County to liability under Section 1983.

That leaves the third element—violation of a constitutional right—for the Court to address. Booth asserts that his Sixth Amendment right to counsel has been violated because Galveston County refuses to provide indigent defendants with appointed counsel until after an initial bail hearing. To analyze the likelihood of Booth prevailing on the merits of his Sixth Amendment claim, it is necessary to start with the text of the United States Constitution. The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. AMEND. VI. Although the Sixth Amendment contains just 19 words concerning the right to counsel, the importance of that text cannot be minimized. To this end, the Supreme Court has expressly recognized the right to the assistance of counsel guaranteed by the Sixth Amendment "is indispensable to the fair administration of our adversarial system of criminal justice." *Maine v. Moulton*, 474 U.S. 159, 168 (1985). "Embodying 'a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself,' the right to counsel safeguards the other rights deemed essential for the fair prosecution of a criminal proceeding." *Id.* at 169 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 462–63 (1938)).

The Supreme Court's recognition of the Sixth Amendment's right to counsel dates back to 1932, when the high court eloquently and emphatically stated:

The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at *every step* in the proceedings against him.

*Powell v. Alabama*, 287 U.S. 45, 68–69 (1932) (emphasis added). *See also Gideon v. Wainwright*, 372 U.S. 335, 344 (1963) (recognizing the "obvious truth" that "in our adversary system of criminal justice, any person haled into court who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him."); *Ake v. Oklahoma*, 470 U.S. 68, 77 (1985) (explaining that in cases involving the rights of indigent criminal defendants, such as *Gideon*, "[m]eaningful access to justice has been the consistent theme" of the court's jurisprudence because the court "recognized long ago that mere access to the courthouse doors does not by itself assure a proper functioning of the adversary process, and that a criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense").

It is indubitable that the right to counsel is critical during an actual trial, when evidence must be submitted in admissible form, witnesses must be examined and argument persuasively presented to the factfinder, whether it be a judge or jury. But, as the Supreme Court recognized in *Powell* and a litany of other cases throughout the years, counsel is also required "at every stage of a criminal proceeding where substantial rights of a criminal

accused may be affected." *Mempa v. Rhay*, 389 U.S. 128, 134 (1967). *See also Missouri v. Frye*, 566 U.S. 134, 140 (2012) ("It is well settled that the right to the effective assistance of counsel applies to certain steps before trial."); *Moulton*, 474 U.S. at 170 ("to deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself").

The Supreme Court has clearly stated that "a criminal defendant's initial appearance before a judicial officer, where he learns the charge against him and his liberty is subject to restriction, marks the start of adversary judicial proceedings that trigger the attachment of the Sixth Amendment right to counsel." *Rothgery v. Gillespie Cty.*, 554 U.S. 191, 213 (2008). That does not, however, mean that a criminal defendant is entitled to counsel as soon as the Sixth Amendment right attaches. *See id.* at 213–14 (Alito, J., concurring) ("[T]he term 'attachment' signifies nothing more than the beginning of the defendant's prosecution. It does not mark the beginning of a substantive entitlement to the assistance of counsel."). Rather, the Supreme Court has held that "[o]nce attachment occurs, the accused at least is entitled to the presence of appointed counsel during any 'critical stage' of the postattachment proceedings." *Id.* at 212. *See also Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) ("the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical stages' of the criminal proceedings") (citing *United States v. Wade*, 388 U.S. 218, 227–28 (1967) and *Powell*, 287 U.S. at 57).

Thus, the central question in this case is whether an initial bail hearing constitutes a "critical stage" of a criminal proceeding. If a bail hearing is a "critical stage," Galveston County must provide an indigent defendant with counsel at a bail hearing. If, on the other

hand, a bail hearing is not a "critical stage," Galveston County is under no obligation to appoint counsel to an indigent defendant facing a bail hearing.

So what exactly is a "critical stage"? In simple terms, a "critical stage" is "a step of a criminal proceeding . . . that h[olds] significant consequences for the accused." *Bell v. Cone*, 535 U.S. 685, 696 (2002) (citations omitted). As the Supreme Court explained in *Rothgery*, "the cases have defined critical stages as proceedings between an individual and agents of the State (whether formal or informal, in court or out) that amount to trial-like confrontations, at which counsel would help the accused in coping with legal problems or meeting his adversary." 554 U.S. at 212 n.16 (internal quotation marks and citations omitted). *See also Wade,* 388 U.S. at 227 (explaining that the "critical stage" analysis requires a court to determine "whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice."); *McAfee v. Thaler*, 630 F.3d 383, 391 (5th Cir. 2011) ("Critical stage[s]" occur "where 'the accused required aid in coping with legal problems or assistance in meeting his adversary,' and the 'substantial rights of the accused may be affected.'") (quoting *United States v. Ash*, 413 U.S. 300, 311 (1973)). Put another way, "what makes a stage critical is what shows the need for counsel's presence." *Rothgery*, 554 U.S. at 212.

