IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| AARON BOOTH, § | | |
| *Plaintiff,* § | | |
| § | | |
| v. § | | Civil Action No. 3:18-cv-104 |
| § | | |
| GALVESTON COUNTY, *et al.*, § | | |
| *Defendants.* § | | |

# DISTRICT COURT JUDGES' OBJECTIONS TO MAGISTRATE JUDGE'S MEMORANDUM AND RECOMMENDATION

The Memorandum and Recommendation is an impermissible and unjustified expansion of the Sixth Amendment right to counsel. As explained below, this decision is out of line with binding precedent and unmoored from the record evidence in this case. As a result, the District Court Judges object to the findings, conclusions, and recommendations of the United States Magistrate Judge recommending that the Motion for Preliminary Injunction be granted.[1] Specifically, this Court should decline to adopt the portions of the Memorandum and Recommendation recommending issuance of a preliminary injunction on Booth's Sixth Amendment claim.

## Standard of Review

A preliminary injunction is "an extraordinary remedy never awarded as of right."[2] A mandatory preliminary injunction, such as the one sought here, seeks to

---

[1] The District Court Judges do not object to conclusions that Booth is unlikely to succeed on his due process and equal protection claims.

[2] *Benisek* v. *Lamone*, 138 S. Ct. 1942, 1943 (2018) (quoting *Winter* v. *Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).

1

alter the status quo prior to litigation rather than maintain it.[3] The Fifth Circuit has repeatedly held that such injunctions warrant an even higher standard than prohibitory injunctions.[4]

If a party timely objects to a Magistrate Judge's recommendations or findings, the Court must determine *de novo* any part of the objectionable portions of the recommendations or findings.[5] The Court may then accept, reject, or modify the recommendations or findings, in whole or in part.[6] The Court may also return the matter to the Magistrate Judge with instructions.[7]

## Arguments and Authorities

**A.   The Sixth Amendment does not include a right to counsel at initial magistration in Galveston.**

To begin, the Memorandum and Recommendation's Sixth Amendment conclusions are legally flawed and detached from the record evidence. The District Court Judges object accordingly.

---

[3] *See Justin Indus., Inc.* v. *Choctaw Sec., L.P.*, 920 F.2d 262, 268 (5th Cir. 1990); *Martinez* v. *Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976) ("Mandatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party"); *Exhibitors Poster Exch., Inc.* v. *Nat'l Screen Serv. Corp.*, 441 F.2d 560, 561 (5th Cir. 1971) (quoting *Miami Beach Fed. Sav. & Loan Ass'n* v. *Callander*, 256 F.2d 410, 415 (5th Cir. 1958)) ("[W]hen a plaintiff applies for a mandatory preliminary injunction, such relief 'should not be granted except in rare instances in which the facts and law are clearly in favor of the moving party'").
[4] *Id.*
[5] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).
[6] *Id.*
[7] *Id.*

2

1. **The Memorandum and Recommendation conflicts with *Rothgery*.**

In *Rothgery* v. *Gillespie Cty.*, the Supreme Court considered a Sixth Amendment challenge implicating the Texas magistration process.[8] *Rothgery* set out that "counsel must be appointed within a *reasonable time after* attachment," and acknowledged "that the presence of counsel at an article 15.17 hearing . . . may not be critical."[9] Significantly, *Rothgery* approved the well-established practice (followed in 43 States) of appointing counsel "before, at, or just after initial appearance."[10]

Justice Alito, joined by Chief Justice Roberts and Justice Scalia, agreed that Rothgery's right to counsel attached at the initial hearing, but emphasized that, "attachment signifies nothing more than the beginning of the defendant's prosecution. It does not mark the beginning of a substantive entitlement to counsel."[11] Although Justice Alito declined to address whether Rothgery's right was violated, he did elaborate on his understanding of the substantive guarantees of the right. According to Justice Alito, the right entitles a defendant to counsel "only as necessary to guarantee the defendant effective assistance at trial."[12] This guarantee entails a right to counsel at some critical stages prior to trial, but it does not entitle a defendant generally to counsel the very moment the right attaches.[13]

---

[8] 554 U.S. 191, 194-95 (2008).
[9] *Id.* at 212 (emphasis added).
[10] *Id.* at 204-05 (emphases added).
[11] *Id.* at 213-14.
[12] *Id.* at 217.
[13] *Id.*

Texas courts have long held that a 15.17 hearing is not a critical stage necessitating counsel.[14] Neither *Rothgery* nor federal courts interpreting *Rothgery* have altered that conclusion.[15] The Memorandum and Recommendation is the first court in Texas to hold otherwise. However, had it faithfully applied *Rothgery* to the current bail system in Galveston, it would not have reached its erroneous conclusion because these procedures, including the appointment of counsel within 12 hours, are clearly consistent with *Rothgery* and the "overwhelming majority of American jurisdictions."[16] In ruling otherwise, the Memorandum and Recommendation impermissibly extends *Rothgery* so that magistration now triggers attachment *and* includes a substantive entitlement to counsel at the triggering event—the exact result Justice Alito warned against.

