UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| Aaron Booth,<br>on behalf of himself and all others similarly situated,<br><br>                            Plaintiff,<br>     v.<br><br>Galveston County *et al.*,<br><br>                         Defendants. | Civil Action No. 18-cv-0104 |

**PLAINTIFF'S OBJECTIONS TO
MEMORANDUM AND RECOMMENDATION ON
PRELIMINARY INJUNCTION MOTIONS**

## TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDING ..................................................... 1

ISSUES TO BE RULED UPON ...................................................................... 1

SUMMARY OF ARGUMENT ........................................................................ 1

ARGUMENT .................................................................................................. 2

I.   The Memorandum Lacks Legal Analysis or Findings of Fact Concerning The County's Heavy Burden to Demonstrate Voluntary Cessation ......................... 2

    A.   The Memorandum Ignores This Court's Earlier Ruling That the County Could Not Meet Its Heavy Burden to Demonstrate Voluntary Cessation ...................................................................................... 4

    B.   The County Failed to Carry its Burden in the Face of Overwhelming Evidence That the Challenged Conduct Could Reasonably Recur ........ 5

II.   The Memorandum Applied the Wrong Standard to Mr. Booth's Substantive Due Process Argument and Failed to Consider Critical Evidence ................. 12

    A.   The Memorandum's Wrongful Disregard of Mr. Booth's Substantive Due Process Argument Was Clear Error ................................................. 13

    B.   The Memorandum Erroneously Failed to Engage in Mathews Balancing, Instead Incorrectly Relying on ODonnell Alone ................. 15

III.   The Memorandum's Failure to Recommend Adequate Injunctive Relief Was Clear Error ................................................................................................. 18

CONCLUSION .............................................................................................. 20

CERTIFICATE OF SERVICE ...................................................................... 22

## NATURE AND STAGE OF PROCEEDING

This lawsuit challenges Galveston County's two-tiered justice system, which imposes wealth-based pretrial detention on arrestees without providing a meaningful hearing or defense counsel. Following extensive briefing, multiple oral arguments, and testimony at a day-long evidentiary hearing, Magistrate Judge Edison has issued a Memorandum and Recommendation on Plaintiff Aaron Booth's classwide preliminary injunction motions. ECF No. 267 ("Mem."). The recommendation is to deny Mr. Booth's first preliminary injunction motion (regarding his wealth-based imprisonment and due process claims) (ECF No. 3-1), and to grant his second preliminary injunction motion (regarding his right to counsel claim) (ECF No. 205).

## ISSUES TO BE RULED UPON

Whether the Memorandum's reasons for denying Mr. Booth's first preliminary injunction motion were clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a). The Court must determine de novo any part of the Memorandum that has been properly objected to. Fed. R. Civ. P. 72(b)(3).

## SUMMARY OF ARGUMENT

The Memorandum's reasons for denying Mr. Booth's first preliminary injunction motion are, respectfully, contrary to law and clearly erroneous. The Memorandum treats Galveston County's post-filing revisions to its bail procedures as a permanent policy change without analyzing (or articulating the standard for) whether the County has met its "heavy burden" to demonstrate voluntary cessation of its plainly unconstitutional practices. *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1,* 551 U.S. 701, 719

1

(2007). The Memorandum also fails to address Mr. Booth's substantive due process argument and denies his procedural due process argument without articulating the applicable legal standard, based solely on a reading of *ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018), that is contrary to law. The Memorandum further ignores Mr. Booth's argument that, even if Galveston County met the standard for voluntary cessation, the revisions to its bail procedures fall short of *ODonnell*'s requirements. Finally, the Memorandum clearly errs insofar as it fails to recommend an injunction that fully remedies the Sixth Amendment violation and complies with Rule 65 of the Federal Rules of Civil Procedure.

## ARGUMENT

### I.     The Memorandum Lacks Legal Analysis or Findings of Fact Concerning The County's Heavy Burden to Demonstrate Voluntary Cessation

The Memorandum's findings of fact leave no doubt that Galveston County's bail system at the time Booth filed this action was unconstitutional. After a felony arrestee was taken into custody, the arresting officer prepared a preprinted bail order with a bail amount for each charge based on the District Attorney's bail schedule. Mem. at 7. "[T]he magistrate routinely adopted the bail amounts contained on the bail order" without "any financial information indicating an arrestee's ability or inability to make bail," meaning that "the arrestee might be held for weeks solely based on his inability to pay." *Id.* at 8. Thus, as a matter of "standard operating procedure," Galveston County automatically imposed unaffordable bail amounts "without meaningful consideration of other possible

alternatives, infring[ing] on both due process and equal protection requirements."
*ODonnell v. Harris Cty.,* 892 F.3d 147, 155, 157 (5th Cir. 2018).

