UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

Aaron Booth,
on behalf of himself and all others similarly
situated,

                                    Plaintiff,

          v.

Galveston County *et al.*,

                                    Defendants.

Civil Action No. 18-cv-0104

**PLAINTIFF'S RESPONSE TO
DEFENDANTS' OBJECTIONS TO
MEMORANDUM AND RECOMMENDATION ON
PRELIMINARY INJUNCTION MOTIONS**

# TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDING ..................................................... 1

ISSUES TO BE RULED UPON ....................................................................... 1

SUMMARY OF ARGUMENT ......................................................................... 2

ARGUMENT ................................................................................................... 2

I.     The Court Should Disregard Objections That Are Improperly Raised .......... 2

II.    The Court Already Ruled That the Felony Judges Are Final County
       Policymakers .................................................................................................. 4

       A.     Adoption of the Indigent Defense Plan Is an Administrative, Rather than
              Judicial Act ........................................................................................... 5

       B.     The Felony Judges are Policymakers for Galveston County ...................... 10

III.   The Court Already Ruled That the Sixth Amendment Protects a Right to
       Counsel at Initial Bail Hearings ................................................................... 13

       A.     The Court's Ruling that a Bail Hearing is a Critical Stage is Law of the
              Case ...................................................................................................... 14

       B.     Judge Edison Correctly Determined That Initial Bail Hearings are a
              Critical Stage of Prosecution ................................................................ 14

IV.    Judge Edison Correctly Determined That the Evidence Merits a Preliminary
       Injunction Enforcing the Right to Counsel ................................................... 20

       A.     Judge Edison's Recommendation Will Not Harm Class Members ........... 20

       B.     Judge Edison's Recommendation Correctly Identifies the Substantial
              Threat of Irreparable Harm Posed By Requiring Arrestees to Appear Pro Se
              at Initial Bail Hearings ........................................................................ 21

       C.     Judge Edison's Recommendation Is Tailored to the Sixth Amendment
              Violation ............................................................................................... 22

CONCLUSION .............................................................................................. 24

CERTIFICATE OF SERVICE ....................................................................... 26

## NATURE AND STAGE OF PROCEEDING

This lawsuit challenges Galveston County's two-tiered justice system, which imposes wealth-based pretrial detention on arrestees without providing a meaningful hearing or defense counsel. Following extensive briefing, multiple oral arguments, and testimony at a daylong evidentiary hearing, Magistrate Judge Edison has issued a Memorandum and Recommendation on Plaintiff Aaron Booth's preliminary injunction motions. ("Mem."), ECF No. 267. The recommendation is to deny Mr. Booth's first preliminary injunction motion (regarding his wealth-based imprisonment and due process claims), ECF No. 3-1, and to grant his second preliminary injunction motion (regarding his right to counsel claim), ECF No. 205. This brief responds to objections to the recommendation filed by the County ("County Obj."), ECF No. 272, the Felony Judges ("FJ Obj."), ECF No. 273, and the District Attorney ("DA Obj."), ECF No. 274.

## ISSUES TO BE RULED UPON

Whether the Memorandum's reasons for granting Mr. Booth's second preliminary injunction motion were clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a).

## SUMMARY OF ARGUMENT

Judge Edison's recommendation to grant the second preliminary injunction motion is correct and largely premised on legal questions this Court has already decided. The Court has already ruled that an initial bail hearing is a critical stage of prosecution, and that the Felony Judges are final policymakers for post-arrest policies in Galveston County. Despite these rulings, the Felony Judges refuse to provide counsel at initial bail

hearings as required by the Sixth Amendment. Mr. Booth has demonstrated a high likelihood of success on the merits of his Sixth Amendment claim.

Judge Edison correctly determined that Mr. Booth has satisfied the remaining requirements for preliminary injunctive relief. Irreparable harm is plain: among other harms, an arrestee forced to represent herself at an initial bail hearing is far more likely to be jailed pretrial than one who has counsel. The harm of being locked in jail outweighs any potential harm to the Defendants, because the County is willing to pay to provide counsel. And, as is true for any constitutional right, protecting arrestee's Sixth Amendment rights is in the public interest.

Finally, the Court should disregard objections that are not properly raised. The County was unopposed to Mr. Booth's second preliminary injunction motion, thus waiving its right to object on any grounds. The Felony Judges raise a new argument contesting their status as policymakers, which the Court should disregard because they were not raised in the briefing before Judge Edison. And the District Attorney has no basis to object because he is explicitly excluded from Judge Edison's recommendation.

## ARGUMENT

## I.   The Court Should Disregard Objections That Are Improperly Raised

The County and the Felony Judges raise improper objections that should be disregarded. The County did not oppose Mr. Booth's second preliminary injunction motion before Judge Edison, thus waiving all objections to his recommendation. As for the Felony Judges, the sole policymaker argument they made in their briefing before Judge Edison was that they "cannot control the magistrates or bond pre-indictment or

writ of habeas corpus." Felony Judges' Opp. to Pl.'s Second Prelim. Inj. Mot. at 10, ECF No. 234. While the Felony Judges correctly observed that final policymakers are determined by state law, *nowhere* in their opposition brief did they argue that adoption of the Galveston County Indigent Defense Plan is judicial conduct, or that adoption of the plan is state action (as opposed to local action) under *McMillian v. Alabama*, 520 U.S. 781, 785 (1997). *See id.* at 9–10.