Among the stages of a criminal proceeding that have been deemed "critical" for Sixth Amendment purposes include preliminary hearings (*see Coleman v. Alabama*, 399 U.S. 1, 10 (1970)); arraignments (*see Hamilton v. Alabama*, 368 U.S. 52, 54 (1961)); plea negotiations (*see Frye*, 566 U.S. at 139); postindictment identification lineups (*see Wade*, 388 U.S. at 237); guilty pleas (*see Argersinger v. Hamlin*, 407 U.S. 25, 34 (1972)); and

postindictment interrogations (*see Massiah v. United States*, 377 U.S. 201, 205 (1964)). There are common themes running through these cases. For starters, competent counsel is necessary to help a defendant navigate the complicated, treacherous and, oftentimes, confusing landscape of the criminal justice system. A defendant cannot be reasonably presumed to make critical decisions concerning his case without the advice of counsel. In addition, it is imperative in all these cases that counsel be present "at pretrial proceedings where the results might well settle the accused's fate and reduce the trial itself to a mere formality." *Wade*, 388 U.S. at 224. As the Supreme Court noted in *Wade*: "[T]he accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." *Id.* at 226 (citations omitted).

To assess whether a bail hearing is a "critical stage" of a criminal prosecution, the Court must first inquire as to whether counsel would be needed to help a defendant cope with complex legal problems raised during such a hearing. The answer is a no-brainer. Unrepresented defendants, especially those that have had no experience in the criminal justice system, are in no position at an initial bail hearing to present the best, most persuasive case on why they should be released pending trial. A lawyer would unquestionably provide invaluable guidance to a criminal defendant facing a bail determination.

Two district courts in the Fifth Circuit—more than 40 years apart—have perfectly captured how important it is to have counsel present at a bail hearing. Back in 1975, a district court in the Southern District of Texas commented:

> [I]f counsel can review and cogently represent his incarcerated client, a court might reduce or eliminate a money bond, permitting the client to be released from incarceration pending trial. . . . The accused are frequently ignorant of their legal rights and unaware of the steps which must be taken to trigger prompt processing of the case pending against them. It must also be recognized that courts are more readily able to communicate with attorneys than prisoners and are more likely to rely upon the representations of an attorney in deciding whether to release a defendant pending trial or to dismiss the charges against him.

*Albertiv. Sheriff of Harris Cty.*, 406 F. Supp. 649, 660 (S.D. Tex. 1975). Similarly, a

district court in the Eastern District of Louisiana noted just last year:

> [W]ithout representative counsel the risk of erroneous pretrial detention is high. Preliminary hearings can be complex and difficult to navigate for lay individuals and many, following arrest, lack access to other resources that would allow them to present their best case. Considering the already established vital importance of pretrial liberty, assistance of counsel is of the utmost value at a bail hearing.

*Caliste v. Cantrell*, 329 F. Supp. 3d 296, 314 (E.D. La. 2018).

Although these legal authorities are helpful in framing the issue, the testimony in

this case unmistakably demonstrates the stark reality that arrestees are hesitant to advocate

for themselves without counsel present. As Booth, himself, testified when asked if he

posed any questions to the magistrate at his bail hearing: "I was—I was kind of under

informed. I didn't—overwhelmed, and I wasn't represented by any—an attorney or

anything like that. I didn't know which direction to go." Dkt. 184 at 218. Making matters

worse, the magistrates who make the bail determinations in Galveston County readily

acknowledge that they are reluctant to engage a defendant in conversation at the initial bail

hearing, given the repeated admonitions to arrestee of his right to remain silent. *See* Dkt.

184 at 207 ("I'm not going to force a defendant into a conversation with me, especially

after I just told him he's got the right not to talk to anybody."). It is hard to imagine how a defendant can possibly be expected to champion for his release at an initial bail hearing when he is, understandably, disinclined to speak without an attorney present and, at the same time, the magistrates are hesitant to ask the defendant any questions that might elicit information favoring release.

It should shock absolutely nobody that the failure to have counsel during an initial bail hearing, when a critical decision is made concerning pretrial release, leads to concrete harm in the form of outcomes that are far worse than if counsel were provided. *See, e.g.,* Charlie Gerstein, *Plea Bargaining and the Right to Counsel at Bail Hearings*, 111 MICH. L. REV. 1513, 1516 (2013) ("Appointing counsel at bail hearings . . . will substantially reduce the amount of time a substantial number of indigent defendants spend in jail awaiting their trials."). This harm is not just anecdotal or theoretical. Ample empirical research indicates that "delaying representation until after the pretrial release determination [is] the single most important reason for lengthy pretrial incarceration of people charged with nonviolent crimes. Without counsel present, judicial officers ma[k]e less than informed decisions and [a]re more likely to set or maintain a pretrial release financial condition that [are] beyond that individual's ability to play." Douglas L. Colbert et al., *Do Attorneys Really Matter? The Empirical and Legal Case for the Right of Counsel at Bail*, 23 CARDOZO L. REV. 1719, 1720 (2002) (study in Baltimore, Maryland concluding that having adequately prepared and resourced defense counsel at the initial bail hearing results in defendants being released on their own recognizance twice as often than if they were unrepresented, and bail being reduced four times as often for the remaining defendants).