### 2. Magistration in the current bail system is not a critical stage of prosecution.

The Memorandum and Recommendation also fails to acknowledge that the safeguards of the current bail system fatally undermine its critical stage and irreparable harm conclusions.

---

[14] *See, e.g., Green v. State*, 872 S.W.2d 717, 720-22 (Tex. Crim. App. 1994); *Francis v. State*, 909 S.W.2d 158, 165-66 (Tex. App.—Houston [14th Dist.] 1995, no pet.); *Parker v. State*, No. C14-92-00942-CR, 1994 WL 665185, at *5 (Tex. App.—Houston [14th Dist.] 1994, no pet.).

[15] *See Kennedy v. Bexar Cty.*, No. SA-16-CA-262- XR, 2016 WL 1715200, at *2 (W.D. Tex. Apr. 27, 2016) ("Nothing in Rothgery requires the appointment of counsel prior to the article 15.17 hearing in a Texas criminal proceeding or the physical presence of defense counsel during the article 15.17 hearing"); *Wingo v. Kaufman Cty.*, No. 3:09-CV-2457-P, 2010 WL 2307184, at *1 (N.D. Tex. June 4, 2010) (dismissing section 1983 lawsuit complaining about county's failure to provide appointed counsel at plaintiff's initial appearance, and citing *Rothgery*'s determination "that 'counsel must be appointed within a reasonable time after attachment'") (quoting *Rothgery*, 554 U.S. at 212)).

[16] *Rothgery*, 554 U.S. at 213.

4

During this simple and informal administrative proceeding in Galveston, an arrestee receives their statutory warnings, learns the charges, has bail set, and, at the conclusion, can request an attorney moving forward in the case. Nothing else occurs. There is no prosecutor to push back against[17] or witnesses to cross examine. No pleas to enter, affirmative defenses to raise, or motions to make. Any risk that an arrestee may not be able to make good arguments related to bail at this proceeding without counsel, is resolved by a prompt bail-review hearing or subsequent bail reduction writ with counsel.[18] And the probable cause determined is made solely based on the arrest affidavit, as a result there is no occasion for an arrestee to be a "champion" for their own release at this point. The absence of such an opportunity at this initial appearance makes little difference because an arrestee still has an absolute right to an examining trial with the assistance of counsel post-magistration.[19]

Under the current non-adversarial system in Galveston, an arrestee does not face the risk of irretrievably[20] losing anything at this proceeding or face the real possibility that its outcome will render trial a mere formality.[21] Because this magistration is nothing like the trial-like confrontations the Sixth Amendment is

---

[17] The District Court Judges point out the absence of a prosecutor to highlight the non-adversarial nature of the proceeding, not to advocate for the now defunct "prosecutorial awareness" standard at issue in *Rothgery*.
[18] In addition, arrestees that sit for a financial interview have this information considered before bail is set—mitigating the need for further argument on this point.
[19] TEX. CODE CRIM. P. art. 16.01.
[20] *Hamilton* v. *Ala.*, 368 U.S. 52, 54 (1961).
[21] *United States* v. *Wade*, 388 U.S. 218, 224 (1967).

5

concerned with, the Memorandum and Recommendation erred by concluding that it was a critical stage requiring counsel, and its holding cannot stand.

The Memorandum and Recommendation's reliance on cases from outside Texas does not change this result. Because criminal procedure varies widely between States, the critical stage analysis cannot be based on cross-jurisdictional generalizations and labels. The fact that a bail hearing in federal court, Louisiana, or Pennsylvania is a critical stage, does not dictate the same result here. A court must examine each factual scenario in context to determine if a critical stage exists. Considering this, the cited out-of-state cases add no value because they are easily distinguishable from the procedures used in Galveston.[22]

Instead of looking at the current procedures in Galveston or any facts in the record for that matter, the Memorandum and Recommendation imagines a doomsday scenario befalling a hypothetical defendant.[23] It imagines a defendant who is