The Memorandum nevertheless recommends denying Plaintiff's first preliminary injunction motion because the County changed some bail practices after Mr. Booth sought an injunction. Mem. at 15. Attempting to avoid an injunction by changing practices is known as "voluntary cessation," *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1,* 551 U.S. 701, 719 (2007), as the parties discussed at length in briefing and oral argument. Yet despite basing its recommendation entirely on changed practices, the Memorandum does not apply (or articulate) the legal standard for voluntary cessation: whether the County has met its "formidable burden" to demonstrate that it is "absolutely clear" that the conduct challenged at the outset of this case would not reasonably recur. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.,* 528 U.S. 167, 190 (2000); *see also Parents Involved in Cmty. Schs.,* 551 U.S. at 719 (holding that municipal government failed to meet "heavy burden" to show mootness). Nor does the Memorandum make any findings of fact concerning critical questions such as whether the changes are binding, how or by whom the changes were adopted, and whether relevant policymakers continue to defend Galveston's plainly unconstitutional practices at the time of filing. The Court should apply the proper legal standard for voluntary cessation and rule that Galveston County has not met its burden. *See generally* Pl.'s Proposed Findings of Fact ¶¶ 64–88, ECF No. 201.

A.    **The Memorandum Ignores This Court's Earlier Ruling That the County Could Not Meet Its Heavy Burden to Demonstrate Voluntary Cessation**

This Court has already considered and rejected Galveston County's voluntary cessation argument. MTD Mem.[1] at 11–13. Specifically, the Court ruled that (1) testimony indicated continuing "discretion as a magistrate to follow or not follow these [revised] procedures," (2) the Local Administrative Judge "does not know who proposed the purported new procedures document," (3) "the County continues to defend the bail system that was in place at the time of filing," and (4) the revised procedures were not "an accurate statement of the bail procedures in Galveston County as of August 8, 2018" and "the record is not altogether clear as to what actual changes have been made to the County's bail setting process." MTD Mem. at 11–13. As a result, the Court held that "the County cannot bear its heavy burden of proving that the complained of conduct will not recur in the future." *Id.* at 11.

The Memorandum erred by implicitly overruling this Court's prior decision on voluntary cessation without applying any legal standard, or making findings concerning why the Court's prior ruling should change. Specifically, the Memorandum failed to make any findings overturning the Court's prior ruling that (1) magistrates have discretion to disobey the revised bail procedures, leaving open the possibility that the "wrongful behavior could [] reasonably be expected to recur," *Friends of the Earth*, 528 U.S. at 189–90; (2) the County cannot identify any official source for the procedures, so

---

[1] Memorandum and Recommendation on Defendants' Motions to Dismiss, ECF No. 151 ("MTD Mem."), *adopted by* ECF No. 165.

4

they do not qualify as "formally announced changes to official governmental policy," *Yarls v. Bunton*, 905 F.3d 905, 911 (5th Cir. 2018); and (3) the County "vigorously defends the constitutionality" of the bail system that was in place at time of filing, which is inconsistent with voluntary cessation, *Parents Involved in Cmty. Schs.*, 551 U.S. at 719. The Memorandum also fails to make any findings concerning Plaintiff's evidence that the revised procedures are not fully implemented, stating summarily that "Booth has not carried the burden of persuasion" without discussing reasons why. Mem. at 16. It was clear error for the Memorandum to overrule the Court's prior voluntary cessation ruling without making findings on these critical points.

The Court should undertake a de novo review of the voluntary cessation question, and for the reasons below, hold that the County has not met its "heavy burden" to demonstrate that it is "absolutely clear" that its unconstitutional bail practices cannot reasonably be expected to recur. *Friends of the Earth*, 528 U.S. at 189–90.