It is black-letter law that "a party who objects to the magistrate judge's report waives legal arguments not made in the first instance before the magistrate judge." *Freeman v. County of Bexar*, 142 F.3d 848, 851 (5th Cir. 1998) (citing *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994), *cert denied*, 513 U.S. 1163 (1995)). A party "'has a duty to put its best foot forward' before the Magistrate Judge—i.e., 'to spell out its arguments squarely and distinctly'—and, accordingly, that a party's entitlement to de novo review before the district court upon filing objections to the Report and Recommendation of the Magistrate Judge does not entitle it to raise issues at that stage that were not adequately presented to a Magistrate Judge." *Cupit*, 28 F.3d at 535, n.5 (quoting *Paterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-991 (1st Cir. 1988)).

The County and the Felony Judges violated their duty to raise the arguments in their objections at the appropriate time, when Judge Edison had a chance to address them. *See Cupit*, 28 F.3d at 535, n.5 (citations omitted). They are not entitled to submit new objections for the first time before this Court. The Court should disregard the County's objections in their entirety, and it should disregard the Felony Judges' new arguments

3

about judicial conduct under *Davis v. Tarrant County* and state action under *McMillian v. Alabama*.

The Court should also disregard the District Attorney's objections. Judge Edison's recommendation explicitly excludes the District Attorney from the recommended scope of relief.

## II.   The Court Already Ruled That the Felony Judges Are Final County Policymakers

The Court has ruled as a matter of law that the Felony Judges are Galveston County policymakers for post-arrest practices. Memorandum & Recommendation on Mots. to Dismiss ("MTD Mem.") at 38–39, ECF No. 151. That ruling governs this case under the well-settled law of the case doctrine. *See generally* Wright & Miller, 18B Fed. Prac. & Proc. Juris. 2d § 4478–4478.1.

"[W]hen a court decides upon a rule of law, that decision should continue to govern the issues in subsequent stages of the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16 (1988). The doctrine creates a "strong presumption of finality" in order to advance the "sound public policy that litigation should come to an end." *United States v. Lawrence*, 179 F.3d 343, 351 (5th Cir. 1999) (quoting *United States v. Mendez,* 102 F.3d 126, 131 (5th Cir. 1996)). A party overcomes the presumption of finality if the Court becomes "convinced that its prior decision is clearly erroneous and would work a manifest injustice." *Pepper v. United States*, 562 U.S. 476, 506–07 (2011) (quoting *Arizona v California,* 460 U.S. 605, 618 (1983).

The County and Felony Judges object to Judge Edison's recommendation that the Felony Judges are final county policymakers when they adopt the Galveston County Indigent Defense Plan. County Obj. at 9–18; DA Obj. at 9–11. Judge Edison's recommendation on this point cited directly to this Court's prior ruling. Mem. at 18 (citing *Booth v. Galveston Cnty.*, 352 F. Supp. 3d 718, 744 (S.D. Tex. 2019). Contrary to the Felony Judges' argument, this ruling explicitly held that the Felony Judges' power to adopt the Indigent Defense Plan is "that which they claim to lack authority to do: promulgating rules dictating post-arrest policies." *Booth,* 352 F. Supp. 3d at 744. Defendants have not carried their burden to overcome the presumption of finality accorded to this Court's prior ruling.

On this basis alone, Judge Edison correctly recommended enjoining the County. But even if the Court considered these arguments, as explained below, the Court should still hold that adoption of the Galveston County Indigent Defense Plan is a local administrative function. For the same reasons outlined in the Court's initial ruling, Judge Edison properly identified the Felony Judges as county policymakers with respect to the provision of counsel at bail hearings. Mem. at 36-39.

### A.   Adoption of the Indigent Defense Plan Is an Administrative, Rather than Judicial Act

The County and Felony Judges argue that the Felony Judges' adoption of the Indigent Defense Plan is judicial conduct. Their argument is premised entirely on a misreading of *Davis v. Tarrant County,* 565 F.3d 214 (5th Cir. 2009). In *Davis*, the Fifth

Circuit has held that a district court is "required to consider" four factors to determine whether a judge's actions are administrative or judicial:

> (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity.

*Davis,* 565 F.3d at 222.