*See also* Ernest J. Fazio, et al., Nat'l Institute of Justice, *Early Representation by Defense Counsel Field Test: Final Evaluation Report* at i (1985) (study on the effect lawyers had on pretrial release decisions in Passaic, New Jersey, Shelby County, Tennessee, and Palm Beach, Florida; concluding that representation at an initial bail hearing "had an interesting and important impact upon pretrial detention" in that "test defendants obtained pretrial release much sooner"); Dkt. 205-5 (noting in Bexar County, Texas that 77 percent of those represented by the public defender's office at the initial bail hearing were released on personal bond compared to a 57 percent rate for those not represented at the initial bond hearing).

In addition to an indigent defendant's obvious need to have counsel at an initial bail hearing to provide general advice and advocate for release, there are tangible adverse consequences as to the ultimate disposition of the criminal case that can result if an individual is not represented at an initial bail hearing. If a criminal defendant does decide to speak up at an initial bail hearing without the presence of counsel, it is often in an effort to explain the situation in the hopes of obtaining release. This increases the likelihood of the individual making an incriminating statement that can be used against him at a later date. And if an individual makes an incriminating statement at a bail hearing, the appointment of a lawyer to represent the individual later in the criminal case would, in effect, be meaningless. *See, e.g., United States v. Dohm*, 618 F.2d 1169, 1174 (5th Cir. 1980) (permitting uncounseled admission of guilt at initial bail hearing); *Cowards v. State*, 465 S.E.2d 677, 679 (Ga. 1996) (same). Indeed, "the right to use counsel at the formal trial (would be) a very hollow thing (if), for all practical purposes, the conviction is already

assured by the pretrial examination." *Wade*, 388 U.S. at 226 (quotation and citation omitted). That is why "[o]ur Constitution, unlike some others, strikes the balance in favor of the right of the accused to be advised by his lawyer of his privilege against self-incrimination." *Escobedo v. Illinois*, 378 U.S. 478, 488 (1964) (citation omitted). Representation at an initial bail hearing unquestionably lessens the risk that a defendant makes a statement that can be used against him later. To safeguard the privilege against self-incrimination from being jeopardized, counsel must be provided to indigent defendants at those stages of the proceedings—like the initial bail hearing—that involve a substantial risk that the indigent defendant might incriminate himself. An indigent defendant should, therefore, be permitted to discuss with appointed counsel the pros and cons associated with waiving the right against self-incrimination *before* determining whether to speak his mind at an initial bail hearing. *See Wade*, 388 U.S. at 225–26 (discussing the importance "of counsel's presence if the accused [is] to have a fair opportunity to present a defense at the trial itself").

In trying to determine whether a bail hearing should be categorized as a "critical stage" of a criminal prosecution, the Supreme Court's *Coleman* decision is quite instructive. 399 U.S. 1. The issue presented in that case was whether an Alabama preliminary hearing represented a "critical stage" for which the Sixth Amendment required the assistance of counsel. *See id.* at 9–10. At an Alabama preliminary hearing, the trial court "determine[s] whether there is sufficient evidence against the accused to warrant presenting his case to the grand jury and, if so, to fix bail if the offense is bailable." *Id.* at

8 (citation omitted). In explaining how the guiding hand of counsel can protect an indigent defendant at a preliminary hearing, the high court noted:

> First, the lawyer's skilled examination and cross-examination of witnesses may expose fatal weaknesses in the State's case that may lead the magistrate to refuse to bind the accused over. Second, in any event, the skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of the State's witnesses at the trial, or preserve testimony favorable to the accused of a witness who does not appear at the trial. Third, trained counsel can more effectively discover the case the State has against his client and make possible the preparation of a proper defense to meet that case at the trial. Fourth, counsel can also be influential at the preliminary hearing in making effective arguments for the accused on such matters as the necessity for an early psychiatric examination or bail.

*Id.* at 9. Because a defendant cannot realize these advantages on his own, the Supreme Court held that a defendant was as much entitled to the aid of counsel at the Alabama preliminary hearing as at the trial itself. *See id.* Make no mistake: The Supreme Court reached this conclusion because, in part, a criminal defense attorney can make effective arguments about the "necessity for . . . bail" that a defendant would be unlikely to advance. *Id.*

Following this same logic, courts across the country have held that a bail proceeding is a "critical stage" requiring the appointment of counsel for indigent defendants. *See, e.g., Higazy v. Templeton*, 505 F.3d 161, 172 (2d Cir. 2007) ("a bail hearing is a critical stage of the State's criminal process") (internal quotation marks and citation omitted); *Ditch v. Grace*, 479 F.3d 249, 252–53 (3rd Cir. 2007) (a preliminary hearing, which includes a determination as to whether a defendant will be discharged or bound over to the court, is a "critical stage"); *Smith v. Lockhart*, 923 F.2d 1314, 1319 (8th Cir. 1991) (holding that

hearing on bail reduction motion was a "critical stage" of proceeding requiring representation by counsel); *Caliste*, 329 F. Supp. 3d at 314 (holding that an initial bail hearing is a "critical stage" of the proceedings because "[t]here is no question that the issue of pretrial detention is an issue of significant consequence for the accused"). *Gonzalez v. Comm'r of Corr.*, 68 A.3d 624, 631–37 (Conn. 2013) (criminal defendant has a Sixth Amendment right to counsel in proceedings pertaining to the setting of bond); *Hurrell-Harring v. New York*, 930 N.E.2d 217, 223 (N.Y. 2010) ("There is no question that a bail hearing is a critical stage of the State's criminal process") (internal quotation marks and citation omitted); *State v. Fann*, 571 A.2d 1023, 1030 (N.J. Super. Ct. 1990) ("The setting of bail certainly is a 'critical stage' in the criminal proceedings").