---

[22] *See, e.g.*, *Higazy* v. *Templeton*, 505 F.3d 161, 172 (2nd Cir. 2007) (discussing federal adversarial bail hearing); *Ditch* v. *Grace*, 479 F.3d 249, 252-53 (3rd Cir. 2007) (discussing a Pennsylvania post-arraignment preliminary hearing that featured an in court identification of the accused, witnesses, and other substantive evidence); *Smith* v. *Lockhart*, 923 F.2d 1314, 1319 (8th Cir. 1991) (examining "a pre-trial hearing in which motions are made and ruled upon, and procedural and constitutional issues are considered. Defendants are allowed to change their plea. Any defenses or motions that could have been made are waived unless the party lacked the information to raise the issue") (internal citations omitted); *Caliste* v. *Cantrell*, 329 F. Supp. 3d 296, 314 (E.D. La. 2018) (considering Louisiana pretrial procedures in a situation in which the defendant did not contest the critical stage argument); *Gonzalez* v. *Comm'r of Corr.*, 68 A. 3d 624, 631-637 (Conn. 2013) (examining a Connecticut arraignment where a defendant must plead certain defenses and make certain requests or the opportunity is lost); *Hurrell-Harring* v. *State*, 930 N.E. 2d 217, 223 (N.Y. 2010) (considering New York arraignment in context of statute that guarantees counsel at such a hearing); *State* v. *Fann*, 571 A.2d 1023, 1030 (N.J. Super. Ct. 1990) (examination of New Jersey procedure by State trial court); *see also Hamilton*, 368 U.S. at 53 (considering an Alabama arraignment in a capital case where defenses must be raised and motions made or they are irretrievably lost); *Coleman* v. *Ala.*, 399 U.S. 1, 9 (1970) (examining Alabama preliminary hearings where witnesses are cross examined akin to an examining trial).

[23] Notably, Booth's Sixth Amendment claim was not the subject of the lengthy class certification and preliminary injunction hearing held in January 2019 because he failed to brief the issue or do discovery on it prior to the hearing.

6

unjustifiably held subject to a high bail amount and a defendant who makes spontaneous inculpatory statements.[24] Not only is there no evidence in the record these scenarios have ever played out under the current system, they seem unlikely.

For instance, the system provides multiple avenues for an arrestee to secure release via the lowest bail possible—financial interview, prompt bail-review, and bail reduction writ. These opportunities to reduce bail negate any risk of an alleged "anchoring effect" because magistrates, absent jurisdictional limits, are not bound by any prior bail decision. And as a result, the likelihood that an arrestee's bail is impermissibly high resulting in detention is slim to none—a fact acknowledged by the Memorandum and Recommendation's due process and equal protection holdings.

Likewise, it is unreasonable to assume that an arrestee will make inculpatory statements at their initial appearance because the magistrate expressly warns arrestees not to make such statements. There is no evidence that a magistrate's warning to remain silent is any less effective than the same warning from defense counsel. Any right can be voluntarily waived, and even Plaintiff's witness from Bexar County admitted defendants sometimes choose to speak in court, even with defense counsel present, and even after being advised not to speak. The availability of a motion to suppress in the underlying criminal case also negates any risk that a truly involuntary post-attachment statement made during a custodial interrogation, which is not the case here, can be used against an arrestee.

---

[24] Memorandum and Recommendation at 37-38.

With this lack of record evidence, the Memorandum and Recommendation is left to rely on a law review article by a special interest lawyer involved in bail reform litigation;[25] a law review article relating to pretrial release in Maryland; and an out of context statement by the Bexar County public defender related to mentally ill defendants.[26] This "evidence" however examines bail systems in general, not Galveston's current system; and for that reason, any findings about arrestees languishing in jail or the generalized benefit of counsel is unrelated to the system and procedural safeguards present in Galveston. This is not the type of "evidence" that justifies the creation of a new critical stage of prosecution for which counsel must be appointed.

At bottom, the Memorandum and Recommendation's holding that magistration is a critical stage and finding of irreparable harm is legally flawed, undercut by the safeguards in the current system, and untethered from the record. As a result, the District Court Judges object and respectfully request the Court decline adoption.

---

[25] *See* Profile of Charles Gerstein, available at https://www.law.georgetown.edu/faculty/charles-gerstein/ (last visited Aug. 18, 2019) ("Charlie Gerstein is a lawyer at Civil Rights Corps, a non-profit in Washington, DC, that fights injustice and inequality in the criminal system . . . [and] [h]e also serves as lead counsel in a class-action challenge to wealth-based pre-trial detention in Lafayette Parish, LA, *Little v. Frederick*, 17-CV-724 (W.D. La.), and served as lead counsel in a successful federal habeas challenge to wealth-based pre-trial detention"); Attorney Appearances, *Daves, et al.* v. *Dallas County, Texas, et al.*, 3:18-cv-00154-N (listing Civil Rights Corp and ACLU as plaintiffs' counsel); Attorney Appearances, *Willey* v. *Ewing*, 18-cv-00081 (representing Mr. Willey in his suit against a Galveston County Judge, Mr. Willey submitted declarations on behalf of Booth and Mr. Gerstein was involved in discovery in this very litigation).