## B. The County Failed to Carry its Burden in the Face of Overwhelming Evidence That the Challenged Conduct Could Reasonably Recur

Despite the opportunity to present additional evidence and testimony, the County failed to present the evidence the Court deemed necessary to meet the County's burden of establishing voluntary cessation, namely, (1) that the magistrates are bound by the new procedures, (2) that the new procedures were formally announced and adopted, (3) that the County admit that its prior bail system was unconstitutional, and (4) that the revised procedures have been consistently and fully implemented to cure the underlying constitutional violation. It was the County's burden to prove every one of these points,

yet the overwhelming weight of the evidence continues to show that the County cannot prove a single one.

### 1. The Magistrates Are Not Bound By the New Procedures

It remains uncontested that the Magistrates are not bound by the new procedures. The Magistrates themselves testified that the revised procedures are not binding. Magistrate Judge Baker testified at his deposition that the revised procedures are not an order to him and he is not required by law to follow them, nor has he been trained on them or even read them in full. Baker Tr. 87:20–89:4, ECF No. 185-11. As the Court previously observed, Magistrate Judge Foley testified at her deposition that she does not believe that "anybody is ordering me to follow [the new procedures]" and it is within one's "discretion as a magistrate to follow or not follow these procedures." MTD Mem. at 12. Judge Foley further testified at the evidentiary hearing: "I am required to set bond according to the laws of the State of Texas and the constitution and nobody else is going to tell me anything different . . . . Q: Including Galveston County, correct? A: Right." PI Hr'g Tr. 190:19–24, ECF No. 184.

County officials agree that magistrates are not bound by the revised procedures. The administrative head of the policymakers with actual authority to enact the procedures, Judge Lonnie Cox, testified that the felony judges have not codified or implemented the procedures in any way. *Id.* at 444:25–445:11. Judge Cox also testified that the revised procedures were not binding on him as a felony judge, and expressed the view that they are "a violation of the law." *Id.* at 447:10–25. County Judge Mark Henry testified to his view that the Commissioners' Court "could not force any magistrate to do

something that's a process," which is consistent with this Court's legal conclusion that

the district judges are the relevant county policymakers. *Id.* at 365:24–366:14. Judge

Henry further conceded that while the County hired new magistrate judges in the fall of

2018, the County did not make the procedures a condition of the magistrates'

employment. *Id.* at 366:17–21. The memorandum from the County's counsel that informs

the magistrates of the revised procedures characterizes them as advisory rather than

mandatory. Memo to Magistrates at 1–3, ECF No. 185-40 ("[P]lease observe . . . ," "You

might . . . ,"  "[Y]ou may find the following guidelines helpful . . . ," "It may be

preferable . . . ."). And at argument in this case, counsel for the County admitted that the

procedures are "suggested," not mandatory. Jan. 28, 2019 Arg. ("1st Arg.") Tr. at 100:11.

It is undisputed that the revised bail procedures are not binding, which leaves open the

possibility that the "wrongful behavior could [] reasonably be expected to recur," *Friends

of the Earth*, 528 U.S. at 189–90.

### 2.  The Revised Procedures are Not a Formally Announced Change to Official Policy

It remains uncontested that the revised bail procedures have not been formally

announced by the County or adopted in any way. Judge Foley testified at the evidentiary

hearing that, as a Galveston County magistrate, she learned of the revised procedures

through an email from the County's counsel in this litigation. Hr'g Tr. at 187:25–188:7.

She was unaware who else, other than the County's counsel, was involved with drafting

the document. *Id.* Both Judge Cox and the felony judges' counsel emphasized that the

felony judges—the policymakers with authority to officially adopt these procedures—

have taken no part in drafting or adopting them. *Id.* at 48:22–24, 428:24–429:6, 445:3–24. And the County Judge agreed with his counsel that the Commissioners' Court has not taken any steps to formally adopt these procedures. Hr'g Tr. 356, 365–66; 1st Arg. Tr. 99–101. There is simply no evidence in the record that these changes were formally announced or official.

The County's failure to issue these revised bail procedures as "formally announced changes to official governmental policy" means that the changes cannot be accorded a presumption of good faith. *Yarls*, 905 F.3d at 911 (5th Cir. 2018) (noting that the presumption applied because both parties agreed that the challenged practice had ended, and the defendants conceded that the challenged practice was unconstitutional); *Sossamon v. Texas*, 560 F.3d 316, 325 (5th Cir. 2009) (holding that presumption applied where relevant policymaker officially rescinded the challenged policy statewide). There is no basis for disturbing this Court's previous finding that the absence of formal announcement of the revised bail procedures weighs against voluntary cessation. MTD Mem. at 12 (noting that Judge Cox "does not know who proposed the purported new procedures document").