Here, the act at issue is rulemaking in the form of the Indigent Defense Plan. Tex. Code Crim. Proc. Art. 26.04(a) (requiring felony judges to adopt an indigent defense plan "in each county, by local rule"); Tex. Gov't Code § 74.093(a) (granting felony judges power to adopt "local rules of administration"); 2016 Galveston County Indigent Defense Plan at 26, Ex. J, ECF No. 3-11 (describing "standing rules and order adopted by unanimous vote of the below-signed judges"). Taking the last factors first, adoption of the Indigent Defense Plan is neither "centered around a case pending before the court," nor does it arise "directly out of a visit to the judge in his official capacity." *Davis*, 565 F.3d at 222. The plan is not tied to an individual party or case in any way. *Accord ODonnell v. Harris Cnty.*, 227 F. Supp. 3d 706, 745 (S.D. Tex. 2016) (holding judges' adoption of rules to be administrative where they "impose rules for every case in every court," "require across-the-board rigid application in all courts" and "provide blanket generic instructions").

The act of rulemaking is also administrative under the second *Davis* factor, because it does not arise out of an adversarial process in a courtroom or chambers. The

local rules in the Indigent Defense Plan are not "promulgated by a single judge's signed order" issued from her chambers. *ODonnell*, 227 F. Supp. 3d at 745. They are "adopted by unanimous vote" by the district judges sitting as an administrative board outside of the courtroom setting, where they sit en banc in a conference room and make administrative decisions in public meetings subject to the Texas Open Meetings Act.[1] 2016 Galveston County Indigent Defense Plan at 26 (describing "standing rules and order adopted by unanimous vote of the below-signed judges"); *accord ODonnell*, 227 F. Supp. at 744 (holding rulemaking is administrative where "[t]he Rules of Court are promulgated by the County Judges sitting en banc as a board, voting by two-thirds majority"). This rulemaking would be indisputably administrative if it were undertaken by a local school board, or even court administrators. It is not transformed into a judicial act simply because the rules were made by judges. *Forrester v. White,* 484 U.S. 219, 228 (1988) ("Whether the act done by him was judicial or not is to be determined by its character, and not by the character of the agent."); *Davis*, 565 F.3d at 222. Nor does the subject matter of the rules make them judicial. Clearly, actions and decisions that decide *if* and *how* lawyers are provided are not inherently judicial. As the County notes, the Texas Legislature regularly passes statutes concerning appointment of counsel. County Obj. at 15 n.4. No one would call those acts "judicial."

---

[1] *See generally* Galveston County Statutory County Boards, http://www.galvestoncountytx.gov/ja/Pages/StatutoryCountyBoards_old.aspx (last visited Sept. 4, 2019) (posting agendas for board meetings to comply with the Open Meetings Act).

Finally, and most importantly, the "precise act complained of" is rulemaking in the form of a comprehensive indigent defense plan. Tex. Code Crim. Proc. Art. 26.04(a) (requiring felony judges to adopt an indigent defense plan "in each county, by local rule"); Tex. Gov't Code § 74.093(a) (granting felony judges power to adopt "local rules of administration"); 2016 Galveston County Indigent Defense Plan at 26, Ex. J, ECF No. 3-11 (describing "standing rules and order adopted by unanimous vote of the below-signed judges"). This is not a normal judicial function, which is "the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435–436 (1993) (quoting *Burns v Reed,* 500 U.S. 478, 500 (1991)). For example, issuing a contempt citation or sentence in an individual case is a judicial act. *Malina v. Gonzales*, 994 F.2d 1121, 1124–25 (5th Cir. 1993). By contrast, the Supreme Court has held that implementing "a comprehensive plan" to achieve a statutory objective is "an essentially administrative function." *Fed. Power Comm'n v. Idaho*, 344 U.S. 17, 21 (1952). That is precisely what the Indigent Defense Plan is: a comprehensive plan implemented to achieve the objectives of the Texas Fair Defense Act. It represents a local policy judgment about how court administrators should carry out their statutory duties across a class of cases. *Accord Supreme Court of Virginia v. Consumers Union of the United States, Inc.*, 446 U.S. 719, 731 (1980) (holding judges' "rulemaking" was "not an act of adjudication"); *ODonnell*, 227 F. Supp. at 745 (holding judges' adoption of rules to be administrative where they "provide blanket generic instructions").

8

This analysis makes clear that *Davis* is inapposite.  *Davis* concerned an individual attorney's application to be included on a rotating list of attorneys for appointment to indigent defendants, which, if granted, would have resulted in the attorney's appointment to individual cases. 565 F.3d at 219. Critically, *Davis* did not address adoption of the County's overall indigent defense plan,[2] which establishes generally applicable rules for inclusion on the appointment list.

The *Davis* court acknowledged that there are "administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform," and "[a]lthough administrative decisions may be essential to the very functioning of the courts, such decisions have not been regarded as judicial acts." *Id.* at 222 (quoting *Forrester*, 484 U.S. at 227). However, looking to the "nature of the act itself," the Court concluded that determining whether to put an individual attorney on the appointment list was inextricably intertwined with the decision about whether to appoint that attorney to an individual case. *Id.* at 226. The *Davis* Court concluded that because deciding which lawyer to appoint in a specific case is a judicial act, granting an application that will result in that appointment happening automatically is also a judicial act. *Id.* As The Court explained: "decisions about which attorneys should be placed on the wheel functionally determine which attorney actually will be appointed in a particular case." *Id.*

Unlike *Davis*, this case is not about the selection of an individual applicant for an appointment list, or the "act of appointing counsel in a particular case," which are clearly

---

[2] Mr. Davis challenged the Indigent Defense Plan, but the Fifth Circuit held that he lacked standing to do so, because the plan had been officially amended to change the qualifications for appointments. *Davis,* 565 F.3d at 220–21.

judicial acts. This case is about rulemaking: the county-wide policy decision of whether *any* counsel will be present, at all, at initial bail hearings.  As the *Davis* court observed, while threshold decisions like whether counsel will be present at a bail hearing "'may be essential to the very functioning of the courts,' such decisions have not been regarded as judicial acts." *Id.* at 222.