Applying the reasoning used in these cases, it should come as no surprise that the Court concludes that a hearing at which bail is set is a "critical stage," requiring the appointment of counsel for indigent defendants. Not only is a bail hearing *a* "critical stage" in the criminal process, but it is arguably the *most* "critical stage." As one court noted:

> The setting of bail certainly is a "critical stage" in the criminal proceedings. It is an action that occurs after adversary criminal proceedings have been commenced. Its importance to defendant in terms of life and livelihood cannot be overstated. The effect on family relationships and reputation is extremely damaging. Failure of pretrial release causes serious financial hardship in most cases. Jobs and therefore income are lost. The immediate consequence of the absence of bail or the inability to make bail-deprivation of freedom-standing alone, is critically consequential. Being jailed, for however short a time, is a significantly unpleasant experience. There are other consequential results. . . . [T]he prospect of conviction is greatly increased when an accused is jailed between the time of arrest and final adjudication; so is the severity of sentence. The opportunity to consult with counsel, to find witnesses, to obtain evidence and, in general, to prepare a defense is clearly restricted when a defendant is kept in jail.

*Fann*, 571 A.2d at 1030. If Galveston County does not provide counsel to a defendant at an initial bail hearing, the Sixth Amendment's right to counsel is nothing more than an empty right.

In opposing the issuance of a preliminary injunction, the District Attorney and the District Court Judges cite the Supreme Court's opinion in *Rothgery* for the proposition that there is no Sixth Amendment right to counsel at an initial bail hearing. This argument greatly overstates the holding of *Rothgery*. In *Rothgery*, the plaintiff brought a civil rights lawsuit alleging that Gillespie County refused to appoint him a lawyer until six months after his initial appearance in court. 554 U.S. at 196. In an admittedly "narrow" ruling, the Supreme Court held that the plaintiff's right to counsel "attached" at the initial appearance in court. *See id.* at 213. In accordance with a long list of Supreme Court cases, *Rothgery* held that once the right to counsel has attached, the Sixth Amendment requires that defendants be represented by counsel at any "critical stage before trial." *Id.* The sole question at issue in *Rothgery* ultimately was "whether attachment of the right [to counsel] also requires that a public prosecutor (as distinct from a police officer) be aware of that initial proceeding or involved in its conduct." *Id.* at 194–95. The Supreme Court answered that question in the negative. *See id.* The issuance of bail was not an issue in the case since Rothgery had waived the right to have appointed counsel present at the initial bail hearing. *See id.* at 196 n.5. Because bail was not contested in *Rothgery*, the high court never addressed whether an initial bail hearing is a "critical stage" of trial. That question was left for another day.

The District Attorney also argues that for there to be a "critical stage" proceeding, it must involve a "trial-like confrontation." Dkt. 236 at 20. This assertion is misguided. In no uncertain terms, the Supreme Court has explained that "critical stages" do not require the presence of a prosecutor or any legal proceeding remotely resembling a trial. *See, e.g., Frye*, 566 U.S. at 140. There are numerous examples of "critical stages" of criminal proceedings that arise outside courtroom or any trial-like setting. For instance, the Supreme Court has held that the Sixth Amendment right to effective assistance of counsel extends to a post-indictment lineup (*see Wade*, 388 U.S. at 237), and the consideration of plea offers (*see Lafler v. Cooper*, 566 U.S. 156, 162 (2012))—two activities that often take place far from the courtroom. The important question to ask is whether the pretrial proceeding has the potential to ultimately impact the fairness at the trial itself if the defendant is not represented by counsel.[8] All that being said, the fact remains that "[b]ail hearings fit comfortably within the sphere of adversarial proceedings closely related to trial." *United States v. Abuhamra*, 389 F.3d 309, 323 (2d Cir. 2004).