[26] Memorandum and Recommendation at 25-26.

**B.     The District Court Judges are Texas officials, not county policymakers.**

The Memorandum and Recommendation also errors by ordering the appointment of counsel in the District Court Judges' "policymaking capacities" not "judicial capacities."[27] This ignores that "[t]he appointment of counsel for indigent defendants in criminal cases is a normal judicial function."[28] And therefore this Court lacks "authority to direct state courts or their judicial officers" as to this function.[29] What is more, under Texas law, "[a] local judge acting in his or her judicial capacity is not considered a local government official whose actions are attributable to the county."[30]

Setting this threshold flaw aside, the Memorandum and Recommendation ignores that state law drives the policymaker analysis. It glosses over that the District Court Judges are state officials, not county officials.[31] In lieu of engaging this head on, the Memorandum and Recommendation instead cites *ODonnell* as well as the previous ruling on the motion to dismiss.[32] Yet *ODonnell*'s holding that county court judges are policymakers in the context of bail has no applicability here. The relevant portion of *ODonnell* is based on Texas law explicitly establishing that the county "judges are 'county officers,' Tex. Const. art. V § 24, imbued with broad

---

[27] Memorandum and Recommendation at 43 (2).
[28] *Davis* v. *Tarrant Cty. Tex.*, 565 F.3d 214, 223-24 (5th Cir. 2009).
[29] *Richardson* v. *Gardner*, No. 3:18-cv-0065, 2018 WL 3416418, at *3 n.1 (S.D. Tex. July 13, 2018) (citing *Davis* and *LaBranche* v. *Becnel*, 559 F. App'x 290 (5th Cir. 2014)).
[30] *Davis*, 565 F.3d at 227 (citing *Krueger* v. *Reimer*, 66 F.3d 75, 77 (5th Cir. 1995) (citations omitted); *Clanton* v. *Harris Cty., Tex.*, 893 F.2d 757, 758 (5th Cir. 1990); *Hamill* v. *Wright*, 870 F.2d 1032, 1037 (5th Cir. 1989); *Clark* v. *Tarrant Cty.*, 798 F.2d 736, 744 (5th Cir. 1986).
[31] *Id.*
[32] Memorandum and Recommendation at 18.

9

authority to promulgate rules that will dictate postarrest policies consistent with the provisions of state law, Tex. Gov't Code § 75.403(f)."[33] No such provisions exist related to the District Court Judges in this action.

Also, reliance on the previous opinion related to the motion to dismiss is equally misplaced.[34] That opinion did not decide or even address the policymaker question in the context of the appointment of counsel—instead only considering the question in the context of bail. This is significant because the policymaker analysis is function-specific.[35] This previous decision related to bail is thus of no value when examining the appointment of counsel and does not control the outcome here.

Even if this ruling were somehow persuasive, it undermines the Memorandum and Recommendation's reliance on *ODonnell*. In it, the Court held, in no uncertain terms, that "*ODonnell III*'s holding, which relies upon Section 75.403(f), is not necessarily controlling" in this litigation.[36] It is fundamentally unfair for the Memorandum and Report to arbitrarily ignore this part of its previous ruling while crediting the other portions that support its desired outcome.

Additionally, the policymaker holding cannot stand because it upends state law. Under the Code of Criminal Procedure, the District Court Judges alone have the power to appoint attorneys.[37] There is no role for Galveston County or its commissioner's court in this area. By labeling both groups policymakers, the

---

[33] *ODonnell* v. *Harris Cty.*, 892 F.3d 147, 155 (5th Cir. 2018).
[34] Memorandum and Recommendation at 18-19.
[35] *See McMillian* v. *Monroe Cty.*, 520 U.S. 781, 786 (1997) ("[O]ur understanding of the actual function of a government official, in a particular area, will necessarily be dependent on the official's functions under relevant state law").
[36] *Booth* v. *Galveston Cty.*, 352 F. Supp. 3d 718, 743 (S.D. Tex. 2018).
[37] TEX. CODE CRIM. P. art. 1.051; 26.04.