### 3. The County and its Policymakers Continue to Defend the Prior Unconstitutional System

It remains uncontested that the County and its policymakers continue to defend the unconstitutional bail system under which Mr. Booth was jailed. Hr'g Tr. 38:22–39:1 ("The Court: [T]he process that was in place before the lawsuit was filed, did that suffer from any constitutional problems? Mr. Nixon: In my opinion, I don't believe it did."),

40:3–10 ("The Court: [H]ow Mr. Booth was treated, you believe that under *O'Donnell* that system that was in place was constitutionally permissible . . . ? Mr. Nixon: That's correct because Mr. Booth—Mr. Booth had an individualized bail hearing."), 41:10–11 (Mr. Nixon: "I don't believe there was a constitutional infirmity in that process."), 448:1–449:6 (Judge Cox agreeing that there were "no constitutional defects whatsoever" in the prior system, and he "had not seen evidence in twenty-five years of any defendant's constitutional rights being denied in Galveston County"). There is no evidence that the felony judges concede any problem with the prior system. To the contrary, there is considerable evidence that the felony judges would return to the old system given the chance, in light of their distaste for outside "meddling"—especially from the Commissioners' Court. Judge Henry testified that he created a Coordinating Council to help manage the county's jail population, Hr'g Tr. 359:5–8, and that the first meeting was held *after the lawsuit was filed* in part because the "felony judges refused to answer . . . questions, and when they did agree to a date, they refused to show up." Hr'g Tr. 361:13–22. The felony judges still refuse to attend stakeholder meetings, *id.* at 362:18–20, and they were resistant to "any changes … in which arrestees are evaluated for qualifications for personal bond." *Id.* at 368:25–369:11. Judge Cox wrote an op-ed in the newspaper complaining of Commissioners' Court "meddling." *Id.* at 370:1–7. The "open and notoriously adverse" relationship between the felony judges and the Commissioners' Court even led Judge Cox to interfere with arrestees' release from jail in order to spite the Commissioners' Court. *Id.* at 371:2–373:2, 377:21–25.

9

Refusal to acknowledge unconstitutional practices weighs heavily against any argument on voluntary cessation. *Parents Involved in Cmty. Schs.*, 551 U.S. at 719 ("[T]he district vigorously defends the constitutionality of its [challenged] program . . . ."); *Donovan v. Cunningham*, 716 F. 2d 1455, 1461–1462 (5th Cir. 1983) (noting "appellees' continuing insistence that their discontinued activities were legal"). This refusal leaves no room for disturbing this Court's prior ruling that "the County continues to defend the bail system that was in place at the time of the filing of the lawsuit." MTD Mem. at 12. Combined with ample evidence that the County's policymakers are motivated to "resume using" the challenged practice, *Parents Involved in Cmty. Schs.*, 551 U.S. at 719, the County's continued defense of its prior bail practices weighs strongly against a finding of voluntary cessation.

### 4. The County Has Not Implemented the New Procedures Uniformly and Consistently to Cure the Constitutional Violation

Finally, the overwhelming evidence establishes that the revised bail procedures are not implemented uniformly or consistently in a manner that cures the underlying constitutional violation, and instead magistrates continue to adopt bail amounts set by the District Attorney in much the same manner as they did before this case was filed. *See generally* Pl's Proposed Findings ¶¶ 67–88. The central deficiencies with implementation of the revised procedures are outlined below.

First, magistration is conducted in a near-identical manner. Most importantly, the magistrates do not ask arrestees if they can afford their assigned bond amounts at magistration. Hr'g Tr. at 392:9–12. Magistrate Judge Foley, *id.* at 189:20–190:8, and

10

Hindman, *id.* at 412:2–5, both agreed that they do not follow the script in the procedures; Judge Foley was "comfortable doing the magistrations the way [she'd] done it previously." *Id.* at 190:1–3. *Accord* Pl.'s Proposed Findings ¶ 82. Of course, the way magistration was conducted previously was unconstitutional.

Second, and in violation of *ODonnell*, the County does not conduct pre-magistration financial interviews and "explain to arrestees the nature and significance of the [financial] verification process." 892 F.3d at 164. Evidence outlined in detail in Plaintiff's prior briefing, *see generally* Pl.'s Proposed Findings ¶ 81; Pl.'s Supp. Letter at 4–5, indicates that financial interviews are not consistently conducted, and when they are, County employees do not explain to arrestees the implication of refusing the financial interview.