The district court in *ODonnell* succinctly summarized this flawed argument from the *Davis* case: "[t]he County argues that [the *Davis*] reasoning can be extrapolated to hold that the policy regulating the imposition of bail in every misdemeanor case is inextricable from the judicial act of setting bail in a particular case." *ODonnell,* 227 F. Supp. 3d at 743 (alteration in original). But the *ODonnell* court rejected this application of *Davis*, concluding that while the judges are not liable for "decisions . . . [in] individual cases," they are liable when they "impose rules for every case in every court" and "acquiesce[e] in . . . unwritten customs or practices by refusing to correct them in the written polic[y]." *Id.* at 745. The Court should reach the same decision here. While the Felony Judges would not be liable for particular appointment decisions, they are liable for local rules codified in the Indigent Defense Plan, which apply "in every case in every court." *Id.*

### B.    The Felony Judges are Policymakers for Galveston County

The Defendants argue that the Felony Judges are state actors; therefore, they cannot be policymakers for the County. County Obj. at 8, 11, 16; FJ Obj. at 9–11. However, the municipal liability analysis is not categorical with respect to a particular official; it is specific with respect to the particular function at issue.  *McMillian v.*

10

*Monroe Cty., Ala.*, 520 U.S. 781, 785 (1997).  The Supreme Court has explained that a public official may act at times on behalf of a municipality and at other time on behalf of the state. *Id*.  Indeed, this Court has already held that the Felony Judges act as policymakers for Galveston County when adopting rules about whether indigent defendants receive counsel at initial bail proceedings, MTD Mem. at 18, even though they act on behalf of the state for other functions.  Judge Edison followed this analysis in his recommendation. Mem. at 18.  Judge Edison's holding is consistent with this Court's earlier ruling on the Defendants' motions to dismiss that state law "[S]ection[s] 74.092 and 74.093 of the Texas Government Code [provides] the basis for the Felony Judges' and Local Administrative District Court Judge's authority to reform the policy" on behalf of the County. *See* MTD Mem. at 31.

The County and Felony Judges argue that that Judge Edison should not have relied on *ODonnell v. Harris Cnty.,* 892 F.3d 147 (5th Cir. 2018), because the case was brought by misdemeanor arrestees, whose cases were presided over by County Court at Law Judges, not Felony Judges, County Obj. at 10, FJ Obj. at 10; and also that *ODonnell* "relies on a statute that is specific to Harris County, with no application in Galveston County or anywhere else." County Obj. at 11. The Felony Judges separately assert that the *ODonnell* analysis is not applicable to provision of counsel.  FJ Obj. at 9–11. These arguments are all incorrect.

The Fifth Circuit's decision in *ODonnell* is directly applicable.  The Fifth Circuit held that "[T]he basic procedural framework governing the administration of bail in Harris County is set by the Texas Code of Criminal Procedure and local rules

11

promulgated by County Judges." *ODonnell,* 892 F.3d at 153. In *ODonnell,* the governing statute was Tex. Gov't Code § 75.403, which authorized Harris County Judges to adopt rules based on two-thirds vote of the judges. *Id.* In language that is materially indistinguishable, Texas Gov't Code §§ 74.092 and 74.093 grant Galveston County Judges the same power to promulgate local administrative rules for Galveston County criminal cases. *Compare ODonnell*, 892 F.3d at 155 (citing Tex. Gov't Code § 75.403(f) ("The judges may adopt rules . . . for practice and procedure in the courts.")) *with* Tex. Gov't Code § 74.093 ("The district . . . judges . . . shall . . . adopt local rules of administration."). MTD Mem. at 32–38; Pl.'s Reply in Support of Second Prelim. Inj. Mot. at 11, ECF No. 238 ("Article 26.04 of the Texas Code of Criminal Procedure—to "adopt and publish written countywide procedures for timely and fairly appointing counsel for an indigent defendant" by "local rule." And the authority to "adopt local rules," as has been briefed at length elsewhere, is granted to the Felony Judges under Section 74.093 of the Texas Government Code.") (citations omitted).

The Felony Judges in Galveston County set county policy in the same way as the judges in Harris County: the Felony Judges failed to use their authority to reform their bail practices, including providing counsel at the bail hearings. Instead, they "acquiesced in an unwritten, countywide process for setting bail that violated both state law and the Constitution." *ODonnell,* 892 F.3d at 155–56.