> Bail litigation arises only after a defendant is formally charged with crimes that the prosecution must be prepared to prove within a specified time at trial. The statutory presumptions and burdens applicable to bail determinations are all defined in terms of a defendant's trial status. Further, bail hearings, like probable cause and suppression hearings, are frequently hotly contested and require a court's careful consideration of a host of facts about the defendant

---

[8] In *United States v. Mendoza-Cecelia*, 963 F.2d 1467 (11th Cir. 1992), a case relied upon by the District Attorney, an arrestee offered an admission of guilt at his initial bail hearing. The 11th Circuit rejected a defendant's Sixth Amendment claim, holding that an "initial appearance is largely administrative" and "the bail hearing is not a trial on the merits." *Id.* at 1473 (citation omitted). The Court declines to follow *Mendoza-Cecelia*, believing that the 11th Circuit erroneously focused on the similarities between an initial appearance and an actual trial without properly analyzing whether the denial of counsel at a bail hearing can irreparably prejudice the outcome of the case.

and the crimes charged. Thus, there is an interest in conducting such hearings in open courtrooms so that persons with relevant information can come forward. . . . While the presentation of evidence at bail hearings may be more informal than at probable cause and suppression hearings, the matter in dispute is of no less public concern. Bail hearings do not determine simply whether certain evidence may be used against a defendant at trial or whether certain persons will serve as trial jurors; bail hearings determine whether a defendant will be allowed to retain, or forced to surrender, his liberty during the pendency of his criminal case.

*Id.* at 323–24.

In *ODonnell II*, the Fifth Circuit explained that an initial bail-setting hearing must take place within 48 hours of an individual's arrest to pass constitutional muster. *See ODonnell II*, 892 F.3d at 168. A governmental entity may, of course, accelerate this schedule and provide an initial bail hearing on a more expedited basis. That is exactly what Galveston County has tried to do by holding initial bail hearings within roughly 12 hours of booking an individual into the Galveston County Jail. Given that every minute in custody can have a dramatic effect on an individual's life, Galveston County's efforts to speed up the bail process should be applauded. But, at the same time, Galveston County cannot conveniently ignore the constitutional requirement to provide counsel at these initial bail hearings. This Court has concluded that the Sixth Amendment mandates a right to an appointed lawyer at bail hearings for those financially unable to hire counsel. That right must be respected whether the initial bail hearing takes place 12, 24, 36 or 48 hours after the initial arrest.

To be clear, the Court is not suggesting that radical changes need to be made to Galveston County's pretrial detention system to ensure that it is in compliance with the Sixth Amendment's right to counsel guarantee. Galveston County currently schedules

initial bail hearings and bail review hearings every day at 7:00 a.m. and 7:00 p.m. Under the current system, counsel is not provided to indigent defendants at the initial bail hearing, but counsel is provided at the bail review hearing, which is usually held within 12 hours of the initial bail hearing and within 24 hours of the arrest. At the bail review hearing, an appointed lawyer is on-call to assist any indigent defendant who requests assistance. To satisfy the Constitution's basic requirements under the Sixth Amendment, all Galveston County needs to do is provide counsel to indigent defendants at the initial bail hearing, just 12 hours earlier than it currently does. It is hard to fathom how this could be problematic, given that Galveston County has apparently been able to effectively make counsel available at the bail review hearings held twice daily.

In arguing that an Article 15.17 hearing is not a "critical stage" that requires the appointment of defense counsel for indigent arrestees, the District Attorney and the District Court Judges rely on a number of cases. The Court has carefully reviewed each one of these cases and finds that they are unpersuasive or readily distinguishable from the instant case. Many of the cases cited by the District Attorney and the District Court Judges, for example, do not discuss the right to counsel at hearings were bail was set, but rather generally discuss the propriety of having a lawyer appointed at an initial appearance. *See, e.g., Gilley v. State*, 418 S.W.3d 114 (Tex. Crim. App. 2014); *O'Kelley v. State*, 604 S.E.2d 509 (Ga. 2004); *Green v. State*, 872 S.W.2d 717 (Tex. Crim. App. 1994).[9] Two of the

---

[9] In *Green*, the Texas Court of Criminal Appeals held that a criminal defendant's Sixth Amendment right to counsel was not violated when he appeared without counsel before a magistrate for his "preliminary initial appearance" after arrest. *See* 872 S.W.2d at 720. The record in *Green* did not indicate whether bail had been set at the initial appearance. But, even more importantly, the *Green*

opinions dismiss pro se prisoners' claim that *Rothgery* requires counsel at magistration. *See, e.g., Kennedy v. Bexar Cty.*, No. 16-ca-262, 2016 WL 1715200 (W.D. Tex. Apr. 27, 2016); *Mortland v. Hays Cty. Cmty. Supervision & Corrs. Dep't*, No. 12-ca-488, 2013 WL 1455657 (W.D. Tex. Apr. 8, 2013). But those cases do not indicate whether bail was set at magistration and the arguments presented by counsel in this case are, as Booth correctly notes, "more developed and depend on interpretation of other Supreme Court cases." Dkt. 238 at 7.