10

Memorandum and Recommendation has created a role for the County in an area reserved exclusively for the District Court Judges—a scenario alien to state law. It is one thing to ignore state law, but another to irrevocably change it based on flawed methodology such as this.

And lastly, the statements in the Galveston County Indigent Defense Plan do not support this holding. First, the Memorandum and Recommendation relies on language in the plan that refers to duties of the County Court Judges. The plan is written and signed by both the District Court Judges and the County Court Judges, taking language specific to the County Judges as the District Court Judges directing that process is improper.

Second, the plan is a requirement under the Fair Defense Act and is approved by the Texas Indigent Defense Commission which *requires* certain language to be present to receive funding. When the District Court Judges attempted to address the language this Court previously found problematic, their indigent defense funds were threatened. Caught between Scylla and Charybdis, the District Court Judges could either reinsert the problematic language or lose indigent defense funding. The plan was never a command of authority by the District Court Judges, it is merely a document that allows the receipt of funding for indigent defense—the very thing Plaintiff wants. Punishing the District Court Judges for passing this plan is not only legally improper, it is simply wrong.

For these reasons, the District Court Judges object and request this Court reject the policymaker holding.

### C. This injunction will likely disadvantage criminal defendants and be costly.

In addition, the Memorandum and Recommendation assumes that providing counsel at an arrestee's initial appearance—which usually takes place within 12 hours of incarceration—will be easy. Yet it will take time to determine who wants an appointed attorney, who is entitled to one, and whether any conflicts of interest exist that would preclude an appointed attorney from representing a particular arrestee. Injecting lawyers into the initial hearing instead of waiting for the bail-review hearing that usually occurs within 12 hours of magistration, will lengthen every initial appearance. These delays will add up and many defendants will ultimately miss their first opportunity for magistrtion because they will not yet have counsel—they will then have to wait at least twelve more hours for their next chance to go home. This delay is a perverse result of this injunction.

Additionally, if the initial magistration held at 7 a.m. becomes too long, many lawyers and magistrates may cease agreeing to provide services at magistration and bail-review hearings because it will endanger their ability to attend morning docket that begins at 9 a.m. Missing morning docket will directly interfere with their ability to serve other clients. If this occurs, the number of willing lawyers will shrink and the price for appointments must increase. This cost is in addition to the cost of potentially adding extra prosecutorial staff; paying for the system and staff to determine indigency; and the County paying tremendous sums, like those paid by Harris or Bexar County, to support such a system.

In the event the Court adopts the Memorandum and Recommendation, the District Court Judges respectfully request that the effective date of any injunction be delayed 90 days to allow for the orderly implementation of these new procedures. To not allow such a grace period would risk plunging the current system into chaos.

### D.    The District Court Judges renew their evidentiary objections.

While the District Court Judges recognize that the rules of evidence are somewhat relaxed at this stage, this relaxed standard does not allow Booth to clog the record with inadmissible material in the hopes that the Court will grant extraordinary relief based on this "evidence"—which is exactly what occurred here. The District Court Judges therefore renew all their evidentiary objections raised in the preliminary injunction briefing and object to the portion of the Memorandum and Recommendation overruling those objections.[38]

### Conclusion

The District Court Judges respectfully object to, and request the Court decline to adopt, those portions of the Memorandum and Recommendation recommending issuance of a preliminary injunction.

---

[38] *See* ECF No. 235.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division

/s/ *Adam Arthur Biggs*
ADAM ARTHUR BIGGS
Attorney-in-Charge
State Bar No. 24077727 | So. Dist. ID: 2964087
ENRIQUE M. VARELA
State Bar No. 24043971 | So. Dist. ID: 597626
DOMINIQUE G. STAFFORD
State Bar No. 24079382 | So. Dist. ID: 3195055
Assistant Attorneys General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2120 | Fax (512) 370-0667
Adam.Biggs@oag.texas.gov
Enrique.Varela@oag.texas.gov
Dominique.Stafford@oag.texas.gov

FRANCESCA A. DI TROIA
Assistant Attorney General
State Bar No. 24097596 | So. Dist. ID: 3278381
Office of the Attorney General
Tort Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2080/ Fax (512) 370-9410
Francesca.DiTroia@oag.texas.gov

***Attorneys for Defendants Darring, Ellisor, Cox, Grady, Neves, and Robinson***

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2019, a true and correct copy of the foregoing document has been electronically filed with the Clerk of the Court using the electronic case filing system with the Court which automatically provided notice to all attorneys of record.

/s/ *Adam Arthur Biggs*
ADAM ARTHUR BIGGS
Assistant Attorney General