Third, also in violation of *ODonnell*, and most importantly, many arrestees who cannot afford bail are categorically excluded from the bail review process without any means for requesting a bail review hearing. A County employee gave unrebutted testimony that if a person overestimates how much they can pay, and that number is equal to or above their cost of release, they would not get a bail review hearing—even if they remained in jail under secured bail ordered at magistration. Hr'g Tr. at 321–332. Magistrate Judge Hindman agreed. Hr'g Tr. at 421:11–14. The County also fails to provide bail review hearings to other class members, such as those who were initially magistrated in other jails, those who were arrested under a warrant with an associated bond amount, or those who have any sort of medical issue preventing their attendance at the first bail review after their magistration. *See generally* Pl.'s Proposed Findings ¶ 88;

Pl.'s Supp. Letter at 5–6. Class members who do not receive a bail review hearing are detained without any meaningful consideration of alternatives to wealth-based detention, in violation of *ODonnell*. There is thus ample evidence that the County's implementation of the revised bail procedures fails to cure the underlying constitutional violation. Accordingly, the Court should overrule the Memorandum's summary rejection of Plaintiff's evidence that the revised bail procedures have not been implemented in a manner that is adequate to cure the underlying constitutional violation.

For the reasons stated above, consistent with its prior ruling, the Court should hold that the County has not met its heavy burden to demonstrate voluntary cessation, enter findings supporting municipal liability for the County's bail system at the time of filing, *see generally* Pl.'s Proposed Findings ¶¶ 45–63, and a preliminary injunction is warranted to protect class members from recurrence of the County's unconstitutional practices.

## II. The Memorandum Applied the Wrong Standard to Mr. Booth's Substantive Due Process Argument and Failed to Consider Critical Evidence

Mr. Booth seeks to enforce constitutional requirements for deprivation of his federal substantive due process right to pretrial liberty. The Memorandum conflates this liberty interest with the liberty interest at issue in *ODonnell*, which was a separate right to "be bailable by sufficient sureties" protected by the Texas Constitution. The Memorandum also erred by failing to address substantial evidence that, even under the *ODonnell* standard, Galveston County's revised bail procedures are inadequate.

**A.    The Memorandum's Wrongful Disregard of Mr. Booth's Substantive Due Process Argument Was Clear Error**

It was clear error for the Memorandum to disregard Mr. Booth's substantive due process argument that a pretrial detention order requires *both* a substantive finding of necessity *and* additional procedural protections. The Memorandum ignores this argument and does not engage in any substantive due process analysis, instead observing in a footnote that "Booth is sufficiently clear that his argument is procedural in nature" and selectively quoting a footnote from the preliminary injunction brief. Mem. at 16 n.6. But Mr. Booth argued extensively that he was raising a substantive due process claim, and that in addition to procedural protections, the Constitution requires substantive findings meeting strict scrutiny in order to justify pretrial detention.[2]

---

[2] Pl.'s Mot. for Preliminary Injunction ("PI Brief") at 19, ECF No. 3-1 ("Pretrial liberty is a fundamental right . . . . [A]s such, to deprive arrestees of their right to pretrial liberty . . . Galveston County must satisfy strict scrutiny."), 42 (seeking "findings . . . that secured money bail in the amount set is the least restrictive means of achieving the government's interest in mitigating the arrestee's risk of flight or danger to the community"); Pl.'s Omnibus Opp. to Mots. to Dismiss ("MTD Opp.") at 22, ECF No. 11  ("Plaintiff also contests the County's failure to make the substantive findings and to provide the procedural protections necessary before . . . order[ing] pretrial detention. This claim is premised on the fundamental right to pretrial liberty. The government cannot infringe on a fundamental right absent a substantive finding, required by federal law and subject to heightened scrutiny, that detention is necessary.") (citations omitted)); Pl.'s Reply in Support of Preliminary Injunction ("PI Reply") at 8–9, ECF No. 120 ("These [revised] procedures also do not provide the substantive and procedural protections necessary to safeguard the fundamental right . . . to pretrial liberty. . . . [T]hese rights prevent Defendants from ordering unaffordable bail amounts unless they . . . make specific findings on the record that . . . detention is necessary because alternative release conditions are insufficient."), Pl.'s Supp. Letter at 2–3, ECF No. 174 ("[T]o deprive an arrestee of her fundamental right to liberty, the magistrate must make a finding that jail is necessary to either protect someone from an articulable threat of danger, or to reasonably assure the arrestee's appearance in court. . . . [Determining required substantive findings is] distinct from deciding what procedural protections are necessary to protect that right. Procedural protections are intended to ensure that the magistrate's substantive finding is accurate." (citations and quotation marks omitted)); 1st Arg. Tr. at 34:16–18 ("The [bail] review procedures are also inadequate because they don't set any standard for findings that are necessary to justify pretrial detention."), 35:9–15 ("[I]n order to determine whether deprivation of a fundamental right is constitutional, a judge is required to assess whether or not the deprivation is [narrowly] tailored to a compelling state interest. Without making those findings, the magistrates in Galveston County aren't actually determining whether deprivation of pretrial liberty is constitutional."), 38:5–9 ("[W]ithout a . . . substantive standard for finding the pretrial detention as necessary . . . , [t]he Court is going to see findings like this, which are just inadequate to deprive someone of their fundamental right [to] liberty."); Pl.'s Proposed Findings ¶¶ 82–84.