Additionally, the County re-asserts that *Davis* dictates that the Felony Judges are not county policymakers because they are "state actors" when "appointing indigent defense counsel in felony cases." County Obj. at 11.  These arguments fail because, as

discussed above, determining whether to provide counsel at bail proceedings is an administrative function for which the Felony Judges act on behalf of the County.  Further, because this act is administrative, the Court can enjoin the Felony Judges to provide counsel even if they act on behalf of the State in this capacity.  *Ex parte Young*, 209 U.S. 123 (1908).

Finally, the County argues that the Texas Separation of Powers Doctrine "prohibits the Felony Judges from being policymakers for the County," County Obj. at 16-18, and that the "Texas Supreme Court made clear that the commissioners court is the policy making body for Galveston County." *Id.*  The County relies heavily on *Henry v. Cox,* 520 S.W. 3d 28 (Tex. 2017) for this proposition.  *Id.* But *Henry* involved a dispute between Galveston County and a felony judge over the proper salary for a county employee. *Id.* at 32–33.  The Texas Supreme Court held that Texas law denied district court judges authority over county personnel decisions. *Id.* at 38.  Here, as Judge Edison correctly found, and *ODonnell* supports, the District Court Judges derive their authority to determine bail hearing policies for Galveston County directly from state law, specifically, from Tex. Gov't Code §§ 74.092 and 74.093. County Obj. at 15–18.

## III.   The Court Already Ruled That the Sixth Amendment Protects a Right to Counsel at Initial Bail Hearings

Judge Edison correctly determined that Mr. Booth is substantially likely to succeed on the merits of his Sixth Amendment claim. The Court has already ruled as a matter of law that an initial bail hearing is a critical stage of prosecution, MTD Mem. at

28–29, and the County does not contest this ruling. It is also uncontested that the County does not provide counsel at initial bail hearings.

The Felony Judges and the District Attorney nevertheless reiterate arguments briefed in their motions to dismiss and ask the Court to revisit its holding that an initial bail hearing is a critical stage. The Court should decline because (1) the Court's earlier rulings are the law of the case, and (2) the Court's original ruling that initial bail setting is a critical stage of prosecution was correct, for reasons further outlined by Judge Edison's recommendation.

### A.    The Court's Ruling that a Bail Hearing is a Critical Stage is Law of the Case

The Court has already ruled as a matter of law that "[t]here can really be no question that an initial bail hearing should be considered a critical stage of trial." MTD Mem. at 28. Defendants' objections to Judge Edison's recommendation on this point are irrelevant, because the law of the case doctrine is well-settled and applicable here. *See generally* Wright & Miller, 18B Fed. Prac. & Proc. Juris. 2d § 4478–4478.1.

Defendants have not carried their burden to overcome a presumption of finality. In fact, Defendants have hardly raised new legal arguments, nor have they meaningfully rebutted Plaintiff's evidence with their own. The Court should not revisit its prior ruling.

### B.    Judge Edison Correctly Determined That Initial Bail Hearings are a Critical Stage of Prosecution

#### 1.    Judge Edison's Recommendation is Consistent with *Rothgery*

The Felony Judges reiterate their *Rothgery* argument without meaningfully discussing Judge Edison's ruling that "[t]he sole question at issue in *Rothgery*" was

attachment of the right to counsel, and "the high court never addressed whether an initial bail hearing is a 'critical stage' of trial." 554 U.S. 191 (2008); Mem. at 30. The Court has already considered and rejected this argument. MTD Mem. at 29.

> **2.    Judge Edison Correctly Determined That Initial Bail Hearings Meet the Two-Pronged Test for a Critical Stage**

The Court's prior Sixth Amendment ruling outlines the critical stage analysis. The Court considered (1) whether an initial bail-setting hearing has the potential to prejudice the defendant,[3] and (2) whether counsel is necessary to avoid that prejudice.[4] *Accord United States v. Wade*, 388 U.S. 218, 237 (1967). Judge Edison's recommendation followed this legal analysis closely, asking "whether counsel would be needed to help a defendant cope with complex legal problems raised during [an initial bail] hearing." Mem. at 23. Citing both evidence in the record and ample legal authority, Judge Edison correctly determined that "[t]he answer is a no-brainer":

- Mr. Booth himself testified that he didn't know what to say at his initial bail hearing because he was "under informed," and an attorney would have helped him.

- Galveston County magistrates testified that they were reluctant to elicit relevant information from arrestees.

- Ample empirical research indicates that lack of representation significantly increases the chance that an arrestee will be detained.

---

[3] Mem. at 27–28 (citing *Bell v. Cone*, 535 U.S. 685, 695–96 (2002); *United States v. Ash*, 413 U.S. 300, 311 (1973); *McAfee v. Thaler*, 630 F.3d 383, 391 (5th Cir. 2011)).