It is important to clarify that the Court is not suggesting that an Article 15.17 hearing is, in all cases, a "critical stage" proceeding that automatically requires the appointment of counsel for indigent defendants. After *Rothgery*, an Article 15.17 hearing "plainly signals attachment," but the Court must dig a little deeper to determine if the initial appearance rises to the level of a "critical stage." *Rothgery*, 554 U.S. at 212. Remember, it is only at the point in which the proceedings rise to a "critical stage" that appointed counsel is constitutionally mandated. If there is no bail setting determination at the initial appearance, it is likely not a "critical stage" of the proceedings requiring representation. On the other hand, when an Article 15.17 hearing includes an initial bail determination, it is a "critical stage" in the criminal proceedings, requiring the appointment of counsel for indigent defendants. This is because an accused's right to counsel extends to those "critical" pretrial proceedings in which "the accused is confronted, just as at trial, by the procedural system,

---

opinion came out four years before *Rothgery*. After *Rothgery*, it is black-letter law that an Article 15.17 hearing is an initial appearance at which the constitutional right to counsel attaches. *See Rothgery*, 554 U.S. at 199.

or by his expert adversary, or by both . . . in a situation where the results of the confrontation might well settle the accused's fate and reduce the trial itself to a mere formality." *United States v. Gouveia*, 467 U.S. 180, 189 (1984).

The District Attorney and the District Court Judges next argue that by conducting a bail review hearing so quickly after an initial bail determination (roughly 12 hours in practice), Galveston County is able to cure any potential damage or prejudice that may arise from the lack of counsel at an initial bail hearing. The premise is that even if individuals are unnecessarily jailed after the initial bail hearing, they only remain jailed for a short period of time before the bail review hearing remedies the situation. Although a defendant in Galveston County can urge reconsideration of an initial bail determination at a bail review hearing (which must be held, according to the Galveston County Indigent Plan, within 48 hours of the initial bail determination), that does not obviate the harm. A bail review hearing does not remedy the harm caused by uncounseled statements at magistration. A bail review hearing also does not remove the possibility, no matter how slight, that an initial bail determination has an "anchoring effect" that may make it more difficult to persuade the reviewing judge to modify what has already been ordered. In short, a bail review hearing is an admirable step, but such a hearing does not magically eliminate all the harm incurred as a result of a lawyer-less initial bail hearing.

There are two New Jersey cases the District Attorney points to which suggest that a bail review hearing is sufficient to ameliorate any harm caused by not having counsel represent indigent defendants at an initial bail hearing. *See Rojas v. City of New Brunswick*, No. 04-3195, 2008 WL 2355535 (D.N.J. June 4, 2008); *Fann*, 571 A.2d 1023.

Interestingly, in both cases, the courts concluded, with apparently no hesitation, that the "setting of bail certainly is a 'critical stage' in the criminal proceedings." *Rojas*, 2008 WL 2344435, at *16 (quoting *Fann*, 571 A.2d at 1030). Nonetheless, the New Jersey courts—one state and one federal—both declined to order counsel at initial bail hearings based on the "practical consideration[]" that doing so would delay bail setting. *Id.* This Court strongly disagrees with these holdings. There is absolutely no precedent supporting the courts' "practical considerations" analysis. Indeed, the Supreme Court in *Rothgery* indicated that once a determination is made that a proceeding is a "critical stage," an attorney's presence is mandatory. *See* 554 U.S. at 212. In this case, there is no evidence whatsoever that providing counsel at the initial bail setting would delay magistration. To the contrary, there is ample historical evidence that Galveston County is fully capable of having appointed defense counsel attend bail review hearings within approximately 24 hours of an arrest. There is no rational reason to believe that Galveston County or the District Attorney's office will be substantially harmed if counsel must be provided at the initial bail setting, which currently takes place 12 hours after arrest.[10]

To conclude, the Court finds that Booth has adequately established a likelihood to prevail under the Sixth Amendment since the Constitution requires representation by counsel at an initial bail-setting hearing.

---

[10] As an aside, in the federal system, counsel is appointed to indigent defendants at their initial appearance before a magistrate judge, and the lawyers represent the defendants at all bail and detention hearings. *See* 18 U.S.C. §§ 3006A (c), (d)(4)(B)(ii)(II).

## 2. Booth has Established a Risk of Irreparable Harm

It is time to turn to the next part of the preliminary injunction test: irreparable harm. The Supreme Court has held that, as a matter of law, the deprivation of a constitutional right "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). This concept that a violation of a constitutional right in and of itself constitutes irreparable injury has been universally recognized and is not open to debate. *See Deerfield Med. Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (the denial of constitutional rights "for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction") (collecting cases); *ODonnell I*, 251 F. Supp. 3d at 1157 ("When an alleged deprivation of a constitutional right is involved . . . most courts hold that no further showing of irreparable injury is necessary.") (citation omitted). Since the Court has determined that an indigent defendant is entitled under the Sixth Amendment to counsel at an initial bail hearing, the irreparable injury requirement is automatically satisfied.