Mr. Booth's claim is straightforward. It is uncontested that Galveston County's practices deprive class members of their pretrial liberty, which is a substantive due process claim about a fundamental liberty interest protected by the federal Constitution. *Salerno*, 481 U.S. at 746–47, 750–51 (1987). Such fundamental liberty interests can be infringed upon by the government only if the deprivation is "narrowly tailored to serve a compelling state interest." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993)); *see also Washington v. Harper*, 494 U.S. 210, 220 (1990) (quoting *Mills v. Rogers*, 457 U.S. 291, 299 (1982)). Depriving an arrestee of her fundamental right to pretrial liberty thus requires a substantive finding that jailing her is necessary to achieve the compelling government interests in pretrial detention: either to protect someone from an "articulable threat" of danger, or to reasonably assure her appearance in court. *Salerno*, 481 U.S. at 748–51 (permitting pretrial detention that "narrowly focuses" on "compelling" government interest); *see Reno v. Flores*, 507 U.S. 292, 302 (1993) (interpreting and applying Salerno as requiring strict scrutiny); *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 780–81 (9th Cir. 2014) (en banc) (recognizing pretrial freedom as "fundamental liberty interest," and applying strict scrutiny). These findings are required because determination of the "contours of the substantive right"— whether the government can legally deprive the arrestee of her liberty—"involves a definition of th[e] protected constitutional interest, as well as identification of the conditions under which competing state interests might outweigh it." *Harper*, 494 U.S. at 220. Without a substantive finding that pretrial detention is narrowly tailored to the state's competing interests in safety or court appearance, there has been no "identification

of conditions under which competing state interests outweigh" the arrestee's interest in pretrial liberty, and pretrial detention cannot satisfy strict scrutiny. *Id.*

For these reasons, which are exhaustively outlined in Mr. Booth's earlier briefing,[3] the Court should grant the relief sought in Plaintiff's first preliminary injunction motion.

### B. The Memorandum Erroneously Failed to Engage in *Mathews* Balancing, Instead Incorrectly Relying on *ODonnell* Alone

Because Mr. Booth also seeks procedural protections for deprivation of his federal substantive due process right to pretrial liberty, the Court is required to apply the balancing test articulated in *Mathews v. Eldridge*, which the Memorandum completely fails to do—or even mention. The first step in *Mathews* balancing is to identify "the private interest that will be affected by the official action," and to weigh that interest, together with the "probable value . . . of additional or substitute procedural safeguards," against the resulting burden to the government. 424 U.S. 319, 335 (1976).

While failing to articulate or apply the *Mathews* test, the Memorandum correctly observes that Mr. Booth seeks procedural protections, and that the first step in that analysis is identifying the private interest at stake. Mem. at 16. But the Memorandum fails to take that first, essential step, because it does not acknowledge Mr. Booth's clear argument that the "private interest" he asserts is his federal substantive due process right to pretrial liberty. *Supra* n.2. This interest is distinct from the interest analyzed in

---

[3] PI Brief at 17–23; MTD Opp. at 22–25; PI Reply at 8–9; Pl.'s Supp. Letter at 2–3; 1st Arg. Tr. 34–35, 38; Pl.'s Proposed Findings ¶¶ 82–84.