[4] *Id.* (citing *Rothgery*, 554 U.S. at 212 n.16; *Ash*, 413 U.S. at 311; *McAfee*, 630 F.3d at 391). The Court also cited other examples of critical stages as useful examples, *id.* at 28 (citing *Coleman v. Alabama*, 399 U.S. 1, 10 (1970) (preliminary hearings); *Hamilton v. Alabama*, 368 U.S. 52, 54 (1961) (arraignments); *Missouri v. Frye*, 566 U.S. 134, 139 (2012) (plea negotiations)); and quoted approvingly from a recent district court case discussing appointment of counsel at bail-setting hearings in Louisiana, which noted the high risk that bail-setting hearings can prejudice defendants, as well as the necessity of counsel to protect defendants from that prejudice. *Id.* (quoting *Caliste v. Cantrell*, 329 F. Supp. 3d 296, 314 (E.D. La. 2018)).

- Evidence and legal authority indicates that there is a risk that arrestees who advocate for their own release will make inculpatory statements irrevocably prejudicing their cases.

- Evidence indicates that the initial bail determination has a possible anchoring effect, making it more difficult for later-appointed counsel to advocate for release.

Mem. at 24–36. Judge Edison's recommendation is bolstered by Mr. Booth's unrebutted evidence that counsel can help an arrestee more accurately assess their ability to pay bail—which is critical, because Defendants' own witnesses acknowledged that arrestees commonly overestimate what they can pay, inadvertently excluding themselves from the bail review process.[5] Mr. Booth also introduced unrebutted evidence that pro se arrestees are unable to gather evidence to support arguments for their release, such as verifying employment or collecting statements of support from loved ones.[6] Also unrebutted was evidence of the harm of being forced into an early, critical criminal proceeding without counsel, and consequently struggling to establish a strong relationship to facilitate investigation in the most important hours following arrest.[7]

---

[5] *See generally* Pl.'s First Proposed Findings of Fact ¶ 81(c) & n.171, ECF No. 201; Pl's Second Proposed Findings of Fact ¶ 23 & n.8, ECF No. 241.

[6] *See generally* Pl.'s Second Proposed Findings of Fact ¶¶ 22–23 & nn.25, 27–28.

[7] *E.g.*, Colbert Deposition Transcript ("Colbert Tr.") ECF No. 239-1 at 113:4–22 ("[I]f there's one thing that lawyers for poor people and low-income people have learned over the years, building trust and gaining a client's confidence requires an enormous investment of—of commitment, of energy, of showing, of demonstrating that you truly are fighting on behalf of this individual. . . . [A] lawyer[ ] is going to continue to represent that person or will pass it on—the information on to the next lawyer, who already has information, who already knows who has to be investigated, which witnesses need to be spoken to. . . . Gaining a lawyer's representation, at the initial appearance, not only benefits the individual in terms of liberty, but it means that that person has somebody who is going to present a formidable opposition to the state and to the prosecution.").

Judge Edison's analysis was not contrary to law, nor were his factual findings clearly erroneous. Judge Edison faithfully applied legal principles recognized in the Court's prior Sixth Amendment ruling. The Felony Judges and the District Attorney rely on cases that Judge Edison explicitly considered and rejected, because they predated *Rothgery*, did not concern hearings at which bail was set, and did not involve the volume of evidence or nuance of legal arguments considered by the Court and Judge Edison that establish the importance of counsel in avoiding the devastating consequences of detention.[8]

Defendants further argue that initial bail hearings are not critical stages because they are ministerial proceedings where arrestees are confronted with the allegations against them "on paper" with no prosecutor present. *E.g.* DA Obj. at 7–8 (arguing "information is considered on paper . . . initial bail setting . . . is not hotly contested"). But *Rothgery* held that Sixth Amendment rights do not hinge on the physical presence of a prosecutor. 554 U.S. at 206 (observing that, as is true in Galveston County, ""prosecutors . . . use [ ] systems to pre-screen cases early in the process before an initial appearance"). These informal hearings perhaps would not be a critical stage if there were no bail determination.  However, as long as a bail determination is required, counsel must be present to advocate for the arrestee, whose liberty is at stake regardless of the formality of the hearing. Indeed, the only reason initial bail hearings are so cursory is *because* counsel is absent. Were counsel provided as required by the Sixth Amendment,

---

[8] Mem. at 33–34.

initial bail hearings would necessarily become more robust proceedings, where bail determinations could be "hotly contested."

The Felony Judges further dispute Judge Edison's critical stage analysis by listing the ways in which pretrial hearings at issue in other Sixth Amendment cases differ from initial bail hearings in Texas. FJ Obj. at 5–7 & nn. 20–22. But Judge Edison carefully parsed these procedural differences, and recognized the unique importance of the bail setting hearing. *E.g.*, Mem. at 27–28 (block-quoting *Coleman v. Alabama* and noting: "The Supreme Court reached this conclusion because, *in part*, a criminal defense attorney can make effective arguments about the 'necessity for . . . bail' that a defendant would be unlikely to advance" (emphasis added)). Far from being contrary to law, Judge Edison's Sixth Amendment analysis is a thorough and well-reasoned application of both controlling and persuasive authority to a matter of first impression.