Even if a further showing of irreparable harm is required, that hurdle is easily overcome in this case. As noted above, there is a significant potential for inculpatory statements to be made at magistration if counsel is unable to advise arrestees of their right to remain silent at an initial bail hearing. Furthermore, numerous studies indicate that Defendants represented by counsel at an initial bail hearing are less likely to have high bail set, and consequently, less likely to be detained pending trial. *See e.g.* Colbert, *Do Attorneys Really Matter? The Empirical and Legal Case for the Right of Counsel at Bail*, 23 CARDOZO L. REV. 1719, 1720 (2002). The lack of counsel at initial bail hearings,

therefore, leads to unwarranted pretrial detention. Having representation at the initial bail hearing means that fewer defendants will be held in custody unnecessarily. This is undoubtedly a good thing since, as the American Bar Association ("ABA") has observed, "[t]he consequences of pretrial detention are grave." American Bar Association Project on Standards for Criminal Justice, *Standards Relating to Pretrial Release–Approved Draft, 1968* (New York: American Bar Association, 1968) at 2–3. The ABA further noted:

> [As a result of pretrial detention,] Defendants presumed innocent are subjected to the psychological and physical deprivations of jail life, usually under more onerous conditions than are imposed on convicted defendants. The jailed defendant loses his job if he has one and is prevented from contributing to the preparation of his defense. Equally important, the burden of his detention frequently falls heavily on the innocent members of his family. Moreover, there is strong evidence that a defendant's failure to secure pretrial release has an adverse effect on the outcome of his case. Studies in Philadelphia, the District of Columbia and New York all indicate that the conviction rate for jailed defendants materially exceeds that of bailed defendants. For example, of defendants charged with grand larceny forty-three percent of those on bail pending trial were convicted while seventy-two percent of those in jail were convicted. In terms of the sentence imposed on convicted persons, the bailed defendant is far more likely to receive probation; his jailed counterpart, having been unable to demonstrate his reliability under supervision, more frequently goes to prison. Of course some of the factors, such as strong evidence of guilt or a long criminal record, that lead to high bail and hence detention, will also cause a court to find the defendant guilty and to sentence him to prison rather than to give him probation. But a recent study which attempted to hold other causative factors constant indicates that there is a strong relationship between detention and unfavorable disposition.

*Id. See also Booth*, 352 F. Supp. at 739 ("The importance of providing counsel at the initial detention hearing is underscored by empirical research which indicates that case outcomes for pretrial detainees are much worse—in terms of an increased likelihood of conviction and harsher sentences—than for those who are released pending trial.") (citation omitted).

Even if, hypothetically, the bail review hearings are able to cure all those cases of unnecessary pretrial detention, the fact remains that some individuals will remain in custody for a minimum of 12 hours from the time of the initial bail hearing to the bail review hearing. "Even temporary unconstitutional deprivations of liberty" suffice to establish irreparable harm. *Pugh v. Rainwater*, 483 F.2d 778, 782–83 (5th Cir. 1973), *rev'd in part on other grounds sub nom. Gerstein v. Pugh*, 420 U.S. 103 (1975).

In short, Booth meets his burden to establish irreparable harm.

### 3. Balancing the Harms Weighs in Favor of an Injunction

The third preliminary injunction factor requires Booth to show that, absent an injunction, the threatened injury outweighs any harm the defendants will suffer as a result of the injunction. *See Winter*, 555 U.S. at 24 ("courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."). "If a court has made a finding of irreparable harm, a party opposing injunctive relief 'would need to present powerful evidence of harm to its interests' to prevent the scales from weighing in the movant's favor." *Campaign for S. Equal. v. Bryant*, 64 F. Supp. 3d 906, 950 (S.D. Miss. 2014) (quoting *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 297 (5th Cir. 2012)). "[W]hen plaintiff is claiming the loss of a constitutional right, courts commonly rule that even a temporary loss outweighs any harm to defendant and that a preliminary injunction should issue." 11A Charles Alan Wright & Arthur R. Miller, FED. PRAC. & PROC. CIV. § 2948.2 (3d ed. 2019).

According to the District Attorney and the District Court Judges, there is a heavy administrative burden that will be placed on Galveston County and the District Attorney's

office in the event an injunction is issued. Specifically, there is a concern that requiring the appointment of counsel at initial bail hearings will necessitate the District Attorney to furnish prosecutors to attend the hearings, and "do nothing but add complexity and more time." Dkt. 234 at 25. The Court is not convinced. There might end up being some additional costs incurred if defense counsel has to be provided to indigent defendants twice—at an initial bail hearing and, later, at a bail review hearing as well. But, at the same time, it is very possible that by providing counsel at an initial bail hearing, more individuals will be released from pretrial detention and there will be quantifiable cost savings in terms of costs of incarceration. The financial cost, if any, on the District Attorney and Galveston County is far from clear. By contrast, indigent defendants are unquestionably more likely to remain in custody—even if only for a short time—if they do not receive appointed counsel early in the process, leading to time away from their friends, family, school, and employment.

By any metric, the hardship class members suffer from being denied counsel far outweighs any harm to the Defendants. As such, the Court finds that the balance of equities weighs heavily in favor of an injunction.

### 4. The Public Interest Favors an Injunction

The fourth factor a court must consider when deciding whether to grant a preliminary injunction is the impact an injunction may have on the public interest. It is axiomatic that the public interest is not served by allowing constitutional violations to continue. As the Fifth Circuit has explained, "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Jackson Women's Health Org. v. Currier*,

760 F.3d 448, 458 n.9 (5th Cir. 2014) (citation omitted). *See also Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 595 (5th Cir. 2006) (the public interest is established if a plaintiff can show a substantial likelihood of success on the merits of a constitutional claim); *Nobby Lobby, Inc. v. Dallas*, 970 F.2d 82, 93 (5th Cir. 1992) ("[T]he public interest always is served when public officials act within the bounds of the law and respect the rights of the citizens they serve.") (citation omitted); *Jackson Women's Health Org. v. Currier*, 940 F. Supp. 2d 416, 424 (S.D. Miss. 2013) ("[T]he grant of an injunction will not disserve the public interest, an element that is generally met when an injunction is designed to avoid constitutional deprivations."), *aff'd in part*, 760 F.3d 448. In this case, given the real harms that befall an indigent arrestee who does not receive appointed counsel at an initial bail hearing, the public interest is served by issuing a preliminary injunction.