*ODonnell.* For that reason, the Memorandum's reliance on *ODonnell* alone, without conducting any independent analysis (or even citing any other case), was clear error.

The Memorandum states that *ODonnell* was "guided by the Constitution, as opposed to state law," and treats that observation as if it were dispositive of Mr. Booth's claim. Mem. at 17. Of course, *ODonnell* was "guided by the Constitution"—but *ODonnell* asked what procedures the Constitution requires for deprivation of a liberty interest created under "the law of Texas." 892 F.3d at 157. This case asks what procedures the Constitution requires for deprivation of his liberty interest arising under "the Due Process Clause itself." *Id.* ("Liberty interests protected by the due process clause can arise from two sources, the Due Process Clause itself and the laws of the States. Here, our focus is the law of Texas, which has acknowledged the two-fold, conflicting purpose of bail. This tension defines the protected liberty interest at issue here.") (citation and quotation marks omitted); *see also id.* at 157 (analyzing "liberty interest created by state law"), 158 ("The [Texas] Constitution creates a right to bail on 'sufficient sureties,'") *id.* (analyzing "state-made 'liberty interest,'" determining "Texas state law creates a right to bail," and concluding "[h]aving found a state-created interest, we turn now to whether the procedures in place adequately protect that interest"), 166 (ordering "timely protection for the state-created liberty interest in being bailable by sufficient sureties"). The private interest at issue in *ODonnell* was a liberty interest under the Texas Constitution. This case does not raise such a claim. It was clear error for the Memorandum to rely on *ODonnell* alone to resolve the procedural due process claim in this case.

Instead of relying on *ODonnell* alone, the Court should look to extensive Supreme Court caselaw undertaking *Mathews* balancing for cases, like Mr. Booth's, concerning deprivation of the federal substantive due process right to physical liberty. Mr. Booth outlined this argument in his opening brief, and Defendants have not meaningfully rebutted it in any way. PI Brief at 23–30. To summarize, all three *Mathews* factors weigh in Mr. Booth's favor. The private interest at stake—the federal substantive due process right to pretrial liberty—is extraordinarily high. *Salerno*, 481 U.S. at 749–51; *Stack v. Boyle*, 342 U.S. 1, 4 (1952); *Rainwater*, 572 F.2d at 1056–57. The risk of wrongfully imposing pretrial detention at magistration is high—by the County's own measure, even under the revised bail procedures, 90% of bail review hearings result in release. *See generally* Pl.'s Proposed Findings ¶¶ 87, 105 & n.206. When physical liberty is at stake, the Supreme Court has repeatedly held that the procedural protections outlined in Mr. Booth's opening brief—advance written notice, a prompt hearing, an adversarial hearing, reasoned written findings of necessity by clear and convincing evidence—are essential. PI Brief at 23–29.

On the other side of the balance, there are no government interests warranting departure from these Supreme Court precedents. The County went to great lengths at the evidentiary hearing to demonstrate that, after this litigation was filed, it began providing most of these protections at a hearing within 24 hours of arrest. *See generally* Pl.'s Proposed Findings ¶¶ 83, 87 & nn. 196–97, 207–08; *see also id.* ¶ 87 (discussing reasons why the two-step bail review process and resulting delay is not justified under *Mathews* balancing), Pl.'s Supp. Letter at 3–4 (same). The County also agrees that it is more costly

to jail people than to give them adequate hearings that result in their release. *Id.* ¶ 83 & n.197. And aside from the economic cost of wrongful pretrial detention, the County has an independent interest in ensuring that County residents maintain a "normal and useful life within the law" and that they are treated with "basic fairness." *Morrissey*, 408 U.S. at 484. Plaintiff also presented ample expert evidence that automatic detention under secured bail pending a bail review hearing does not further—and in fact undermines—the County's interest in ensuring appearance in court and protecting the community. *Id.* ¶¶ 30–44. Notably, and distinct from the findings in *ODonnell*, Plaintiff demonstrated that this effect is detectible within 24 hours of arrest. *Id.* ¶ 40. The procedural protections Plaintiff seeks in this case more than satisfy the *Mathews* balancing test—they are a win-win.

## III.    The Memorandum's Failure to Recommend Adequate Injunctive Relief Was Clear Error

The Memorandum recommends granting Plaintiff's second preliminary injunction motion without any reporting requirement. Failing to provide a reporting requirement in the preliminary injunction will prevent Plaintiff and the Court from ensuring that the County honors arrestees' constitutional right to counsel at initial bail hearings. Neither the Court nor the Plaintiff has access to the information necessary to confirm the County's compliance with the recommended injunctive relief. The County, on the other hand, gathers and records the requested data as a matter of course. In similar cases, recognizing the difficulties of monitoring closed institutions like jails and prisons, other courts have ordered administrators to report sufficient data to ensure their compliance.

*See, e.g.*, *ODonnell*, 892 F.3d at 166 (proposing model injunction requiring that Harris County submit a weekly report of misdemeanor arrestees for whom a hearing and individual assessment had not been held within 48-hours of arrest); *ODonnell v. Harris Cnty.*, 321 F. Supp. 3d 763, 772 (S.D. Tex. 2018) (adopting reporting requirements); *Smith v. Sullivan*, 611 F.2d 1039, 1044 (5th Cir. 1980) (finding district court order requiring defendants submit weekly reports on conditions at El Paso County Jail was appropriate).

The need for compliance reports is particularly acute in this case because the Memorandum recognizes the potential compliance issues with the recommended injunction, noting that Plaintiff can later ask the Court to revise the injunction if it were discovered that the County is "taking affirmative steps to frustrate a meaningful attorney-client relationship at the initial bail hearings." Mem. at 42. The Memorandum nonetheless recommends no reporting requirements at all, finding that the sum of the requested reporting was too burdensome on the County. *Id.* at 43. But the requested reporting included the mere provision of data that the County already collects and maintains, including the provision of the date and time of appointment of counsel and the date and time of the initial hearing. Plaintiff and the Court would have to review each arrestees' individual public records to aggregate part of that data, whereas the County is likely able to provide that data with no more burden than that of generating a report. Without *at least this* information—time and date of appointment of counsel and of the initial bail hearing—it will be impossible for Plaintiff or the Court to know whether arrestees have been given any attorney-client relationship at all, much less the meaningful

19

attorney-client relationship the magistrate recommends this Court order. Without any reporting, compliance with the recommended injunctive relief to provide constitutionally required counsel to indigent defendants at the critical stage of bail hearings will be rendered unreviewable.

Thus, the value of monitoring Defendants' compliance far outweighs the minor administrative burden of providing Plaintiff with basic data on counsel assignments and initial hearings.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his preliminary injunction motions and enter his proposed injunction.

Respectfully Submitted,

 */s/ Trisha Trigilio*
**Trisha Trigilio**, *attorney-in-charge*
Texas Bar No. 24075179
S.D. Tex. Bar No. 2461809
ttrigilio@aclutx.org
**Adriana Piñon**
Texas Bar No. 24089768
S.D. Tex. Bar. No. 1829959
apinon@aclutx.org
**Andre Segura**, *admitted pro hac vice*
Texas Bar No. 24107112
asegura@aclutx.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF TEXAS
5225 Katy Freeway, Suite 350
Houston, Texas 77007
Tel: 713-942-8146

  /s/ Brandon J. Buskey
**Brandon J. Buskey,** *admitted pro hac vice*
Alabama Bar No. ASB-2753-A50B
bbuskey@aclu.org
**Twyla Carter**
Washington Bar No. 39405
tcarter@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
CRIMINAL LAW REFORM PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-284-7364
Fax: 212-549-2654

  /s/Christopher M. Odell
**Christopher M. Odell**
Texas Bar No. 24037205
S. D. Tex. Bar No. 33677
christopher.odell@arnoldporter.com
**Hannah Sibiski**
Texas Bar No. 24041373
S.D. Tex. Bar No. 559957
hannah.sibiski@arnoldporter.com
**Andrew D. Bergman**
Texas Bar No. 24101507
S.D. Tex. Bar No. 3169886
andrew.bergman@arnoldporter.com
**Joshua Wayne McCollum**
Texas Bar No. 24106271
S.D. Tex. Bar No. 3202958
josh.mccollum@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Tel: 713-576-2400
Fax: 713-576-2499

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that I filed this motion via the ECF system, which serves this motion on all counsel of record.

/s/ Trisha Trigilio
**Trisha Trigilio** (Attorney-in-Charge)
Texas Bar No. 24075179
S.D. Tex. Bar No. 2461809
ttrigilio@aclutx.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF TEXAS
5225 Katy Freeway, Suite 350
Houston, TX 77007
Tel: 713-942-8146
Fax: 713-942-8966