Nor were Judge Edison's findings of fact clearly erroneous. The Felony Judges make a remarkable argument that Judge Edison "imagine[d]" his findings, and there was "no evidence in the record that these scenarios have ever played out under the current system." FJ Obj. at 6. The District Attorney makes similarly baseless arguments about a lack of evidence. DA Obj. at 9–10.  The record in fact includes testimony from the chief public defenders in Houston and San Antonio, who are both career criminal practitioners with extensive experience representing Texas defendants in criminal cases; testimony from a practitioner who has devoted his career to representing defendants at initial bail hearings; empirical studies on the impact of representation at initial bail hearings; video recordings of defendants making uncounseled statements at Galveston County's initial

18

bail hearings; evidence that Galveston County releases 90% of arrestees detained at initial

bail hearings after counsel is appointed to argue for their release; testimony from multiple

Galveston County magistrates that they avoid eliciting information from arrestees that

might facilitate their release; and an explicit admission from one Galveston County

magistrate that counsel is necessary to make certain arguments for release.[9] The

Defendants' assertion that there is not evidence of these risks playing out under

Galveston County's current system is unfounded.

Equally unfounded is the Felony Judges' claim that it makes "little difference"

whether an arrestee is released at his initial bail hearing, or after an "examining trial with

the assistance of counsel post-magistration." FJ Obj. at 5. The difference is that an

arrestee is forced to spend additional time locked in a jail cell.[10] Even crediting

implementation of the bail review procedures as written, an arrestee's counseled hearing

can be as long as 48 hours after arrest.  And many arrestees do not receive a bail review

hearing at all, such as those who overestimate their ability to pay or who are unable to

retain a bail bond agent.[11] These individuals remain in jail indefinitely. As Judge Edison

correctly observed, "every minute in custody can have a dramatic effect on an

individual's life." Mem. at 32. The record demonstrates that this period of unnecessary

---

[9] *See generally* Pl.'s First Proposed Finidngs of Fact ¶¶ 87, 99 & n. 239; Pl.'s Second Proposed Findings of Fact ¶¶ 10–11, 16–30, 53.

[10] *See generally id.* ¶¶ 22–24.

[11] Pl.'s First Proposed Findings of Fact ¶ 88 (outlining categories of arrestees who do not get a bail review hearing).

pretrial detention, whether it is 48 hours or even longer, can irrevocably prejudice the arrestee's underlying criminal case.[12]

In sum, Judge Edison properly applied this Court's prior ruling and binding Supreme Court precedent to the evidence and concluded that initial bail hearings are a critical stage of prosecution. None of the Defendants' arguments undermine the Court's analysis.

## IV. Judge Edison Correctly Determined That the Evidence Merits a Preliminary Injunction Enforcing the Right to Counsel

### A. Judge Edison's Recommendation Will Not Harm Class Members

The Felony Judges' objection that the recommended preliminary injunction will hurt class members is false, and unsupported by any evidence whatsoever. FJ Obj. at 12–13. The Felony Judges can provide counsel to class members without causing delay—indeed, they are doing so now in many cases. The Memorandum rejected Defendants' baseless claim that a preliminary injunction would prolong pretrial detention for class members and concluded "that Galveston County is capable of having appointed defense counsel attend bail review hearings within approximately 24 hours of an arrest." Mem. at 36. The record also includes uncontested testimony from the Chief Public Defenders of Harris and Bexar Counties regarding the benefits of provision of counsel at magistration. *Id.* at 36. The Felony Judges' conjectured delay is entirely within their control and avoidable. It is no reason to reject the recommended preliminary injunction.

---

[12] *See generally id.* ¶ 40.

The Memorandum also considered the administrative burdens of ensuring timely magistration with provision of counsel and found that the benefits of providing counsel far outweighed the burden, if any. Specifically, the Memorandum concluded that "[t]he financial cost, if any, on the District Attorney and Galveston County is far from clear. By contrast, indigent defendants are unquestionably more likely to remain in custody—even if only for a short time—if they do not receive appointed counsel early in the process, leading to time away from their friends, family, school, and employment." *Id*. at 40.

**B.**   **Judge Edison's Recommendation Correctly Identifies the Substantial Threat of Irreparable Harm Posed By Requiring Arrestees to Appear Pro Se at Initial Bail Hearings**

The County and the District Attorney claim that there is no substantial threat of irreparable harm caused by the failure to provide counsel at magistration. County Obj. at 18; DA Obj. at 8–10. That is false as a matter of law. The deprivation of a constitutional right "for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction" and, consequently, no further showing of irreparable injury is required. Mem. at 37 (quoting *Deerfield Med. Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981)). Because the Memorandum found that the absence of court-appointed counsel at an initial bail hearing violates an arrestee's rights under the Sixth Amendment, it held that the irreparable harm requirement is "automatically satisfied." *Id*. The Court explained that a deprivation of a constitutional right is irreparable when it is "temporary." Mem. at 39 (quoting *Pugh v. Rainwater*, 483 F.2d 778, 782-83 (5th Cir. 1973), *rev'd in part on other grounds sub nom. Gerstein v. Pugh*, 420 U.S. 103 (1975)).

21

The Memorandum also identified irreparable harm caused by the deprivation of the right to counsel.  The Memorandum cited uncontested record evidence, based on empirical research, showing that defendants represented by counsel at initial bail setting are less likely to make inculpatory statements at their hearing, less likely to have high bail set, and less likely to be detained pending trial. *Id*. at 37.  Defendants' denial of this evidence through ad hominem attacks and mischaracterization of multiple empirical studies, *e.g.*, FJ Obj. at 8, is contradicted by the County's own assessment in a grant application the County sent to the Texas Indigent Defense Commission. *See* Ex. UUU. The County's application noted many of the same forms of irreparable harm that the Memorandum cited. *Compare* Ex. UUU *and* Mem. at 37.  Particularly in light of these concessions, the Memorandum correctly held that the record "easily" demonstrates a substantial threat of irreparable harm. *Id.*

### C.    Judge Edison's Recommendation Is Tailored to the Sixth Amendment Violation

The District Attorney argues erroneously that the recommended preliminary injunction erroneously includes relief for an unasserted Fifth Amendment violation. DA Obj. at 11–12. At no point does the Memorandum treat the Fifth Amendment right against compelled self-incrimination as an independent claim. Nor does the Memorandum treat the increased likelihood that an uncounseled detainee would volunteer incriminating statements as necessary or sufficient for the critical stage analysis or, as the District Attorney alleges, that such an outcome somehow "transform[s]" the initial hearing into a critical stage. DA Obj. at 12.

The Memorandum instead recognized that uncounseled detainees were more likely to make incriminating statements at their initial hearings, leading to unfavorable dispositions of their criminal cases. *Id.* Considering that outcome alongside is the other concrete harms caused by the denial of counsel is entirely consistent with the Supreme Court's instruction that the critical stage analysis "calls upon [courts] to analyze whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice." *U.S. v. Wade,* 388 U.S. 218, 227 (1967).

The District Attorney does not dispute the risk that uncounseled arrestees will make self-incriminating statements but maintains "there is no evidence that a magistrate's warning to remain silent is any less effective than the same warning from defense counsel." DA Obj. at 10. The District Attorney misses the point.  Whether counsel can more effectively *warn* against self-incrimination than a judge can is irrelevant (although the Memorandum correctly concludes that counsel *is* more effective[13]).  The point is that arguments through counsel more effectively guard against self-incrimination, *while also more effectively advocating for release*; thus avoiding the choice an unrepresented arrestee faces of remaining silent or risking self-incrimination.

---

[13] Mem. at 27 ("An indigent defendant should . . . be permitted to discuss with appointed counsel the pros and cons associated with waiving the right against self-incrimination before determining whether to speak his mind at an initial bail hearing.") (citing Wade, 388 U.S. at 225–26)

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his preliminary injunction motions and enter his proposed injunction.

Respectfully Submitted,

_/s/ Trisha Trigilio_
**Trisha Trigilio**, *attorney-in-charge*
Texas Bar No. 24075179
S.D. Tex. Bar No. 2461809
ttrigilio@aclutx.org
**Adriana Piñon**
Texas Bar No. 24089768
S.D. Tex. Bar. No. 1829959
apinon@aclutx.org
**Andre Segura**, *admitted pro hac vice*
Texas Bar No. 24107112
asegura@aclutx.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF TEXAS
5225 Katy Freeway, Suite 350
Houston, Texas 77007
Tel: 713-942-8146

_/s/ Brandon J. Buskey_
**Brandon J. Buskey,** *admitted pro hac vice*
Alabama Bar No. ASB-2753-A50B
bbuskey@aclu.org
**Twyla Carter**
Washington State Bar Association No. 39405
tcarter@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
CRIMINAL LAW REFORM PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-284-7364

Fax: 212-549-2654

*/s/Christopher M. Odell*

**Christopher M. Odell**
Texas Bar No. 24037205
S. D. Tex. Bar No. 33677
christopher.odell@arnoldporter.com
**Hannah Sibiski**
Texas Bar No. 24041373
S.D. Tex. Bar No. 559957
hannah.sibiski@arnoldporter.com
**Andrew D. Bergman**
Texas Bar No. 24101507
S.D. Tex. Bar No. 3169886
andrew.bergman@arnoldporter.com
**Joshua Wayne McCollum**
Texas Bar No. 24106271
S.D. Tex. Bar No. 3202958
josh.mccollum@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Tel: 713-576-2400
Fax: 713-576-2499

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that I filed this motion via the ECF system, which serves this motion on all counsel of record.

  /s/ Trisha Trigilio
**Trisha Trigilio** (Attorney-in-Charge)
Texas Bar No. 24075179
S.D. Tex. Bar No. 2461809
ttrigilio@aclutx.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
OF TEXAS
5225 Katy Freeway, Suite 350
Houston, TX 77007
Tel: 713-942-8146
Fax: 713-942-8966