## THE PRELIMINARY INJUNCTION

Now that the Court has concluded that indigent arrestees in Galveston County are constitutionally entitled to representation at initial bail hearings, the Court must determine how to fashion an appropriate remedy. Booth has submitted a proposed preliminary injunction order, but that proposed preliminary injunction order is incredibly overbroad.

To begin with, Booth suggests that Galveston County be ordered to provide defense counsel to "*any* felony arrestee is who unable to retain counsel"—regardless of whether they can afford their own attorney. Dkt. 205-1 at 1 (emphasis added). There is no legal basis for this request. The Constitution requires the appointment of counsel to those who cannot afford to hire an attorney at "critical stages" of the criminal proceedings. The Constitution does not mandate that the government provide counsel to every criminal

defendant, rich or poor. While a governmental body could, conceivably, decide to provide counsel to all criminal defendants irrespective of their indigent status, that is not a decision for a district court to make. The undersigned will refrain from stepping in and playing policymaker. A district court is only permitted to devise an injunctive remedy that meets Constitutional minimums. As a result, the injunction issued in this case will be limited to requiring that indigent felony arrestees in Galveston County be provided with counsel at the initial bail hearing.

Booth's proposed injunction would also require Galveston County to provide defense counsel with at least three hours of lead time to meet with a criminal defendant before a bail hearing. How Booth came up with the three-hour period is unclear. There is certainly no evidentiary support for this request anywhere in the record. The only testimony on this issue indicates that a three-hour preparation period is completely unnecessary. Dkt. 239-2 at 64–65 (Harris County Chief Public Defender explaining that "[t]here doesn't need to be a rule" that an attorney must meet his client a certain number of hours before a detention hearing, and noting that he often meets with clients for the first time "within minutes, half hour" of a bail hearing). As a result, the Court will not, at this time, set a minimum number of minutes or hours of lead time that have to be provided so that a defense lawyer can consult with his client before an initial bail hearing. Once the injunction goes into effect, Booth is certainly entitled to ask the Court to revise the preliminary injunction in the unlikely event he believes that Galveston County is taking affirmative steps to frustrate a meaningful attorney-client relationship at the initial bail hearings.

The proposed injunction advanced by Booth also requests that Galveston County provide a weekly report to the Court with detailed information including, but not limited to, the name of each "arrestee's counsel, [the] time that counsel was provided to the arrestee, . . . the time of the arrestee's initial bail hearing . . . [and] any outstanding conditions of release applicable to the arrestee." Dkt. 205-1 at 2. The Court fully agrees with the District Court Judges that these requests "are time consuming, unnecessary, and only serve to add a burden on the County." Dkt. 234 at 28. There is no need to place this added administrative burden on Galveston County.

In accordance with these findings, the Court recommends that the injunction bind Galveston County and its officers, agents, servants, employees, and attorneys, as well as other persons who are in active concert or participation with them. The specific terms of the injunction should be as follows:

(1) Galveston County must provide any indigent felony arrestee with counsel to represent the arrestee at the initial hearing concerning conditions of pretrial release.

(2) The Court does not order injunctive relief against the magistrates or the District Attorney. The Court does not order injunctive relief against the District Court Judges in their judicial capacities, but rather does so in their policymaking capacities.

(3) The recommended injunction should expire on the entry of a final judgment in this case, unless the Court orders otherwise. Any party may seek modification of the injunction by a written motion served on all counsel and on a showing of good cause.

## CONCLUSION AND RECOMMENDATION

In finding that a preliminary injunction was warranted in *ODonnell I*, Chief Judge Rosenthal made the following observation, which this Court wholeheartedly adopts as equally applicable to the case at hand:

> This case is not easy. Institutions charged with safeguarding the public have an extraordinary trust and a difficult task. The difficulty and importance of the task cannot defeat an equally important public trust, which the court and the defendants share—to enforce the Constitution. The court has done its best to recognize and work toward both. [Galveston County] is changing its bail procedures. That is commendable. The relief ordered here is intended to fit into that work, to discharge the responsibilities the court and the parties share.

*ODonnell I*, 251 F. Supp. 3d at 1168.

Accordingly, for the reasons stated above, the Court **RECOMMENDS** that:

- The Motion for Preliminary Injunction (Dkt. 3-1) be **DENIED**; and

- The Motion for Preliminary Inunction [sic] Requiring Counsel at Initial Bail Hearings (Dkt. 205) be **GRANTED** to the extent described in this Memorandum and Recommendation.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 7th day of August, 2019.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE